# DEFENDANTS' EXHIBIT A

**DECLARATION OF MARCELINA TREVINO,
DIRECTOR OF ENFORCEMENT BUREAU,
MICHIGAN DEPARTMENT OF CIVIL RIGHTS**

I, Marcelina Trevino, declare that the following statements are true and correct to the best of my knowledge

1.  I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge, records kept in the ordinary course of business at the Michigan Department of Civil Rights (the Department), and information I learned from Department personnel whose work I rely upon and who have assisted me in gathering this information from our institution

2.  From 2021 to the present, I have served as the Director of the Enforcement Bureau at the Department.

3.  As the Director of the Enforcement Bureau, my responsibilities include, but are not limited to, supervision and final decision-making of enforcement policies and procedures, complaint intake, investigations, formalized discrimination charges, reconsideration decisions, and legal process generally.

4.  Prior to taking this position, I was the Director and Managing Attorney of the Department's Office of Legal Affairs from 2019 to 2021, which Office exists within the Enforcement Bureau.  From 2011 to 2019, I served as a reconsideration attorney within Law and Policy.

5.  I am familiar with the allegations set forth in this lawsuit, as well as the constitutional provision and statutes on which it is based.

6.  I am likewise familiar with the duties and responsibilities imposed on the Department, and, as the person responsible for the Department's intake, investigation, and enforcement of civil rights complaints, I have personal knowledge of the manner in which the Department discharges those duties and responsibilities.  I estimate that I have been involved in and supervised thousands of proceedings on complaints in the past fifteen years.

7.   As of the date of my signature on this declaration, the Department has received no complaints against either of the Plaintiffs in this lawsuit alleging violations of any civil rights laws, including but not limited to the statutes invoked in the Plaintiffs' lawsuit.

8.  In fact, to date, no complaints have been filed with the Department premised on the expansion of the definition of "sex" to include the

termination of a pregnancy in the Elliott-Larsen Civil Rights Act (ELCRA) located at MCL 37.2201(d).

9. Additionally, to date, the Department has zero investigations premised on the expansion of the definition of "sex" to include the termination of a pregnancy in the ELCRA.

10. Although Michigan, its subagencies, and certain individuals authorized by the Michigan Civil Rights Commission (the Commission) may request to start the investigation process, citizen-initiated complaints are the method by which the Department's ELCRA investigations and enforcement proceedings are initiated in practice.

11. During an eighteen-month period ending on June 30, 2022, MDCR processed 9,003 complaints and assigned 1,867 of those complaints for investigation.  The Department filed only four formal charges in 2022.  OAG Audit Report No. 151-0200-22, at 1 (Aug. 2023); MCRC 2023 Annual Report, at 11.

12. In my time with the Department, I am not aware of more than four charges being brought in any year.

13. In its most recent 2025 Annual Report, the Department identified only three charges filed in 2025.  MCRC 2025 Annual Report, at 33.

14. In practice, the standard time between the filing of a complaint and filing of a formal charge of discrimination is approximately 12 months.

15. The path from complaint to filing a charge of discrimination has several steps.

16. For non-employment complaints, the claimant must file with the Department within 180 days for the Department to have jurisdiction.

17. For employment complaints, the Department likewise has jurisdiction overclaims going back 180 days under ELCRA and Title VII of the U.S. Civil Rights Act.  In such cases, the file is provided to the U.S. Equal Employment Opportunity Commission (EEOC) after the Department either conducts an investigation or dismisses for insufficient evidence.

18. Complaints covered by Title VII occurring over 180 days but less than 300 days in the past are forwarded to the EEOC for its investigation.

19. After confirming that the Department has jurisdiction based on ELCRA, the Department then drafts a certified complaint for a claimant's signature. A claimant must return a signed certified complaint in order to initiate an investigation under ELCRA.

2

20. Upon the submission of a signed certified complaint, the respondent (here, one of the plaintiffs) would be notified immediately and the investigation would begin.

21. The Department then conducts an investigation, which could involve both sides' presentation of evidence, responses to interrogatories or requests for production, a site visit, interviews of witnesses, document analysis, and conferences with the parties to explore resolutions and/or additional evidence.  The investigation process can take as little as three months but usually takes approximately six months.

22. If the Department retains the case and finds sufficient evidence to file a charge of discrimination, a respondent is first invited to a conciliation conference, at which the Department informs the respondent of its findings. It can take as little as two weeks to schedule, conduct, and receive a respondent's response to this conference, but it usually takes about three months.

23. If a respondent refuses to address the situation in conciliation, the Department may file a formal charge of discrimination to begin the administrative hearing process.

24. When the Department files a charge of discrimination, a respondent is allowed 21 days to file an answer.  Mich. Admin. Code R. 37.11(1).

25. The Commission Rules allow the Commission or a hearing officer to conduct the hearing and issue a proposed decision to the Commission. Hearing officers may be designated by the Commission or the Director of the Department appointed by the Commission.

26. The Director of the Department designated the Michigan Office of Administrative Rules and Hearings (MOAHR) to use its Administrative Law Judges (ALJ) as hearing officers through a Memorandum of Understanding.

27. The ALJs are not employees of the Department or the Commission.  They are neutral parties.

28. The standard practice for the Department is to file charges of discrimination with MOAHR where ALJs conduct the hearing and issue a proposed decision.

29. Based on prior practice, the ALJ will schedule a pre-hearing conference to take place shortly after the 21-day Answer deadline to obtain admissions, stipulations as to fact and law, agreement on the issues, allow for discovery, determine the authenticity of documents, and schedule the hearing.

30. The shortest length of time I have observed from when the Department filed a charge with MOAHR to the completion of the hearing has been approximately four months.

31. Six months represents the bare minimum time between a complaint and filing of a charge of discrimination; it is more likely that at least 12 months would pass before the Department filed a charge of discrimination with MOAHR.

32. If the ALJ finds an ELCRA violation and the respondent files exceptions, the matter is referred the Commission for its final determination and order.

33. Based on my experience and knowledge, the exceptions process may take an additional six weeks.  The Commission's decision is subject to judicial review.

34. In my capacity, I am also familiar with the Department's practices and procedures regarding processing applications for bona fide occupational qualifications, or BFOQs.

35. In my experience, BFOQs are processed, and applicants are notified about the Department's determination, in about three to six months.

36. Contrary to Plaintiffs' allegations, applications for BFOQs are not required to be drafted by an attorney, nor must they file separate applications for similar positions.  They are welcome to contact the Department, which will work with any applicant to figure out an efficient process.  Moreover, BFOQs apply to the position description, meaning that a BFOQ can cover future hires and/or "carry over" if a covered individual is replaced by a new hire.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


EXECUTED on March 27, 2026.

_____

Marcelina Trevino

Director, Enforcement Bureau

Michigan Department of Civil Rights

4