# DEFENDANTS' EXHIBIT B

## STATE OF MICHIGAN
## IN THE 30TH JUDICIAL CIRCUIT FOR INGHAM COUNTY

ZAMARIA METCALF,

            Appellant,

v

MCLAREN HEALTH CARE CORPORATION,
MCLAREN GREATER LANSING, and
MCLAREN REGIONAL MEDICAL CENTER
AUXILIARY,

            Appellees.

**OPINION & ORDER**

CASE NO.  24-246-AA

HON. JAMES S. JAMO

At a session of said Court
held in the city of Lansing, county of Ingham,
this ___3___ day of February, 2025.

PRESENT:  HON. JAMES S. JAMO, Circuit Court Judge

This matter comes before the Court on Appellant's Petition for Judicial Review of the March 11, 2024 final order of the Michigan Department of Civil Rights (MDCR) denying reconsideration of its order declining to issue a charge of discrimination against Appellees.

Both parties requested oral argument under MCR 7.114. In accordance with MCR 7.114(A), this Court determines that the briefs and record adequately present the facts and legal arguments, and this Court's deliberation would not be significantly aided by oral argument. This Court will proceed on the briefs and record alone.

This Court, being fully apprised of the premises, VACATES the final decision of the MDCR and REMANDS this case to the MDCR for further proceedings.

### FACTUAL BACKGROUND

It is undisputed that Appellant is a disabled individual. Appellant is a quadriplegic resulting from a motor vehicle accident approximately 20 years ago. Appellant is able to move her left arm a little; she

1

otherwise locomotes with use of a powered wheelchair. Appellant also has a 24/7 attendant to provide physical assistance as needed. Certified Record at 20.

Appellant applied to a volunteer position with Appellees in 2019. She was interviewed by the Director of Auxiliary Volunteer Members, Penelope McCormick, on June 3, 2019. *Id.* Appellant's recounting of this meeting is as follows:

> Penny's greeting was, "I am just going to be totally honest with you, and I am not trying to hurt your feelings, but you are not able to do this. You must be fully independent." Taken aback, my client responded by asking, "do you know my abilities?" Penny responded "no, but I see she brought you in here, referring to [Appellant's] assistant. My client corrected her, saying "she did not bring me in, I drove myself." Penny then said, dismissively, "I am not going to go back and forth with you" and then commented that "it's a good thing we had this interview because I didn't have to tell you in front of a group of people." [Appellant] said to her, "I started to check your website this morning and see what the names of the volunteer positions were. Can you tell me the list of volunteer opportunities?" Penny replied "no, I have been repeatedly told they have to be fully independent." She went on to comment about other volunteers that she had to let go due to their disabilities. Some were physical and some were mental. She also spoke about she thought [Appellant] would be the perfect fit because of my age. She felt like [Appellant] would be dedicated unlike the 18-19-year-old college students who would apply and be pre-occupied.

> [Appellant] then asked "can you tell me the positions I applied for because, I know there were positions that I could handle." Penny replied "it doesn't work that way. It is based on what positions are needed at the time. Currently I need help in the gift shop and in the cafeteria. You are unable to complete those jobs." [Appellant] said, "but you won't even tell me the positions that I applied for" to which Penny replied "I am not going to go back and forth with you." [Appellant] said to her, "it's not worth your time? You counted me out before you even gave me a chance!" and she said, "you didn't tell me about this…" [Appellant] asked "did I have to?" and she said, "it would've helped."

> [Appellant] asked her, "if other positions open will you call me?" and she replied "would you like me to put a note on your file?" [Appellant] said, "yes!" and she said, "ok." [Appellant] then stated "and I am going to make a note that you didn't make that note until I asked you to!" and she said, "ok!" [Appellant] said, "and what positions would you call me for?" to which she said, "well I see you can talk so maybe I can put you at the information desk how good are you with computers?" [Appellant] "Excellent!"

> Penny then said "and the guy that brought you up here is a greeter and I told my greeters that nobody wants to be here patients or families so if you can tell them good morning and ask them how are they doing or greet them with a smile it can brighten their day and I am sure you can talk to people and smile at people right?" [Appellant] responded "it's not that you hurt my feelings…I am more like…shocked…what is the word? I am appalled…you counted me out of an entry level volunteer position…" Penny said, "we are all entry level." [Appellant] said "I can hold interviews"

2

to which she said, "you could hold interviews if you were the Director of auxiliary volunteer members." [Appellant] said, "that is you right?" and she said, "yes." [Appellant] countered "well, we are not all entry level positions." [Appellant] then asked her, "who puts you in your place?" and she, rudely, she repeated her by saying, "who puts me in my place?" and [Appellant] said "yes." [Appellant] said "who is over you?" and she said, "it is a board of directors." Penny then told her that she was more than welcome to write a letter to the board, and they would bring it up for discussion. [Appellant] said, "because I don't think McLaren would want to discriminate" to which Penny said "it is not McLaren that is saying this. It is the different departments that she places people in that have complaints." [Appellant] said, "but you represent McLaren." She said, "this has never happened before!" [Appellant] asked "so I am a one of a kind case and you are denying me?" and she said "I don't know what else do tell you," as she stood up to open the door. My client then observed "maam (sic), you are elderly," she said, "ok," my client said, "and you have restrictions, however you don't restrict yourself." She explained, that there is only a minimum age requirement not a maximum age requirement. [Appellant] then politely told her "God bless you" and she carefully backed out of the room ending the conversation.

CR at 37-38.

Appellant alleges McCormick refused to discuss any volunteer opportunities with her. Certified Record at 22. McCormick later denied this allegation and instead stated that she had expressed some concerns about Appellant's physical limitations, but also informed Appellant she could continue on to the formal orientation process. Appellant asked for a note to be placed in her file and for Appellees to contact her if there ever were an open position. After the conversation became combative, Appellant left. *Id.* She did not follow up with either Appellees' Human Resources Offices or the Auxiliary Board of Directors, and no one affiliated with Appellees contacted Appellant again.

On November 14, 2019, Appellant filed a claim with the MDCR, alleging a violation of the Michigan Persons with Disability Civil Rights Act (PWDCRA). Appellees responded, arguing that McLaren Health Corporation was not the proper party and that it is a separate, distinct entity from the Auxiliary, which is responsible for volunteers within the McLaren system and which conducted the interview through McCormick. The Auxiliary, through Regional Director of Compliance Michele McDonald, acknowledged Appellant had not been accepted as a volunteer due to "a misunderstanding" at her interview on June 4, 2019 and offered to re-interview Appellant and consider her for a volunteer

position with reasonable accommodations. CR at 21. Appellant countered requesting a paid position or otherwise a "larger amount of monetary compensation" than previously sought. CR at 22. Appellees otherwise denied that it discriminated against Appellant due to her disability.

On November 28, 2022, the MDCR dismissed Appellant's complaint without issuing a charge of discrimination or proceeding to a formal hearing, instead finding "there [was] insufficient evidence to proceed." CR at 80. Appellant sought reconsideration, particularly noting that a potential third-party witness, the aide that was with Appellant on the day of the interaction, had not been contacted or interviewed. CR at 26. The complaint was reopened on May 11, 2023. After additional review, the MDCR issued a final order on March 11, 2024, denying Appellant's request for reconsideration. This appeal followed.

## STANDARD OF REVIEW

Appeals from final orders of the MDCR are reviewed de novo. MI Const Art 5, §29. "[O]ne who is aggrieved by a final decision of the [MDCR] and who seeks review in the circuit court is not entitled to an entirely new evidentiary proceeding...Rather, the circuit court shall review the record produced at the [MDCR] anew, drawing its own inferences and conclusions from that record. The court shall determine whether the [MDCR]'s factual findings and legal conclusions are supported by competent, material, and substantial evidence on the whole record, and whether it acted arbitrarily or without authority." *Walker v Wolverine Fabricating & Mfg Co*, 425 Mich 586, 617; 391 Nw2d 296 (1986).

In reviewing administrative determinations, courts generally give due deference to the administration's expertise and will not displace an agency's choice between two reasonably differing views. *West Ottawa Education Assoc'n v West Ottawa Public School Bd of Education*, 126 Mich App 306, 313; 337 NW2d 533 (1983). In reviewing a final decision of the MDCR, however, a circuit court

may "substitute its assessment for the findings, conclusion, and decision of the [MDCR]." *Dept of Civil Rights ex rel Johnson v Silver Dollar Café*, 41 Mich 110, 116; 490 NW2d 337 (1992).

A decision is authorized by law "unless it is in violation of statute, in excess of statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *Id.* A decision is arbitrary if it is "fixed or arrived at through an exercise of will or caprice, without consideration or adjustment with reference to principles, circumstances or significance," and it is capricious if it is "apt to change suddenly, freakish or whimsical." *Roseland Inn, Inc v McClain*, 118 Mich App 724, 728; 325 NW2d 551 (1982).

## ANALYSIS

Appellant first argues the MDCR applied an incorrect test for determining whether Appellant had established her claim under Article 3 of the PWDCRA.

Appellee argues this Court should not reach the issue of the elements to be analyzed under the PWDCRA because Appellant did not request an accommodation and was not denied an accommodation. In *West v Olympia Entertainment, Inc*, unpublished opinion per curiam of the Court of Appeals, decided March 19, 2002 (Docket No. 229044), the plaintiff bought tickets to and attended an event in the Joe Louis Arena. An usher directed plaintiff and her family to their seats when they could have been directed to the handicapped seating area, though Plaintiff admitted she never told any employee of defendant that her seat was unacceptable due to her condition. In that case, the Court of Appeals determined that where the plaintiff "failed to request accessible seating" she couldn't claim defendant denied her the accommodation. "While the PWDCRA expressly places an obligation upon an institution or employer to make certain accommodations to a handicapped individual, it does not impose upon them the additional obligation to determine which accommodations are necessary to respond to each

5

individual's distinct handicap or special needs." *Id.* at *6 (quoting *Lindberg v Livonia Public Schools*, 219 Mich App 364, 367-368 (1996)).

This case is distinguishable from *Olympia Entertainment*. In that case, the plaintiff failed to request an accommodation, and the defendant could not be held liable for failing to determine that she required an accommodation or what accommodation would be necessary. In contrast, Appellant here alleges she was explicitly told no accommodation would be made. Appellant's statement indicated that Appellee's representative, in Penelope McCormick, immediately told her she would not be able to volunteer because she was not fully independent. Appellant asked if McCormick knew her abilities, and McCormick indicated she didn't, but did not need to because Appellant appeared with an aide. Appellant alleges McCormick would not talk to her about available volunteer positions or what abilities those positions required:

> [Appellant] then asked "can you tell me the positions I applied for because, I know there were positions that I could handle." Penny replied "it doesn't work that way. It is based on what positions are needed at the time. Currently I need help in the gift shop and in the cafeteria. You are unable to complete those jobs." [Appellant] said, "but you won't even tell me the positions that I applied for" to which Penny replied "I am not going to go back and forth with you." [Appellant] said to her, "it's not worth your time? You counted me out before you even gave me a chance!" and she said, "you didn't tell me about this…" [Appellant] asked "did I have to?" and she said, "it would've helped."

CR at 27-28.

The holding in *Olympia Entertainment* and its predecessor, *Lindberg*, relieves places of public accommodation from having to engage in guesswork—it does not independently create a requirement that an individual engage in a formal request for an accommodation before that place of public accommodation becomes subject to the terms of the PWDCRA.

Appellant argues the MDCR applied the wrong test in reaching a determination of Appellant's claim under Article 3 of the Persons with Disabilities Civil Rights Act (PWDCRA). Article 3, MCL 37.1302(1), covers discrimination by a place of public accommodation. Article 3 provides that a person

6

shall not "[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, and accommodations of a place of public accommodation or public service because of a

disability that is unrelated to the individual's ability to utilize and benefit from the goods, services,

facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive

devices or aids." The MDCR listed the following elements in analyzing an Article 3 claim:

(1) Discrimination based on a protected characteristic
(2) By a place of public accommodation or public service
(3) Resulting in the denial of the full and equal employment of the goods, services, facilities, privileges, advantages, or accommodations
(4) If a claimant establishes the first three elements, the burden shifts to the respondent to provide a legitimate non-discriminatory reason for its actions.
(5) If respondent provides a legitimate non-discriminatory reason for its actions, the burden shifts back to the claimant to show the offered reason is pretextual.

CR at 163.

Appellant argues these elements do not constitute the correct standard for an Article 3 claim.

Appellee provides no source for these elements. Appellant instead relies on *McNeal v Dortch*

*Enterprises*, unreported per curiam opinion of the Court of Appeals, Decided December 17, 2019

(Docket No 344642), which analyzed the requirements of Article 3. Although *McNeal* is an unpublished

opinion and therefore not binding on this Court, the Court of Appeals relied on binding authority—that

being MCL 37.1102(2)—and the analysis is instructive.

MCL 37.1102(2) provides that except as provided in Article 2, which is not applicable in this

case, "a person shall accommodate a person with a disability for purposes of employment, public

accommodation, public service, education, or housing unless the person demonstrates that the

accommodation would impose an undue hardship." In *McNeal*, the Court of Appeals determined that

"[o]nce a plaintiff has demonstrated that he is able to benefit from services provided by a place of public

accommodation and that he is being denied an equal opportunity to do so because of a physical or

mental characteristic, the facility has a duty to accommodate the person." *McNeal* at *3. "The

7

[PWDCRA] requires a plaintiff to make a prima facie showing that the defendant has failed to accommodate his handicap. Once such a showing has been made, the burden of proof shifts to the defendant to show that the accommodation required would impose an 'undue hardship.'" *Id.*, at *4 (quoting *Cebreco v Music Hall Ctr for the Performing Arts, Inc,* 219 Mich App 353, 360; 555 NW2d 862 (1996)).[1]

Appellant therefore states the correct standard for analysis of her claim should have been as follows:

(1) Appellee[2] is a place of public accommodation;
(2) Appellant was able to derive benefit from Appellee as a place of public accommodation;
(3) Appellant was denied the ability to do so because of its failure to accommodate her physical or mental characteristics;
(4) If Appellant can establish the first three elements, the burden shifts to the Appellee to show that accommodation would create an undue hardship, *not* that Appellee had a legitimate non-discriminatory reason for denying the accommodation;
(5) If Appellee establishes an undue hardship, the burden shifts back to Appellant to dispute the hardship imposed by the accommodation.[3]

This Court agrees. The MDCR's decision on Appellant's Article 3 claim is unauthorized by law where the MDCR dismissed Appellant's claim on the basis that the Appellee had provided a "legitimate, non-discriminatory reason for its actions." CR at 164.

Appellant further argues the MDCR's decision on Appellant's Article 2 claim was deficient. Article 2 covers discrimination by an employer or potential employer. Appellant argues there was no factual record established to determine whether the volunteer positions potentially available to Appellant could have been considered employment under Article 2. This Court agrees. The MDCR's final decision

---

[1] As noted in Appellant's reply brief, *Cebreco* interpreted the Michigan Handicappers' Civil Rights Act, the predecessor law to the PWDCRA. *McNeal* interpreted the PWDCRA, relying on *Cebreco* to provide guidance. Although *McNeal* is unpublished where *Cebreco,* a published case, appears to be on point, the fact that *McNeal* analyzes the current law in the State of Michigan is not an insignificant consideration.

[2] Appellant's brief at page 9 actually states "Appellant was a place of public accommodation." The Court considers this a typo, as Appellant is the claimant and a person, and Appellee is the place of public accommodation.

[3] "If [an undue hardship] is established, it is then plaintiff's burden to prove by a preponderance of the evidence than (sic) an accommodation would not impose such a hardship." *Cebreco,* 219 Mich at 361.

is not supported by competent, material, or substantial evidence on the whole record as to the Article 2 claim. Furthermore, the MDCR's final decision to accept as a legitimate, non-discriminatory reason for the adverse action against Appellant that she did not complete the pre-employment orientation process results in an absurd and arbitrary conclusion. Appellant did not continue to pursue the orientation process because, as she alleges, she had been explicitly told she could not be a volunteer in any position due to her disability. The Court finds the MDCR's subsequent decision that Appellant did not overcome the legitimate, non-discriminatory reason because she did not "provide a comparative" to "identify a non-disabled person who did not complete the pre-employment orientation process but was still assigned a volunteer position" to be similarly arbitrary. To require Appellant to persist in a formal orientation process despite being explicitly told, as she alleges, that she could not be a volunteer in any position due to her disability—essentially, to require a potential employee to show up to formal orientation after having been informed they would not be hired—places a burden on a potential employee that is arbitrary and unauthorized by law.

Finally, the Court is unpersuaded by the MDCR's credibility finding, holding McCormick's testimony as more credible than Apppellant's. McCormick's statements regarding the interaction with Appellant are vague and consist mostly of what McCormick alleges she did not say, whereas Appellant's statement regarding the interaction is detailed and specific. Furthermore, the MDCR failed to interview or take testimony from the identified third-party witness to the interaction, the aide who was with Appellant on the day in question. The aide, it appears from the record, no longer works with Appellant and could have provided significant evidence to clarify the questions of fact surrounding the interaction that is the subject of Appellant's claims.

This Court therefore finds the MDCR's final decision to be unsupported by competent, material, and substantial evidence on the whole record and to be arbitrary and unauthorized by law.

9

THEREFORE IT IS ORDERED that this matter be REMANDED to the MDCR to proceed to a formal hearing, in accordance with this opinion.

In compliance with MCR 2.602(A)(3), this Court finds that this decision resolves the last pending claim and closes the case.

Hon. James S. Jamo
Circuit Court Judge

## PROOF OF SERVICE

I hereby certify that I mailed a copy of the above ORDER to each attorney of record, or upon the parties, by placing the true copy in a sealed envelope, addressed to each, with full postage prepaid and placing said envelope in the United States mail at Lansing, Michigan, on _____2/5_____, 2025.

Katie Smith
Law Clerk to the Hon. James S. Jamo

CERTIFIED COPY
INGHAM COUNTY CLERK BARB BYRUM
30TH JUDICIAL CIRCUIT COURT CLERK

FEB 0 4 2025

I hereby certify that this ... is a true and correct copy of the original as it ... in Court Clerk. Pursuant to the Michigan Court Rules, ... present, they are in accordance with law, court rule, and/or order.

Deputy Clerk

10