UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIGHT TO LIFE OF MICHIGAN and
PREGNANCY RESOURCE CENTER,

      Plaintiffs,

v.

DANA NESSEL, in her official capacity
as Attorney General of Michigan; JOHN
E. JOHNSON, JR., in his official
capacity as Executive Director of the
Michigan Department of Civil Rights;
LUKE R. LONDO, GLORIA E. LARA,
RICHARD R. WHITE III, PORTIA L.
ROBERSON, ZENNA FARAJ
ELHASON, REGINA MARIE GASCO,
ROSANN L. BARKER, and SKOT
WELCH, in their official capacities as
members of the Michigan Civil Rights
Commission,

      Defendants.

NO. 1:26-cv-390

HON. ROBERT J. JONKER

MAGISTRATE SALLY J. BERENS

**ORAL ARGUMENT REQUESTED**

_____

**DEFENDANT ATTORNEY GENERAL DANA NESSEL'S BRIEF IN
SUPPORT OF HER MOTION TO DISMISS**

Joshua S. Smith (P63349)
Assistant Attorney General
Michigan Dept. of Attorney General
Attorney for Def. AG Dana Nessel
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
smithj191@michigan.gov

Dated:  April 3, 2026

**TABLE OF CONTENTS**

Page

Table of Contents......................................................................................................i

Index of Authorities...............................................................................................iii

Concise Statement of Issues Presented ............................................................. ix

Controlling or Most Appropriate Authority.................................................... ix

Introduction ............................................................................................................ 1

Statement of Facts..................................................................................................3

Standard of Review.............................................................................................. 12

Argument ............................................................................................................... 13

I.      The Attorney General is entitled to Eleventh Amendment immunity because she lacks enforcement authority of the challenged provisions. ........ 13

      A.      *Ex parte Young* permits suits only against officials with enforcement authority over the challenged statute............................. 13

      B.      The ELCRA vests enforcement authority in the MDCR and the Commission, not the Attorney General................................................ 16

            1.      The MDCR and Commission have primary enforcement authority. .................................................................................. 16

            2.      The Attorney General's role is limited to enforcing compliance with orders already issued by the MDCR or Commission............................................................................... 17

      C.      The Attorney General lacks the required connection to ELCRA enforcement under *Ex parte Young*. ...................................................... 19

            1.      Courts permit suit only against attorneys general with specific statutory enforcement authority.................................... 19

            2.      The Attorney General lacks the specific enforcement authority present in *DeWine* and *Russell*................................. 22

i

          a.      The Attorney General's authority under Mich. Comp. Laws §§ 14.29, 14.30, and 14.101 does not authorize suit under *Ex parte Young*. ............................... 23

II.     Plaintiffs lack standing to sue the Attorney General. .................................... 25

    A.     Plaintiffs have not alleged a viable injury in fact. ................................ 25

    B.     Any alleged injury is not fairly traceable to the Attorney General. ....................................................................................... 31

    C.     Plaintiffs' alleged injury is not redressable by relief against the Attorney General. ................................................................................ 33

Conclusion and Relief Requested ............................................................................. 34

# INDEX OF AUTHORITIES

Page

**Cases**

*Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770 (5th Cir. 2024) ............... 32

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 26

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ......................... 26

*Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000 (6th Cir. 2022) ....................... 13

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................... 31

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) .................................................. 12

*Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996) ................................................................................................................... 14, 15

*Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826 (6th Cir. 2024) ............ 30

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .................................................. 26

*Crump v. Blue*, 121 F.4th 1108 (6th Cir. 2024) .......................................................... 12

*Davis v. Colerain Twp.*, 51 F.4th 164 (6th Cir. 2022) ................................................ 29

*Diaz v. Mich. Dep't of Corrs.*, 703 F.3d 956 (6th Cir. 2013) ..................................... 14

*Disability Rights S.C. v. McMaster*, 24 F.4th 893 (4th Cir. 2022) ............................ 15

*Doe v. DeWine*, 910 F.3d 842 (6th Cir. 2018) ........................................... 15, 19, 20, 22

*Doyle v. Hogan* 1 F.4th 249 (4th Cir. 2021) ............................................ 21, 22, 24, 32

*Ex parte Young* 209 U.S. 123 (1908) ................................................................. passim

*Free Speech Coalition, Inc. v. Anderson* 119 F.4th 732 (10th Cir. 2024). 20, 22, 23, 24

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................................................................. 33

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................. 25, 31, 32, 33

*McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016) ................................................... 25

*Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976) ..................................................... 15, 21

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005)........................................................ 12

*Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266 (6th Cir. 1990)........... 12

*Nichols v. Muskingum Coll.*, 318 F.3d 674 (6th Cir. 2003) ....................................... 12

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)............................ 14

*Right to Life of Mich. v. Nessel*, No. 1:23-cv-01189-PLM-RSK (W.D. Mich.)............. 29

*Rouch World, LLC v. Dep't of Civil Rights*, 987 N.W.2d 50 (Mich. 2022) ................. 10

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) ................. 15, 19, 20, 22

*Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir. 1979)..................................................... 15

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ....................................... 33

*Support Working Animals, Inc. v. Governor of Florida*, 8 F.4th 1198 (11th Cir. 2021) ................................................................................................................ 32

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................................... 26

*Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022) ..................................................................................................... 25, 31

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001)...................... 21

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) .............................................. 13

*Yoder v. Bowen*, 146 F.4th 516 (6th Cir. 2025)......................................................... 12

**Statutes**

Mich. Comp. Laws § 14.101......................................................................................... 24

Mich. Comp. Laws § 14.101(1) .................................................................................... 23

Mich. Comp. Laws § 14.29...................................................................................... 23, 24

Mich. Comp. Laws § 14.30........................................................................................... 23

Mich. Comp. Laws § 37.2201(d) ................................................................................... 3

Mich. Comp. Laws § 37.2202(1)(a) .............................................................................. 4

Mich. Comp. Laws § 37.2202(1)(c) .............................................................................. 5

Mich. Comp. Laws § 37.2206(1) ............................................................................... 4

Mich. Comp. Laws § 37.2207 .................................................................................... 5

Mich. Comp. Laws § 37.2208; ................................................................................. 10

Mich. Comp. Laws § 37.2301(a) ............................................................................... 5

Mich. Comp. Laws § 37.2301(b) ............................................................................... 6

Mich. Comp. Laws § 37.2302(a) ............................................................................... 5

Mich. Comp. Laws § 37.2302(b) ............................................................................... 6

Mich. Comp. Laws § 37.2601 .................................................................................... 6

Mich. Comp. Laws § 37.2601(1)(c) ......................................................................... 31

Mich. Comp. Laws § 37.2602 ............................................................................... 6,27

Mich. Comp. Laws § 37.2602(a) ............................................................................. 16

Mich. Comp. Laws § 37.2602(b) ...................................................................... passim

Mich. Comp. Laws § 37.2602(c) .................................................................... 7, 17, 27

Mich. Comp. Laws § 37.2602(c)–(d ....................................................................... 32

Mich. Comp. Laws § 37.2602(c)–(d) ........................................................................ 2

Mich. Comp. Laws § 37.2602(d) .................................................................... 7, 16, 18

Mich. Comp. Laws § 37.2604 ..................................................................... ... 7, 8, 9

Mich. Comp. Laws § 37.2605 ............................................................................ passim

Mich. Comp. Laws § 37.2605(1) ............................................................................. 16

Mich. Comp. Laws § 37.2605(1)–(3) ...................................................................... 16

Mich. Comp. Laws § 37.2605(2) ............................................................................... 8

Mich. Comp. Laws § 37.2605(2)(a)–(e) .................................................................... 8

Mich. Comp. Laws § 37.2605(2)(f)–(g) .................................................................... 8

Mich. Comp. Laws § 37.2605(2)(h)–(j) .................................................................... 8

Mich. Comp. Laws § 37.2605(2)(l) ........................................................................... 9

Mich. Comp. Laws § 37.2605(3) ............................................................................... 8

Mich. Comp. Laws § 37.2605(4) ............................................................................... 8

Mich. Comp. Laws § 37.2606(1) ............................................................................... 9

Mich. Comp. Laws § 37.2801 ..................................................................... 2, 18, 33

Mich. Comp. Laws § 550.541 .................................................................................... 3

Mich. Comp. Laws § 550.545 .................................................................................... 4

Mich. Comp. Laws §§ 14.101 .................................................................................. 23

Mich. Comp. Laws §§ 14.29–30 .............................................................................. 23

Mich. Comp. Laws §§ 14.30 .................................................................................... 24

Mich. Comp. Laws §§ 37.2602 ..................................................................... 1, 23, 24

Mich. Comp. Laws §§ 37.2602(c)–(d) .................................................................... 33

Mich. Comp. Laws §§ 37.2605 .................................................................................. 1

Mich. Comp. Laws §§ 37.2605(1) .............................................................................. 9

Mich. Comp. Laws §§ 37.2801(1)–(3) ...................................................................... 9

Mich. Comp. Laws §§ 37.2802 .................................................................................. 9

Mich. Comp. Laws §§ 550.542 .................................................................................. 4

Mich. Comp. Laws §§ 550.543 .................................................................................. 4

Mich. Const. 1963, Art. V, § 2 ................................................................................. 6

Mich. Const. 1963, Art. V, § 29 ..................................................................... 6, 9, 31

**Other Authorities**

2023 PA 31 .................................................................................................................. 3

Mich. Admin. Code R. 37.12 ................................................................................... 16

Mich. Admin. Code R. 37.12(1) .......................................................................... 7, 27

Mich. Admin. Code R. 37.12(12) ............................................................................. 7

Mich. Admin. Code R. 37.12(3) ........................................................................... 7, 27

Mich. Admin. Code R. 37.12(4) ............................................................................. 27

Mich. Admin. Code R. 37.12(6) ..................................................................... 7, 18, 28

Mich. Admin. Code R. 37.12(7) ........................................................................... 7, 27

Mich. Admin. Code R. 37.16 ................................................................................... 16

Mich. Admin. Code R. 37.16(1) ........................................................................... 8, 27

Mich. Admin. Code R. 37.16(3) ............................................................................... 9

Mich. Admin. Code R. 37.16(4) ............................................................................... 8

Mich. Admin. Code R. 37.18 ................................................................................... 9

Mich. Admin. Code R. 37.20(1) ............................................................................. 10

Mich. Admin. Code R. 37.20(3) ............................................................................. 10

Mich. Admin. Code R. 37.23 ................................................................................. 10

Mich. Admin. Code R. 37.25(1) ............................................................................. 10

Mich. Admin. Code R. 37.25(2) ............................................................................. 10

Mich. Admin. Code R. 37.25(3) ............................................................................. 11

Mich. Admin. Code R. 37.25(4) ............................................................................. 11

Mich. Admin. Code R. 37.4(1) ............................................................................... 7

Mich. Admin. Code R. 37.4(2) ........................................................................... 7, 27

Mich. Admin. Code R. 37.4(8) ............................................................................... 7

Mich. Admin. Code R. 37.6(1) ......................................................................... 27, 32

Mich. Admin. Code. R. 37.4(1) ............................................................................. 27

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................ 2, 12

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Whether the Attorney General is entitled to Eleventh Amendment immunity where she lacks enforcement authority over the challenged Elliott-Larsen Civil Rights Act provisions, possessing only a representational role to appear for and represent the Michigan Department of Civil Rights and Michigan Civil Rights Commission in court proceedings after those entities have independently exercised their enforcement authority.

2.    Whether Plaintiffs have Article III standing to sue where any alleged injury is not fairly traceable to or redressable by relief against the Attorney General, given that she has no statutory authority to investigate complaints, issue charges, conduct hearings, or order remedies under the Elliott-Larsen Civil Rights Act.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

*Ex parte Young*, 209 U.S. 123 (1908);

*Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996);

*Murthy v. Missouri*, 603 U.S. 43 (2024);

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014);

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992);

Mich. Comp. Laws § 37.2101 *et seq.*

**INTRODUCTION**

Plaintiffs seek injunctive and declaratory relief against the Michigan Attorney General to prevent enforcement of certain provisions of the Elliott-Larsen Civil Rights Act (ELCRA).  But the Attorney General does not enforce this statute.  Rather, enforcement functions belong exclusively to the Michigan Department of Civil Rights (MDCR) and the Michigan Civil Rights Commission (Commission)—both of whom are already defendants in this case.

What the Attorney General can do is derivative: she acts as legal counsel when the MDCR or Commission seek judicial enforcement of orders they have already issued.  Mich. Comp. Laws § 37.2602(b).  If Plaintiffs' theory were accepted, the Attorney General would be a proper defendants in every suit involving any state department, agency, and official she represents.  This is not the law.  Because she functions as the lawyer rather than the enforcer, she must be dismissed for two independent, but related, reasons.

*First*, the Attorney General is entitled to Eleventh Amendment immunity.  The *Ex parte Young* exception permits suit only against officials with "some connection with the enforcement of the act." *Ex parte Young* 209 U.S. 123, 157 (1908).  Here, the ELCRA assigns the MDCR the authority to receive and initiate complaints and conduct investigations, and assigns the Commission authority to adjudicate violations and issue remedial orders.  Mich. Comp. Laws §§ 37.2602, Mich. Comp. Laws §§ 37.2605.  The ELCRA provides for Attorney General involvement only when—and if—the MDCR or Commission later seek court enforcement of an order already issued.  This purely representational role cannot

1

support *Ex parte Young* jurisdiction.  Courts hold that general executive authority or representational functions are insufficient to overcome Eleventh Amendment immunity where, as here, the challenged statute vests specific enforcement authority in other officials.

*Second*, Plaintiffs lack Article III standing to sue the Attorney General.  They cannot establish that any alleged injury is fairly traceable to her conduct or redressable by relief against her.  The MDCR receives complaints, investigates alleged violations, and issues charges.  Mich. Comp. Laws § 37.2602(c)–(d).  The Commission conducts hearings and issues orders finding violations and imposing remedies.  Mich. Comp. Laws § 37.2605.  The Attorney General makes none of these enforcement decisions.  Any injury Plaintiffs might suffer would flow from the independent, discretionary decisions of the MDCR and Commission—not from the Attorney General.  Moreover, private parties may bring civil actions to enforce the ELCRA directly in court, Mich. Comp. Laws § 37.2801, rendering any relief against the Attorney General ineffective to redress Plaintiffs' alleged injuries.

Because the Attorney General lacks enforcement authority over the ELCRA, she is immune from suit and Plaintiffs lack standing to sue her.  This Court should dismiss Plaintiffs' complaint against her pursuant to Federal Rule of Civil Procedure 12(b)(1).

2

**STATEMENT OF FACTS**

**Background**

Plaintiffs Right to Life and Pregnancy Resource Center, pro-life organizations that oppose abortion, filed suit challenging Michigan's Elliott-Larsen Civil Rights Act (ELCRA) as amended to prohibit employment discrimination based on "termination of a pregnancy."  (Compl., ECF No. 1, PageID.40, ¶ 291.)  Plaintiffs allege that the amended statute violates their First and Fourteenth Amendment rights by forcing them to hire applicants with pro-abortion views and to provide abortion-related benefits.  They name three defendants in their official capacities: the Michigan Attorney General, the Director of the Michigan Department of Civil Rights (MDCR), and members of the Michigan Civil Rights Commission (Commission).  Plaintiffs seek preliminary and permanent injunctive relief and declaratory relief.

**The challenged provisions**

In 2023, the Michigan Legislature amended Mich. Comp. Laws § 37.2201(d) to redefine "sex" to include "pregnancy, childbirth, the termination of a pregnancy, or a related medical condition."  This amendment removed prior language that had exempted "nontherapeutic abortion not intended to save the life of the mother" from the definition of sex discrimination.  (Compl., ECF No. 1, PageID.40, ¶ 294.)  The 2023 amendments to the ELCRA became effective February 13, 2024.  2023 PA 31.

On the same date, the Michigan Legislature repealed the Abortion Insurance Opt-Out Act, Mich. Comp. Laws § 550.541, *et seq.*  This Act had prohibited

employers from "provid[ing] coverage for elective abortion" without the purchase of supplemental coverage outside of an American health benefit exchange through an optional rider.  Mich. Comp. Laws §§ 550.542, Mich. Comp. Laws §§ 550.543.  The Act specifically provided that it did "not require an insurer, health maintenance organization, health care corporation or employer to provide or offer to provide an optional rider for elective abortion coverage."  Mich. Comp. Laws § 550.545.

**The text of the challenged provisions**

Plaintiffs challenge five sets of statutory provisions, which they refer to as the Employment Clause, the Notice Clause, the Benefits Clause, the Accommodation Clause, and the Accommodations Publication Clause.

*The Employment Clause.*  Mich. Comp. Laws § 37.2202(1)(a) prohibits employers from failing or refusing to hire, recruit, discharge, or otherwise discriminating "against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of . . . sex," which now includes termination of a pregnancy.  Subsection (b) prohibits employers from limiting, segregating, or classifying employees or applicants "in a way that deprives or tends to deprive" them "of an employment opportunity . . . because of . . . sex."  Subsection (d) prohibits employers from treating "an individual affected by . . . the termination of a pregnancy . . . differently for any employment-related purpose from another individual who is not so affected . . . ."

*The Notice Clause.*  Mich. Comp. Laws § 37.2206(1) prohibits employers from posting or publishing employment-related statements "that indicate[] a preference,

4

limitation, specification, or discrimination, based on . . . sex." Subsection (2) prohibits employers—"[e]xcept as permitted by rules promulgated by the commission or by applicable federal law"— from making or using written or oral inquiries or applications "that elicit[ ] or attempt[ ] to elicit information concerning" a prospective employee's sex or that "express[ ] a preference, limitation, specification, or discrimination based on . . . sex," or from making or keeping records of that information. Mich. Comp. Laws § 37.2207 prohibits individuals from publishing or causing to be published notices or advertisements that specify or indicate an individual's sex or "express[ ] a preference, specification, limitation or discrimination as to the . . . sex . . . of a prospective employer."

*The Benefits Clause.* Mich. Comp. Laws § 37.2202(1)(c) prohibits employers from segregating, classifying, or otherwise discriminating "against an individual on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system."

*The Accommodation Clause.* Mich. Comp. Laws § 37.2302(a) prohibits public accommodations and public service providers from denying an individual "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations . . . because of sex." Michigan's civil-rights law defines public accommodations as any business or institution of any kind offering or providing "goods, services, privileges, advantages, or accommodations to the public." Mich. Comp. Laws § 37.2301(a). The law also defines public service to include "a tax

5

exempt private agency established to provide service to the public." Mich. Comp. Laws § 37.2301(b).

*The Accommodation Publication Clause.* Mich. Comp. Laws § 37.2302(b) contains two prohibitions. First, it prohibits public accommodations and public service providers from publishing a "statement, advertisement, notice, or sign that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" will be "refused, withheld from, or denied an individual because of . . . religion . . . [or] sex." Second, it prohibits public accommodations and public service providers from publishing statements indicating "that an individual's patronage of or presence at a place of public accommodation is objectionable, unwelcome, unacceptable, or undesirable because of . . . religion . . . [of] sex."

**Enforcement under the ELCRA**

Both the MDCR and Commission are constitutionally created bodies. *See* Mich. Const. 1963, Art. V, § 2 (explaining that there shall be "not more than 20 principal departments"); Mich. Const. 1963, Art. V, § 29 ("There is hereby established a civil rights commission which shall consist of eight persons . . . who shall be appointed by the governor . . . ."). Both are charged with administering and enforcing the ELCRA. Mich. Comp. Laws § 37.2602 (MDCR); Mich. Comp. Laws § 37.2601 (Commission); *see also* Mich. Const. 1963, Art. V, § 29.

Complaints alleging ELCRA violations may be initiated in several ways. The MDCR may receive a complaint from any person claiming to be aggrieved by

unlawful discrimination.  Mich. Comp. Laws § 37.2602(c); Mich. Admin. Code R. 37.4(1).  The MDCR posts its complaint form on its website to facilitate such requests, and they are also available at MDCR offices.  (Compl., ECF No. 1, PageID.59, ¶ 415); Mich. Admin. Code R. 37.4(8).  Additionally, both the MDCR and the Commission may initiate complaints on their own authority "in the public's interest."  Mich. Admin. Code R. 37.4(2); (Compl., ECF No. 1, PageID.5, ¶¶ 12–13).

Once a complaint is received or initiated, the MDCR investigates through what Plaintiffs characterize as a "burdensome and adversarial process."  (Compl., ECF No. 1, PageID.59, ¶ 419); Mich. Comp. Laws § 37.2602(c), Mich. Comp. Laws § 37.2602(d); Mich. Admin. Code R. 37.12(6).  For example, "the commission or director may schedule and summon the parties to a hearing."  Mich. Admin. Code R. 37.12(1); *see also* Mich. Comp. Laws § 37.2604.  The "hearing must be conducted by 1 or more hearing commissioners, or 1 or more hearing referees, or any combination of hearing commissioners or hearing referees."  Mich. Admin. Code R. 37.12(3). "The hearing commissioners or hearing referees shall hear the evidence and report to the commission."  *Id.*  Hearing commissioners and referees have the power to "order witnesses excluded," "[e]xamine witnesses and direct the production of papers or other evidence," and "[h]ear oral testimony," among other things.  Mich. Admin. Code R. 37.12(7).  Hearing commissioners and referees may also permit "the parties, their counsel, or the member of the department's staff presenting the case in support of the charge . . . [and] interveners . . . to argue orally before them and to file briefs . . . ."  Mich. Admin. Code R. 37.12(12).

After a hearing takes place, the Commission must issue an order "set[ting] forth the findings of fact and the basis for its decision."  Mich. Admin. Code R. 37.16(1).  Parties may submit exceptions to this order before it becomes final.  *Id.* Ultimately, the Commission issues a final order:

> If upon the evidence at the hearing the commission shall find that a respondent has engaged in any unlawful discrimination, the commission shall state its findings of fact and may issue an order requiring such respondent to cease and desist from such unlawful discriminatory act and to take such affirmative action as the commission may deem appropriate, which may include reporting from time to time the manner and extent of compliance. If upon the evidence the commission shall find that a respondent has not engaged in unlawful discrimination, the commission shall state its findings of fact and shall issue an order dismissing the charge as to such respondent. [Mich. Admin. Code R. 37.16(2); *see also* Mich. Comp. Laws §§ 37.2604, 37.2605(1).]

The Commission must "furnish a copy of the order to the claimant, the respondent, the attorney general, and other public officers and persons as the commission deems proper."  Mich. Comp. Laws § 37.2604.  And any order issued by the Commission shall be filed with the director.  Mich. Admin. Code R. 37.16(4).

Action ordered by the Commission following its finding of discrimination may include (1) affirmative relief, such as "hiring, reinstatement, or upgrading of employees with or without back pay," Mich. Comp. Laws § 37.2605(2)(a)–(e); Mich. Comp. Laws § 37.2605(2) compliance measures, such as "[r]eporting as to the manner of compliance," Mich. Comp. Laws § 37.2605(2)(f)–(g); Mich. Comp. Laws § 37.2605(3) monetary relief, such as payment of civil fines, Mich. Comp. Laws § 37.2605(2)(h)–(j); Mich. Comp. Laws § 37.2605(4) licensing revocation and contract cancellation, Mich. Comp. Laws § 37.2605(3), and Mich. Comp. Laws § 37.2605(4)

"[o]ther relief the commission deems appropriate," Mich. Comp. Laws § 37.2605(2)(l).

Both complainants and respondents have the right to appeal a final Commission order to the circuit court, which reviews the appeal de novo.  Mich. Const. 1963, Art. V, § 29; Mich. Comp. Laws § 37.2606(1); Mich. Admin. Code R. 37.16(3); Mich. Admin. Code R. 37.18.  If no appeal is filed within 30 days of service, the Commission may seek a court decree to enforce its order.  Mich. Comp. Laws § 37.2606(1).  It is at this stage that the ELCRA contemplates Attorney General involvement.  For example, Mich. Comp. Laws § 37.2602(b) provides that "[t]he attorney general shall appear for and represent the department or the commission in a court having jurisdiction of a matter under this act."  Only two other references to the Attorney General are contained in the ELCRA—both of which involve the Commission's responsibility to provide copies of final orders issued by the Commission on the Attorney General.  Mich. Comp. Laws §§ 37.2604; Mich. Comp. Laws §§ 37.2605(1).

**The ELCRA's private right of action**

In addition to MDCR and Commission enforcement, the ELCRA permits any "person alleging a violation of the Act to file a civil action for injunctive relief, damages, and attorney fees and costs in an appropriate circuit court.  Mich. Comp. Laws §§ 37.2801(1)–(3), Mich. Comp. Laws §§ 37.2802.  This private right of action operates independently of the enforcement mechanisms described above.

**The Commission's powers to issue declaratory rulings, issue interpretive statements, adopt interpretive or procedural guidelines, and issue bona fide occupation qualification exemptions**

In addition to its authority to receive complaints, conduct hearings, and issue orders, the Commission, "on petition of an interested person, may issue a declaratory ruling as to the applicability of a statute, regulation, or rule to an actual state of facts upon submission to the commission . . . ." Mich. Admin. Code R. 37.20(1). If the Commission decides to issue a declaratory ruling, that ruling, "once issued, is binding on the commission . . . ." Mich. Admin. Code R. 37.20(3).

The Commission may also issue interpretive statements, *see Rouch World, LLC v. Dep't of Civil Rights*, 987 N.W.2d 501, 505 n.2 (Mich. 2022) (explaining the non-binding effect of interpretive statements or rules), or adopt interpretative or procedural guidelines, Mich. Admin. Code R. 37.23.

Relevant here, the Commission may also grant individualized exemptions for employers who demonstrate "that . . . religion . . . [or] sex . . . is a bona fide occupational qualification [(BFOQ)] reasonably necessary to the normal operation of the business or enterprise." Mich. Comp. Laws § 37.2208; *see also* Mich. Admin. Code R. 37.25(1). BFOQ exemption applications are available in person or online. Mich. Admin. Code R. 37.25(1). Once received, the Commission "may direct the department to investigate any matter deemed relevant to an application, and the applicant shall make available all records, documents, data, or other information requested by the department or commission." Mich. Admin. Code R. 37.25(2). A BFOQ exemption may be granted "[u]pon a sufficient showing." Mich. Admin. Code

10

R. 37.25(3).  If the Commission grants a BFOQ, the "exemption is effective for not more than 5 years[.]"  Mich. Admin. Code R. 37.25(4).

Neither Plaintiff has applied for a BFOQ exemption.  (Compl., ECF No. 1, PageID.62, ¶ 443.)  Plaintiffs claim the application process is "burdensome" and cite various administrative requirements as reasons for not applying, including the need to hire a lawyer, submit applications for each position, renew applications every five years, and the possibility that the Commission could initiate an investigation upon receiving their application.  (*Id.*, ¶¶ 433, 443.)  Plaintiffs do not allege that they attempted to apply and were denied, or that applying for an exemption would be futile.

**Plaintiffs' complaint**

Plaintiffs' complaint seeks both declaratory and injunctive relief alleges seven claims: (1) First Amendment – expressive association and assembly (all Plaintiffs); (2) First Amendment – freedom of speech and press (all plaintiffs); (3) First Amendment – free exercise (Pregnancy Resource Center); (4) First Amendment – religious autonomy, ministerial exception, co-religionist doctrine (Pregnancy Resource Center); (5) Fourteenth Amendment – due process, vagueness (Pregnancy Resource Center); (6) Fourteenth Amendment – due process and Privilege and Immunities Clause (all Plaintiffs); and (7) Fourteenth Amendment – procedural due process (all Plaintiffs).

11

**STANDARD OF REVIEW**

This Court must dismiss a complaint if it lacks jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Courts assess both standing and Eleventh Amendment immunity under Rule 12(b)(1).  *See Yoder v. Bowen*, 146 F.4th 516, 522 (6th Cir. 2025) (standing); *Crump v. Blue*, 121 F.4th 1108, 1113 (6th Cir. 2024) (immunity).  A motion under this Rule can challenge the sufficiency of the pleadings (a facial challenge) or the factual existence of subject-matter jurisdiction (a factual challenge).  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  Under a facial challenge, "the trial court takes the allegations in the complaint as true."  *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (citation omitted).  Under a factual challenge, "the court may consider evidence outside the pleadings[.]"  *Id.* (citation omitted).  Under either scenario, "the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).  And "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" to prevent dismissal.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

12

## ARGUMENT

**I.     The Attorney General is entitled to Eleventh Amendment immunity because she lacks enforcement authority of the challenged provisions.**

Plaintiffs have sued the Attorney General based on her general duty to enforce Michigan law.  (Compl., ECF No. 1, PageID.15, ¶ 52.)  But to overcome the Eleventh Amendment, *Ex parte Young* requires more—it requires specific enforcement authority over the challenged statute.  The Attorney General has none.  The ELCRA vests enforcement authority in the MDCR and the Commission, not the Attorney General.  Her role is limited to appearing for and representing those state entities.  That representational role cannot support *Ex parte Young* jurisdiction, and the Attorney General should thus be dismissed pursuant to the Eleventh Amendment.[1]

**A.     *Ex parte Young* permits suits only against officials with enforcement authority over the challenged statute.**

Generally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  In other words, it is a suit against the State itself, which the Eleventh Amendment generally bars.  *Id.* at 66.

---

[1] The Attorney General raises both immunity and standing as separate grounds to dismiss.  This Court may address these grounds in either order, but nothing prevents it from "dismiss[ing] on immunity grounds before considering standing issues." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000 (6th Cir. 2022) (citations omitted).

One exception to this immunity is the doctrine announced in *Ex parte Young*, 209 U.S. 123 (1908), whereby "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984).  But "[c]ourts have not read *Young* expansively." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (citations omitted).  Rather, to "fall within the . . . *Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corrs.*, 703 F.3d 956, 964 (6th Cir. 2013).  And *Ex parte Young* "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state [law]." *Children's Healthcare*, 92 F.3d at 1415 (citations omitted).  It only "abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's action." *Id.* (citation omitted).

The requirement that the defendant have enforcement authority is not mere formalism.  It reflects the principle that *Ex parte Young* allows a narrow exception to sovereign immunity by treating a suit against a state official as a suit against the official personally rather than against the State.  But that fiction makes sense only when the official has authority to enforce the challenged law.  An injunction prohibiting enforcement presupposes someone with authority to enforce. Where no such authority exists, neither does *Ex parte Young* jurisdiction.

Courts accordingly require that the plaintiff demonstrate that the defendant has "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at

14

157.  General executive or supervisory authority will not suffice.  Rather, courts require a specific connection between the defendant and enforcement of the challenged statute—the official must have enforcement authority over the particular law at issue.  *See Children's Healthcare*, 92 F.3d at 1415–16.

Courts have applied these principles to dismiss state attorneys general who lack enforcement authority over challenged statutes.  *See Doe v. DeWine*, 910 F.3d 842, 849 (6th Cir. 2018) (*Ex parte Young* exception applied where attorney general was " 'actively involved with administering' " the statute); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (*Ex parte Young* exception applied where attorney general had specific authority to investigate and prosecute violations of the statute at issue); *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976) (attorney general's "duty to support the constitutionality of state statutes . . . and to defend actions in which the state is 'interested' " insufficient to overcome immunity) (citations omitted); *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022) ("status as the Governor . . . and [the] general duty to execute state laws" insufficient); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute.").

The lesson from these cases is clear: General executive authority does not suffice.  The plaintiff must identify specific enforcement authority over the challenged statute.  And Plaintiffs bear that burden here.  They must plead—and

15

ultimately prove—that the Attorney General has enforcement authority over the ELCRA.  As set forth below, they have not done so.

### B. The ELCRA vests enforcement authority in the MDCR and the Commission, not the Attorney General.

The relevant question, then, is whether the Attorney General has enforcement authority over the ELCRA.  She does not.  The ELCRA establishes an enforcement scheme that assigns specific enforcement roles to designated officials, none of which is the Attorney General.

### 1. The MDCR and Commission have primary enforcement authority.

The ELCRA vests primary enforcement authority in the MDCR and the Commission.  Any person "claiming to be aggrieved" may file a complaint with the MDCR.  Mich. Comp. Laws § 37.2602(a).  The MDCR then investigates the complaint, including through interrogatories, site visits, and interviews.  Mich. Comp. Laws § 37.2602(d); Mich. Admin. Code R. 37.12; Mich. Admin. Code R. 37.16.

If the MDCR finds probable cause of a violation, the matter proceeds to a hearing before the Commission.  Mich. Comp. Laws § 37.2605(1).  The Commission conducts evidentiary hearings and issues orders, which may include cease-and-desist orders, hiring orders, damages, attorney fees, and revocation of state licenses.  Mich. Comp. Laws § 37.2605(1)–(3).  Throughout this process, the statute assigns investigative, adjudicatory, and order-issuing functions exclusively to the MDCR and Commission—not the Attorney General.

16

Plaintiffs acknowledge this enforcement structure.  (*See* Compl., ECF No. 1, PageID.59–60, ¶¶ 414–421.)  They recognize that complaints are filed with the MDCR, that the MDCR investigates, and that penalties flow from Commission orders.  (*See id.*)

### 2.    The Attorney General's role is limited to enforcing compliance with orders already issued by the MDCR or Commission.

The Attorney General's role under the ELCRA is representational.  Mich. Comp. Laws § 37.2602(b) addresses the MDCR's authority to "[a]ppoint necessary employees and agents and fix their compensation" and then immediately provides:

> The attorney general shall appear for and represent the department or the commission in a court having jurisdiction of a matter under this act.

Read in context, this provision simply designates the Attorney General—rather than separately retained counsel—as the MDCR's and Commission's legal representative in court proceedings.  It does not confer independent enforcement authority.

The statute's remaining provisions confirm that enforcement authority belongs to the MDCR and Commission, not the Attorney General.  The MDCR receives complaints, investigates, and issues charges.  Mich. Comp. Laws § 37.2602(c).  The MDCR also has extensive investigative powers, including the authority to "require answers to interrogatories, order the submission of books, papers, records, and other materials pertinent to a complaint, and require the attendance of witnesses, administer oaths, take testimony, and compel, through

17

court authorization, compliance with its orders or an order of the commission."
Mich. Comp. Laws § 37.2602(d).  When the MDCR seeks "court authorization" to
compel compliance under subsection (d), the Attorney General appears as the
MDCR's legal representative under subsection (b)—not as an independent
enforcement official.

The Attorney General's involvement is even more attenuated than this
statutory text suggests.  It is only when an enforcement action proceeds to court
that the Attorney General must become involved in her representational capacity.
Before that point, the MDCR and Commission can take numerous enforcement
actions against persons violating the ELCRA without any involvement from the
Attorney General whatsoever.  Mich. Comp. Laws § 37.2605 authorizes the
Commission to issue cease-and-desist orders, award damages, assess costs and
attorney fees, and even revoke state licenses—all without the Attorney General's
participation.  Additionally, the MDCR may represent itself at Commission
hearings.  *See* Mich. Admin. Code R. 37.12(6) ("The case in support of the charge
must be presented at the hearing by the department's counsel or by a member of the
department's staff . . . .").  Private persons may also bring their own civil actions to
enforce the ELCRA directly in court.  Mich. Comp. Laws § 37.2801.  In such cases,
the Attorney General has no role at all.  Her connection to ELCRA enforcement is
thus limited to the narrow circumstance in which the MDCR or Commission seeks
judicial enforcement of an order it has already issued.

18

**C.** **The Attorney General lacks the required connection to ELCRA enforcement under *Ex parte Young*.**

The case law makes clear that general executive authority is insufficient to overcome Eleventh Amendment immunity.  Courts distinguish between attorneys general who have specific enforcement authority over the challenged statute and those who do not.  The Attorney General here falls in the latter category.

**1.** **Courts permit suit only against attorneys general with specific statutory enforcement authority.**

The Sixth Circuit's decision in *Doe v. DeWine*, 910 F.3d 842 (6th Cir. 2018), illustrates when an attorney general has sufficient enforcement authority to satisfy *Ex parte Young*.  There, the court held that the *Ex parte Young* exception applied because the Ohio Attorney General was " 'actively involved with administering' " the challenged statute.  *DeWine*, 910 F.3d at 849.  Specifically, Ohio law gave the Attorney General sufficient authority where he was responsible for "promulgat[ing] regulations implementing the sex-offender registration requirements; operat[ing] the state-wide sex-offender database; and send[ing] and alert[ing] citizens to the proximity of registered offenders."  *Id.* (citation omitted).  Similarly, in *Russell v. Lundergan-Grimes*, the Sixth Circuit found the *Young* exception applicable where the Kentucky Attorney General had "jurisdiction . . . to investigate and prosecute" violates of the challenged statute.  784 F.3d at 1047.  The statute explicitly authorized the Kentucky Attorney General, as a law enforcement official, to initiate enforcement proceedings, giving him primary enforcement authority.  *Id.* (noting that Kentucky election laws provided that " 'the Attorney General . . . shall enforce

19

all of the state's election laws by civil or criminal processes' ") (citation omitted); *see also id.* (explaining that the Attorney General's "office repeatedly fielded and investigated complaints of impermissible electioneering, and promised the public that it would pursue possible criminal sanctions").

In contrast to the specific enforcement authority present in *DeWine* and *Russell*, courts have consistently held that general executive or representative authority is insufficient.  In *Free Speech Coalition, Inc. v. Anderson*, the Tenth Circuit held that the Utah Attorney General was entitled to Eleventh Amendment immunity because he lacked enforcement authority over the challenged age-verification statute.  *Free Speech Coalition, Inc. v. Anderson* 119 F.4th 732, 739–40 (10th Cir. 2024).  The court explained that although Utah law gave the Attorney General authority the "generic duty to enforce the laws of the state," that general grant was insufficient where the statute assigned specific enforcement authority to another agency or private individuals.  *Id.* at 739.  In so holding, the court relief on *Ex parte Young*'s holding itself, explaining that:

> [T]he Supreme Court identified the flaw in this argument in *Ex parte Young*.  There, the Court explained that if a general duty to enforce the law were sufficient to avoid immunity, 'then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general' because . . .  the attorney general 'might represent the state in litigation involving the enforcement of its statutes.' " [*Id.* (quoting *Ex parte Young*, 209 U.S. at 157.)]

 The court also reasoned that "the Attorney General . . . lack[ed] any power to direct the actions of private actors or prevent them from seeking enforcement of the Act." *Id.* (citation omitted).

The Fourth Circuit reached the same conclusion in *Doyle v. Hogan*, dismissing the Maryland Attorney General from a challenge to the state's handgun licensing statute. *Doyle v. Hogan* 1 F.4th 249, 259–60 (4th Cir. 2021). The court held that the Attorney General's general "role as legal advisor" was insufficient because the statute vested specific enforcement authority in the Maryland State Police, not the Attorney General. *Id.* at 255, 256. The court explained that "some connection with the enforcement" of the challenged act is required because, "[w]ithout this enforcement duty, the officer is merely 'a representative of the State . . . .'" *Id.* at 254 (quoting *Ex parte Young*, 209 U.S. at 157). Consequently, the court held, "it is not enough that the officer possesses the '[g]*eneral authority* to enforce the laws of the state' broadly if the officer cannot enforce the law at issue." *Id.* at 255 (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001)). Rather, "the officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges." *Id.*; *see also id.* at 256 ("The Attorney General's limited authority to represent and do legal work for the Board, with no power to make the decision about whether to bring the action in the first place, does not create the requisite connection to the enforcement of § 1-212.1 to overcome sovereign immunity.").

In *Mendez*, the Second Circuit likewise held that an attorney general's "duty to support the constitutionality of state statutes . . . and to defend actions in which the state is 'interested'" was insufficient to overcome immunity. 530 F.2d 460. The court reasoned that "the Attorney General does so, not as an adverse party, but as a

21

representative of the State's interest in asserting the validity of its statutes." *Id.* (citation omitted).

The pattern that emerges from these cases is clear. *Ex Parte Young* applies when an attorney general has specific statutory authority to directly enforce the challenged statute. It does not apply when an attorney general's connection to the statute is merely representative or derivative.

### 2. The Attorney General lacks the specific enforcement authority present in *DeWine* and *Russell*.

The Attorney General's role under the ELCRA bears no resemblance to the enforcement authority present in *DeWine* and *Russell*. Unlike the attorneys general in those cases, the Attorney General here cannot initiate investigations of ELCRA violations or adjudicate whether violations have occurred. Her role is limited to enforcing compliance with orders issued by the MDCR and Commission after those officials have already determined that the ELCRA has been violated. Mich. Comp. Laws § 37.2602(b)

The Michigan Attorney General's role under the ELCRA is closer to defendants in *Doyle* and *Free Speech Coalition*. Like the Maryland Attorney General in *Doyle*, the Michigan Attorney General has general supervisory and representative authority but lacks specific enforcement authority over the challenged statute. In *Doyle*, the handgun licensing statute assigned enforcement authority to the Secretary of State Police, making him—not the Attorney General— the proper defendant. 1 F.4th at 260. Here, the ELCRA assigns investigative authority to the MDCR, adjudicatory authority to the Commission, and order-

22

issuing authority to the Commission.  Mich. Comp. Laws §§ 37.2602; 37.2605.  Just as the Maryland Attorney General lacked specific enforcement authority over the licensing statute, the Michigan Attorney General lacks specific enforcement authority over the ELCRA.

As in *Free Speech Coalition*, the statute here creates a specific enforcement scheme that assigns enforcement functions to particular officials—Executive Director Johnson and Commission members—who are already defendants in this case.  119 F.4th at 739–40.  And as in *Doyle*, the Attorney General's authority to enforce Michigan's laws does not give her *specific* enforcement authority over the ELCRA when that statute vests that authority in other officials.  1 F.4th at 260.

> ### a.    The Attorney General's authority under Mich. Comp. Laws §§ 14.29, 14.30, and 14.101 does not authorize suit under *Ex parte Young*.

Plaintiffs point to the Attorney General's general duties under Mich. Comp. Laws §§ 14.29–30 and Mich. Comp. Laws §§ 14.101.  (Compl., ECF No. 1, PageID.5.)  Mich. Comp. Laws § 14.29 requires the Attorney General, "at the request of the governor, the secretary of state, the treasurer or the auditor general, to prosecute and defend all suits relating to matters connected with their departments."  Mich. Comp. Laws § 14.30 provides in part that the Attorney General "shall supervise the work of, consult and advise the prosecuting attorneys . . . ."  Mich. Comp. Laws § 14.101(1) authorizes the Attorney General "to intervene in any action . . . commenced in any court of the state whenever such intervention is necessary in order to protect any right or interest of the state, or of the people of the state."

23

These provisions describe the Attorney General's representative, litigation, and advisory functions—not enforcement authority over the ELCRA. Mich. Comp. Laws §§ 14.29 and Mich. Comp. Laws §§ 14.30 authorize the Attorney General to prosecute and defend actions and supervise prosecutors. Mich. Comp. Laws § 14.101 addresses the Attorney General's ability to intervene in existing actions. None of these provisions grants the Attorney General authority to independently investigate ELCRA violations, conduct hearings, or issue orders directing employers to change their practices.

Reading these general provisions as conferring independent ELCRA enforcement authority would render the Act's specific enforcement scheme meaningless. The ELCRA carefully assigns investigation to the MDCR, adjudication to the Commission, and order-enforcement by legal representation to the Attorney General. Mich. Comp. Laws §§ 37.2602; 37.2605. As *Free Speech Coalition* recognized, permitting suit based on general enforcement statutes "would effectively nullify the Eleventh Amendment" by making every attorney general a proper defendant in every constitutional challenge. 119 F.4th at 740. And as *Doyle* held, "general enforcement authority does not suffice" where the challenged statute assigns specific enforcement functions to other officials. 1 F.4th at 260. The same is true here. The Attorney General's general duties authorize her to represent the MDCR and Commission in litigation—not to independently enforce the ELCRA itself.

24

## II.    Plaintiffs lack standing to sue the Attorney General.

Even if the Attorney General were not entitled to Eleventh Amendment immunity, Plaintiff lack standing to sue her.  To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Plaintiffs cannot satisfy any of these requirements as to the Attorney General.[2]

### A.    Plaintiffs have not alleged a viable injury in fact.

To establish an injury in fact, a plaintiff must sufficiently allege a "concrete and particularized" injury that is "actual or imminent, not 'conjectural or hypothetical.' "  *Lujan*, 504 U.S. at 560.  "In a pre-enforcement challenge, whether the plaintiff has standing to sue often turns upon whether he can demonstrate an 'injury in fact' before the state has actually commenced an enforcement proceeding against him."  *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (citation omitted).  Courts have recognized that "[a]n allegation of future injury may" suffice if the "threatened injury is 'certainly impending,' or there is a 'substantial risk that

---

[2] Standing and *Ex parte Young* immunity analyses overlap substantially because both require examining which officials have enforcement authority over the challenged statute. *See Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032–33 (6th Cir. 2022) (holding plaintiffs lacked standing to sue Tennessee Attorney General because he had no enforcement authority).  Both doctrines ask the same foundational question: Can this defendant enforce the challenged law against the plaintiff?

the harm will occur.' " *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)

(quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  Specifically, a

plaintiff satisfies the injury-in-fact requirement" in the pre-enforcement context

"where he alleges 'an intention to engage in a course of conduct arguably affected

with a constitutional interest, but proscribed by a statute, and there exists a

credible threat of prosecution thereunder.' "  *Id.* at 159 (quoting *Babbitt v. United*

*Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Here, Plaintiffs allege that they face imminent injury because the ELCRA,

which now defines "sex" discrimination to include "termination of a pregnancy,"

forces them as pro-life organizations to hire applicants with pro-abortion views,

prohibits them from screen applicants based on abortion-related beliefs, and

requires them to provide abortion coverage in employee health benefits.  (Compl.,

ECF No. 1, PageID.3.)  They assert their current employment practices violates the

law, they face this risk daily with open positions and incoming applications, and

they are subject to substantial penalties including fines and loss of state-issued

licenses.  (*Id.*)

Plaintiffs further allege that "the Attorney General, the Commission, and the

Department are responsible for investigating, enforcing, and prosecuting alleged

violations of Michigan's employment law," and that the Attorney General "actively

receive[s] and prosecute[s] complaints alleging violations of Michigan's employment

law."  (*Id.* ¶¶ 413, 423.)  These allegations are conclusions unsupported and directly

contradicted by the statute itself.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

26

(courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

The ELCRA's text and the relevant administrative rules assign enforcement authority exclusively to the MDCR and Commission.  The MDCR receives complaints of unlawful discrimination by person "claiming to be aggrieved."  Mich. Admin. Code. R. 37.4(1); *see also* Mich. Comp. Laws § 37.2602(c).  So, too, can "[a] commissioner, director, or agent authorized by the commissioner or director . . . initiate, make, sign, and file a complaint in the public's interest."  Mich. Admin. Code R. 37.4(2).  The MDCR then investigates the complaint and, if "there are sufficient grounds," issues a charge.  Mich. Admin. Code R. 37.6(1); *see also* Mich. Comp. Laws § 37.2602(c).  The Commission and Director of the MDCR may then "schedule and conduct a hearing . . . ."  Mich. Admin. Code R. 37.12(1).  The hearing is "conducted by 1 or more hearing commissioners, or 1 or more hearing referees, or any combination of hearing commissioners or hearing referees."  Mich. Admin. Code R. 37.12(3).  The commissioners or referees "have full authority to control the procedure of the hearing . . . ."  Mich. Admin. Code R. 37.12(7).  And the Commission is charged with issuing an order "after the hearing . . . set[ting] forth the findings of fact and the basis for its decision."  Mich. Admin. Code R. 37.16(1).  Orders must be then "filed with the director" of the MDCR.  Mich. Admin. Code R. 37.12(4).  In its order, the Commission may order remedies including "damages," "cease and desist orders," and "revocation" of licenses.  Mich. Comp. Laws § 37.2605.

27

Plaintiffs acknowledge these statutory provisions in their own complaint.  (Compl., ECF No. 1, Page.ID.59–60, ¶¶ 414–15, 419, 421.)

Yet nowhere does the statute authorize the Attorney General to receive complaints, investigate violations, issue charges, conduct hearings, or order remedies.  The Attorney General's sole statutory role is to "appear for and represent the department or the commission in a court having jurisdiction of a matter under this act."  Mich. Comp. Laws § 37.2602(b).  Similarly, the Administrative Rules allow, but do not require, MDCR's counsel to present the case for the discrimination charge at the hearing before the Commission.  Mich. Admin. Code R. 37.12(6).

Plaintiffs' conclusory allegations cannot overcome this statutory and administrative reality. Indeed, Plaintiffs' own factual allegations contradict their legal conclusions about the Attorney General's enforcement role.  The complaint alleges in detail that "[t]he Department receives complaints," (Compl., ECF No. 1, PageID.59, ¶ 414), "[t]he Department investigates each complaint," (*id.*, ¶ 419), penalties are imposed by the Commission, (*id.*, ¶ 421), and private parties may file civil actions, (*id.*, ¶ 422). Plaintiffs further allege that "[i]n fiscal year 2024, the Department reviewed approximately 1,400 complaints" and "2,487 certified complaints."  (*Id.*, ¶¶ 424–25).  The complaint contains no factual allegations showing the Attorney General receives ELCRA complaints, investigates alleged ELCRA violations, issues ELCRA charges, conducts hearings, or orders remedies. Plaintiffs' non-conclusory descriptions of the ELCRA's enforcement process confirms

28

what the statute makes plain: enforcement authority belongs to the MDCR and Commission, not the Attorney General.

Plaintiffs also point to the Attorney General's public statements supporting abortion access and her involvement in other abortion-related litigation.  (*Id.*, ¶¶ 426–27.)  But these allegations establish only the Attorney General's policy preferences and litigation activities—not enforcement authority over the ELCRA. An official's views on a policy issue do not confer statutory enforcement authority. *See Davis v. Colerain Twp.*, 51 F.4th 164, 174 (6th Cir. 2022) (police chief's general statements about enforcing laws "in the abstract" do not establish credible threat of enforcement against specific plaintiff).  Moreover, in other litigation involving abortion-related claims, the Attorney General has repeatedly disclaimed any intent to require medical professionals to provide abortion-related services, emphasizing that state and federal conscience laws protect physicians who object to abortion. *See Right to Life of Mich. v. Nessel*, No. 1:23-cv-01189-PLM-RSK (W.D. Mich.) (ECF No. 30, PageID.231–232 (arguing that plaintiff physician's" alleged injury is speculative at best" given "state and federal conscience-laws protecting physicians"); (*id.*, ECF No. 35, PageID.357–358) (noting that "Plaintiffs have not identified a single medical professional . . . who has been forced . . . to (1) provide care that conflicts with their sincerely held religious beliefs" and emphasizing protections under "federal and state conscience laws").  In sum, Plaintiffs' allegations about the Attorney General's policy views do not establish the statutory enforcement authority necessary for standing.

Plaintiffs' allegations, even taken as true, do not establish a credible threat of enforcement by the Attorney General sufficient to show an injury in fact. The Sixth Circuit's recent analysis in *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826 (6th Cir. 2024), illustrates why. There, the district court had granted a motion to dismiss pre-enforcement ELCRA challenges for lack of standing. *Id.* at 841–42. The Sixth Circuit reversed, holding that plaintiffs had established standing to sue the defendants with enforcement authority—the MDCR and Commission. *Id.* at 853–55. Critically, although the Attorney General was a named defendant in the district court proceedings below, *id.* at 841, the Sixth Circuit's standing analysis made no mention of her. The court's analysis focused on whether the plaintiffs faced a credible threat of enforcement from the MDCR. *Id.* at 849–55.

The court examined the ELCRA's enforcement scheme to identify which officials posed a credible enforcement threat, noting that citizen complaints are filed with the MDCR, which investigates and issues charges, and that the Commission conducts hearings and orders remedies. *Id.* at 838, 849–50. Nowhere in this analysis did the court suggest that the Attorney General receives complaints, conducts investigations, issues charges, or adjudicates violations. The court held that plaintiffs had standing to sue, but, again, at no point did the Court discuss the specific credible threat of enforcement the plaintiffs faced from the Attorney General. *Id.* at 853–55.

The Sixth Circuit's analysis in *Christian Healthcare* aligns with its holding in *Universal Life Church v. Nabors*, where the Sixth Circuit held that plaintiffs lacked

standing to sue the Tennessee Attorney General because he had no authority to enforce the challenged statute.  35 F.4th 1021, 1032-33 (6th Cir. 2022).  The Tennessee Attorney General could not initiate prosecutions (district attorneys had that power) and could not command district attorneys to prosecute.  *Id.*  Similarly here, the Michigan Attorney General does not initiate ELCRA enforcement (the MDCR does that), does not adjudicate violations (the MDCR and Commission do that), and does not command the MDCR or Commission to take enforcement action.  Nor does she have supervisory or appointment authority over the MDCR or Commission—a constitutionally created entity.  *See* Mich. Comp. Laws § 37.2601(1)(c) (providing that the Commission "[a]ppoint[s] an executive director who shall be the chief executive officer of the department"); Mich. Const. 1963, Art. V, § 29 (providing that the Governor appoints the eight Commission members).  The Attorney General's role is purely representational.  Mich. Comp. Laws § 37.2602(b).

## B.    Any alleged injury is not fairly traceable to the Attorney General.

Even assuming Plaintiffs could establish an injury in fact, that injury is not fairly traceable to the Attorney General.  To satisfy Article III's causation requirement, a plaintiff must show that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61; *see also Bennett v. Spear*, 520 U.S. 154, 167 (1997) (plaintiff must establish "causal connection" between alleged injury and defendant's conduct).

31

Here, any injury Plaintiffs might suffer from ELCRA enforcement would result from enforcement decisions made by the MDCR and Commission, not the Attorney General.  The MDCR receives complaints, decides whether to investigate them, and determines whether probable cause exists.  Mich. Comp. Laws § 37.2602(c)–(d); Mich. Admin. Code R. 37.6(1).  The Commission decides whether to conduct hearings and whether to issue orders finding ELCRA violations.  Mich. Comp. Laws § 37.2605.  The Attorney General makes none of these decisions.  Her involvement comes only after the MDCR and Commission have already exercised their enforcement discretion.  Mich. Comp. Laws § 37.2602(b).

Because the MDCR and Commission—not the Attorney General—are the source of any alleged injury, Plaintiffs cannot establish the required causal connection for their claims against the Attorney General.  *See Doyle*, 1 F.4th at 256 (in the immunity context, holding that "[s]imply advising other departments does not give the Attorney General control over *enforcing* the Act"); *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 785 (5th Cir. 2024) (holding that an alleged injury was not fairly traceable where private individuals, not the defendants, were responsible for enforcement); *Support Working Animals, Inc. v. Governor of Florida*, 8 F.4th 1198, 1201, 1203 (11th Cir. 2021) (holding that plaintiffs did not have standing to sue the Florida Attorney General where they another state agency was charged with imposing penalties under statute).  The Attorney General's representational role does not create the causal connection necessary to satisfy Article III.  *See Lujan*, 504 U.S. at 560–61.

32

### C.  Plaintiffs' alleged injury is not redressable by relief against the Attorney General.

Finally, Plaintiffs cannot show that their alleged injury would be redressed by a favorable decision against the Attorney General.  The redressability requirement asks whether it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561.  A plaintiff must demonstrate that the relief sought will prevent or remedy the alleged harm.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).

An injunction against the Attorney General would not prevent ELCRA enforcement against Plaintiffs.  The MDCR and Commission retain full authority to investigate complaints, find violations, and issue orders without any involvement from the Attorney General.  Mich. Comp. Laws §§ 37.2602(c)–(d), 37.2605.  An injunction barring her from enforcing the ELCRA would therefore have no effect on the statute's actual enforcement against Plaintiffs.

Moreover, private parties may bring their own civil actions to enforce the ELCRA directly in court.  Mich. Comp. Laws § 37.2801 ("A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.").  In other words, even if the Attorney General were enjoined from all involvement in ELCRA matters, private parties could still sue Plaintiffs under the statute.  Plaintiffs' alleged injury is thus not redressable by relief against the Attorney General.  *See Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (plaintiff must show "real and immediate threat" that will be remedied by injunction sought).

33

Because ELCRA can be fully enforced against Plaintiffs—both through MDCR and Commission proceedings and through private civil actions—without the Attorney General's involvement, relief against her would not redress Plaintiffs' alleged injury.

**\* \* \***

This Court should dismiss Plaintiffs' claims against the Attorney General. Under proper standing and immunity analyses, the conclusion is the same: the Attorney General is not a proper defendant because she lacks enforcement authority over the ELCRA.  The statute does not vest her with authority to investigate complaints, issue charges, conduct hearings, or order remedies.  Those functions belong to the MDCR and Commission.  Because the Attorney General has no enforcement authority, she is immune from suit and Plaintiffs lack standing to sue her.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, the Attorney General respectfully requests that this Court dismiss Plaintiffs' complaint against her.

Respectfully submitted,

/s/ Joshua S. Smith
Joshua S. Smith (P63349)
Assistant Attorney General
Michigan Dept. of Attorney General
Attorney for Def. AG Dana Nessel
Corrections Division
(517) 335-3055
smithj191@michigan.gov

Dated: April 3, 2026

34

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, I electronically filed the above document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel.

*/s/ Joshua S. Smith*
Joshua S. Smith (P63349)
Assistant Attorney General
Attorney for Def. AG Dana Nessel