# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **Right to Life of Michigan** and **Pregnancy Resource Center,**<br><br>Plaintiffs,<br><br>v.<br><br>**Dana Nessel,** in her official capacity as Attorney General of Michigan; **John E. Johnson, Jr.,** in his official capacity as Executive Director of the Michigan Department of Civil Rights; **Luke R. Londo, Gloria E. Lara, Richard R. White III, Portia L. Roberson, Zenna Faraj Elhason, Regina Marie Gasco, Rosann L. Barker,** and **Skot Welch,** in their official capacities as members of the Michigan Civil Rights Commission,<br><br>Defendants. | Case No. 1:26-cv-00390-RJJ-SJB<br><br>Hon. Robert J. Jonker<br>Magistrate Sally J. Berens<br><br>**Plaintiffs' Combined Response to MDCR and MCRC Defendants' Motion to Dismiss and Reply in Support of Their Preliminary Injunction Motion**<br><br>*Oral Argument Requested* |

## TABLE OF CONTENTS

Table of Authorities ............................................................................................iii

Introduction ...................................................................................................... 1

Standard of Review............................................................................................ 2

Argument .......................................................................................................... 3

I.    Right to Life and PRC have standing to challenge ELCRA. ............................ 3

      A.    They suffer an injury-in-fact..................................................................... 3

            1.    ELCRA arguably proscribes their constitutionally protected
                  activities, as Michigan largely admits. ......................................... 4

                  a.    Employment Clause............................................................ 4

                  b.    Notice Clause. ................................................................. 13

                  c.    Benefits Clause. ............................................................... 15

                  d.    Accommodation Clause...................................................... 15

                  e.    Accommodation Publication Clause..................................... 16

            2.    They face a credible threat of enforcement under *Christian
                  Healthcare Centers* and other precedent. ................................... 17

      B.    ELCRA causes their injury, and their claims are redressable............. 24

II.   Michigan's contrary jurisdictional arguments conflict with binding
      precedent. ................................................................................................ 28

      A.    Michigan's BFOQ process does not defeat Right to Life's and PRC's
            standing. ............................................................................................ 28

      B.    Michigan is not immune from this *Ex Parte Young* action.................... 34

      C.    Michigan's appeal to rare abstention doctrines fails. ........................... 36

III.  Right to Life and PRC meet the preliminary-injunction factors.................... 38

      A.    Right to Life and PRC are likely to succeed on the merits, and
            Michigan never contests the merits. ................................................... 38

i

B.  A preliminary injunction stops Right to Life's and PRC's ongoing, irreparable harm. .............................................................................. 39

C.  A preliminary injunction balances the equities and serves the public interest here. ........................................................................................ 42

Conclusion ................................................................................................................. 43

## Table of Authorities

**<u>Cases</u>**

*Allegheny County v. Frank Mashuda Company*,
      360 U.S. 185 (1959) ................................................................................... 36

*Association of American Physicians & Surgeons v. United States Food & Drug Administration*,
      13 F.4th 531 (6th Cir. 2021) .................................................................... 2

*Babbitt v. United Farm Workers National Union*,
      442 U.S. 289 (1979) ................................................................................. 19

*Barrett v. Whirlpool Corporation*,
      556 F.3d 502 (6th Cir. 2009) .................................................................. 8

*Bell Atlantic Corporation v. Twombly*,
       550 U.S. 544 (2007) ................................................................................ 2

*Bella Health & Wellness v. Weiser*,
      699 F. Supp. 3d 1189 (D. Colo. 2023) ................................................. 33

*Bennett v. Spear*,
      520 U.S. 154 (1997) ................................................................................. 2

*Block v. Canepa*,
      74 F.4th 400 (6th Cir. 2023) ................................................................. 19

*Bostock v. Clayton County, Georgia*,
       590 U.S. 644 (2020) ............................................................................... 11

*Buck v. Gordon*,
      429 F. Supp. 3d 447 (W.D. Mich. 2019)............................................... 42

*Buckley v. Fitzsimmons*,
      509 U.S. 259 (1993) ............................................................................... 34

*Buford v. Sun Oil Corporation*,
      319 U.S. 315 (1943) ............................................................................... 36

*Butz v. Economou*,
      438 U.S. 478 (1978) ............................................................................... 34

*Catholic Charities of Jackson, Lenawee, & Hillsdale Counties v. Whitmer*,
      162 F.4th 686 (6th Cir. 2025) ........................................................ 17, 18, 24

*Cerame v. Slack,*
123 F.4th 723 (2d Cir. 2024) ...................................................................... 7

*Chapman v. Tristar Products, Inc.,*
940 F.3d 299 (6th Cir. 2019) .................................................................... 29

*Chiles v. Salazar,*
146 S. Ct. 1010 (2026) ......................................................................... 17, 21

*Christian Healthcare Centers, Inc. v. Nessel,*
117 F.4th 826 (6th Cir. 2024) ...................................................*passim*

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ................................................................................ 33

*City of Houston v. Hill,*
482 U.S. 451 (1987) ................................................................................ 36

*Cleavinger v. Saxner,*
74 U.S. 193 (1985) .................................................................................. 34

*Consolidated Edison Company of New York v. Public Service Commission of
New York,*
447 U.S. 530 (1980) ................................................................................ 40

*Cooperrider v. Woods,*
127 F.4th 1019 (6th Cir. 2025) ............................................................... 34

*Crenshaw v. Baynerd,*
180 F.3d 866 (7th Cir. 1999) ................................................................... 34

*D.T. v. Sumner County Schools,*
942 F.3d 324 (6th Cir. 2019) .................................................................. 39

*Darren Patterson Christian Academy v. Roy,*
699 F. Supp. 3d 1163 (D. Colo. 2023) .................................................... 38

*Defending Education v. Olentangy Local School District Board of Education,*
158 F.4th 732 (6th Cir. 2025) .................................................... 17, 38, 42

*Doe v. Snyder,*
449 F. Supp. 3d 719 (E.D. Mich. 2020) .................................................. 37

*Eide v. Kelsey-Hayes Company,*
427 N.W.2d 488 (Mich. 1988) ................................................................... 4

*Emilee Carpenter, LLC v. James,*
107 F.4th 92 (2nd Cir. 2024) .................................................................... 33

*Ex Parte Young,*
209 U.S. 123 (1908) .................................................................................. 34

*FDA v. Alliance for Hippocratic Medicine,*
602 U.S. 367 (2024) .................................................................................. 24

*Federal Election Commission v. Wisconsin Right To Life, Inc.,*
551 U.S. 449 (2007) .................................................................................. 40

*Fulton v. City of Philadelphia,*
593 U.S. 522 (2021) .................................................................................. 33

*G & V Lounge, Inc. v. Michigan Liquor Control Commission,*
23 F.3d 1071 (6th Cir. 1994) .................................................................... 31

*Grand v. City of University Heights,*
159 F.4th 507 (6th Cir. 2025) .................................................................. 31

*Green v. Mansour,*
474 U.S. 64 (1985) .................................................................................... 35

*Green Party of Tennessee v. Hargett,*
791 F.3d 684 (6th Cir. 2015) .................................................................... 24

*Gregory v. Ashcroft,*
501 U.S. 452 (1991) .................................................................................. 35

*Haynes v. Neshewat,*
729 N.W.2d 488 (Mich. 2007) ........................................................... 15, 16

*Hunter v. Hamilton County Board of Elections,*
635 F.3d 219 (6th Cir. 2011) .................................................................... 36

*Johnson v. University of Cincinnati,*
215 F.3d 561 (6th Cir. 2000) ...................................................................... 8

*Johnson v. Rodrigues,*
226 F.3d 1103 (10th Cir. 2000) ................................................................ 37

*Jones v. Coleman,*
848 F.3d 744 (6th Cir. 2017) ............................................................... 36, 37

*Kentucky v. Yellen,*
54 F.4th 325 (6th Cir. 2022) ............................................................. 4, 8, 24

*Knight v. City of New York,*
 164 F.4th 173 (2d Cir. 2026) ............................................................................. 25

*Larsen v. Valente,*
 456 U.S. 228 (1982) ........................................................................................... 25

*Mahmoud v. Taylor,*
 606 U.S. 522 (2025) ..................................................................................... 39, 42

*Matsumoto v. Labrador,*
 122 F.4th 787 (9th Cir. 2024) ......................................................................... 25

*McKay v. Federspiel,*
 823 F.3d 862 (6th Cir. 2016) ..................................................................... 17, 21

*Miller v. City of Wickliffe,*
 852 F.3d 497 (6th Cir. 2017) ..................................................................... 31, 32

*Minnesota Voters Alliance v. Mansky,*
 585 U.S. 1 (2018) ............................................................................................... 37

*Mirabelli v. Bonta,*
 146 S. Ct. 797 (2026) ........................................................................................ 17

*Moms for Liberty-Wilson County, Tennessee v. Wilson County Board of
 Education,*
 155 F.4th 499 (6th Cir. 2025) ..................................................................... 22, 40

*NRA v. Magaw,*
 132 F.3d 272 (6th Cir. 1997) ........................................................................... 20

*North Carolina Right to Life, Inc. v. Bartlett,*
 168 F.3d 705 (4th Cir. 1999) ......................................................................... 7, 8

*Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,*
 477 U.S. 619 (1986) ........................................................................................... 32

*Ohio National Life Insurance Company v. United States,*
 922 F.2d 320 (6th Cir. 1990) ............................................................................. 2

*O'Neill v. Coughlan,*
 511 F.3d 638 (6th Cir. 2008) ........................................................................... 41

*Parsons v. U.S. Department of Justice,*
 801 F.3d 701 (6th Cir. 2015) ........................................................................... 25

*Planned Parenthood Association of Cincinnati, Inc. v. City of Cincinnati,*
    822 F.2d 1390 (6th Cir. 1987) ............................................................... 14

*Peoples Rights Organization, Inc. v. City of Columbus,*
    152 F.3d 522 (6th Cir. 1998) ................................................................. 24

*Picard v. Magliano,*
    42 F.4th 89 (2d Cir. 2022) ...................................................................... 7

*Pittsburgh Press Company v. Pittsburgh Commission of Human Relations,*
    413 U.S. 376 (1973) ............................................................................... 13

*Platt v. Board of Commissioners on Grievances & Discipline of Ohio*
    *Supreme Court,*
    769 F.3d 447 (6th Cir. 2014) ........................................................... 3, 24

*Poe v. Ullman,*
    367 U.S. 497 (1961) ............................................................................... 19

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
    592 U.S. 14 (2020) ................................................................................ 40

*Rouch World, LLC v. Department of Civil Rights,*
    987 N.W.2d 501 (Mich. 2022) .............................................................. 11

*Russell v. Lundergan-Grimes,*
    784 F.3d 1037 (6th Cir. 2015) .............................................................. 20

*Siders v. City of Brandon,*
    123 F.4th 293 (5th Cir. 2024) ................................................................ 7

*Skyline Wesleyan Church v. California Department of Managed Health Care,*
    968 F.3d 738 (9th Cir. 2020) ................................................................ 25

*Sniecinski v. Blue Cross & Blue Shield of Michigan,*
    666 N.W.2d 186 (Mich. 2003) .............................................................. 10

*Speech First, Inc. v. Schlissel,*
    939 F.3d 756 (6th Cir. 2019) ................................................................ 19

*State of Tennessee v. Department of Education,*
    104 F.4th 577 (6th Cir. 2024) ................................................................ 2

*Steffel v. Thompson,*
    415 U.S. 452 (1974) .................................................................... 32, 34, 40

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ................................................................................*passim*

*Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.,*
173 F.3d 988 (6th Cir. 1999) ...................................................................... 8

*Turic v. Holland Hospitality, Inc.,*
85 F.3d 1211 (6th Cir. 1996) ................................................................. 8, 9, 10

*Union Gospel Mission of Yakima Washington v. Brown,*
162 F.4th 1190 (9th Cir. 2026) ................................................................. 33. 34

*United States v. Stevens,*
559 U.S. 460 (2010) .................................................................................. 27

*Vermont Right to Life Committee, Inc. v. Sorrell,*
221 F.3d 376 (2d Cir. 2000) ...................................................................... 7, 14

*Virginia v. America Booksellers Association, Inc.,*
484 U.S. 383 (1988) .................................................................................. 20, 39

*Whole Woman's Health v. Jackson,*
595 U.S. 30 (2021) .................................................................................... 35

*Woods v. Progressive Mutual Insurance Company,*
166 N.W.2d 613 (Mich. App. 1968) ............................................................ 27

## Statutes and Regulations

42 U.S.C.A. § 2000e-1 .................................................................................. 25

Fed. R. Civ. P. 36 ........................................................................................ 22

MCL 37.1102 ............................................................................................... 15

MCL 37.1302 ............................................................................................... 15

MCL 37.2201 .........................................................................................*passim*

MCL 37.2202 .........................................................................................*passim*

MCL 37.2206 ............................................................................................... 13, 14

MCL 37.2208 ............................................................................................... 4

MCL 37.2302 ............................................................................................... 16

MCL 37.2602 ............................................................................................................ 21

MCL 37.2605 ................................................................................... 21, 23, 24, 35

MCL 37.2606 ............................................................................................................ 35

MCL § 500.2236 ...................................................................................................... 27

MDCR Rule 37.2 ..................................................................................................... 23

MDCR Rule 37.4 ..................................................................................................... 35

MDCR Rule 37.9 ..................................................................................................... 35

MDCR Rule 37.11 .................................................................................................. 21

MDCR Rule 37.20 .................................................................................................. 34

MDCR Rule 37.21 .................................................................................................. 22

MDCR Rule 37.23 ........................................................................................... 22, 37

MDCR Rule 37.25 .................................................................................................. 30

## Other Authorities

Ivan Bodensteiner and Rosalie Berger, *Burford and Colorado River abstention*, 1 State and Local Government Civil Rights Liability § 1:30 (2024) ............................................................................................................ 36

Franz Kafka, *The Trial 232* (Willa Muir & Edwin Muir trans., Penguin Books 1980) (1925) .......................................................................................... 21

Michigan Department of Civil Rights, *Pre-employment inquiry guide*, https://tinyurl.com/f2ysm9c3 ........................................................................ 14

Michigan Department of Insurance and Financial Services, *Bulletin 2023-07-BT/CF/CU/INS* (March 16, 2023), https://tinyurl.com/wfmpazku .............. 27

Michigan Department of Civil Rights, *Michigan Civil Rights Commission 2025 Annual Report 31–32 (2025)*, https://tinyurl.com/ynas2k6m ................. 20

Michigan Senate Fiscal Agency, *S.B. 147: Analysis as Enacted* (Apr. 2, 2024), https://tinyurl.com/45cm33kp .......................................................................... 9

## Introduction

Right to Life and PRC are pro-life organizations that rely on their employees to promote their message about the value of human life, including unborn life. PRC likewise depends on its volunteers to advance its religious beliefs. But Michigan's Elliott-Larsen Civil Rights Act (ELCRA) and a new interpretation of state law put Right to Life and PRC at risk of prosecution. So they filed this suit to protect their constitutional rights and sought a preliminary injunction to prevent enforcement.

The Department of Civil Rights and the Civil Rights Commission (Michigan) confirm that ELCRA applies here. The Employment Clause prohibits Right to Life and PRC from taking adverse action against an employee who obtains an abortion while employed. The Notice Clause bans them from posting their explicitly pro-life job expectations. The Benefits Clause forces them to cover abortion in their insurance plans. And the Accommodation and Accommodation Publication Clauses forbid PRC from adopting policies or publishing statements that would ensure volunteers agree with its beliefs. Meanwhile, Michigan actively enforces ELCRA, does not disavow enforcement, makes enforcement easy, and imposes harsh penalties. Under a plain reading of *Christian Healthcare Centers, Inc. v. Nessel* (*CHC*), 117 F.4th 826 (6th Cir. 2024), Right to Life and PRC have standing.

To avoid the merits, Michigan recycles an argument about its bona fide occupational qualification (BFOQ) process that the Sixth Circuit already rejected. Michigan then pushes novel requirements for pre-enforcement standing. It finally invokes abstention. But none of these tactics deprives this Court of jurisdiction.

On the merits, Right to Life and PRC deserve an injunction. They are likely to win on the merits. They currently suffer irreparable harm. And an injunction balances the equities and promotes the public's interest by preventing Michigan from enforcing ELCRA in unconstitutional ways. Right to Life and PRC ask this Court to deny Michigan's motion to dismiss and grant their requested injunction.

1

## Standard of Review

Michigan moves to dismiss this case under Rules 12(b)(1) and 12(b)(6). ECF No. 25, PageID.459. It defends against Right to Life's and PRC's requested preliminary injunction for largely the same reasons.

Rule 12(b)(1) motions come in facial and factual "varieties." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Michigan opted for "a factual attack," *id.*, by submitting and relying on a declaration, ECF No. 26-2, PageID.516-520. But it never disputes any allegation in Right to Life's and PRC's complaint, so those must be taken as true. *CHC*, 117 F.4th at 842. For jurisdiction, Right to Life and PRC rely on their verified complaint and its exhibits, evidence attached to their preliminary-injunction motion, supplemental evidence previously filed, and evidence attached to this brief. This Court has "wide discretion" to consider this evidence to resolve the jurisdictional question. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325 (collecting cases).

For Rule 12(b)(6) motions, courts assume that the complaint's allegations and incorporated documents are "true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Right to Life and PRC have standing under both standards. At this motion-to-dismiss stage, their burden "is relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). They need only pass the "plausibility test." *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021) (citation modified). They ace that test because they've mustered more than "enough fact[s] to raise a reasonable expectation" of jurisdiction. *Twombly*, 550 U.S. at 556. Those same facts also show Right to Life and PRC have a "substantial likelihood of standing" to pursue their injunctive relief. *State of Tennessee v. Dep't of Educ.*, 104 F.4th 577, 595 (6th Cir. 2024).

### Argument

(I) Right to Life and PRC have standing. The Employment, Notice, Benefits, Accommodation, and Accommodation Publication Clauses apply to them. Those clauses (at least arguably) prohibit their desired activities. And Michigan actively enforces its law, cannot disavow enforcement, allows almost anyone to file discrimination complaints, and imposes severe penalties. As a result, Right to Life and PRC have chilled their speech, causing ongoing injuries. The Sixth Circuit has held that non-profit organizations have standing to challenge ELCRA under similar circumstances. That conclusion applies here.

(II) Michigan's effort to dismiss this suit contradicts Sixth Circuit and other precedent and relies on inapplicable abstention principles.

(III) For similar reasons—and because Michigan never contests the merits of the constitutional claims—Right to Life and PRC deserve a preliminary injunction. They are likely to win on the merits, suffer irreparable harm, and show that an injunction here balances the equities and serves the public interest.

## I.      Right to Life and PRC have standing to challenge ELCRA.

Right to Life and PRC have standing to bring this suit because they have shown injury-in-fact, causation, and redressability. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 157 (2014). ELCRA injures Right to Life and PRC, and Right to Life's and PRC's requested relief redresses their injury.

### A.      They suffer an injury-in-fact.

Michigan's law injures Right to Life and PRC. Courts do not "closely scrutinize the plaintiff's complaint for standing" in pre-enforcement First Amendment cases like this one. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014). To establish injury-in-fact, Right to Life and PRC need only show a "substantial risk" of Michigan's law harming them. *SBA*

3

*List*, 573 U.S. at 158 (citation modified). And Right to Life and PRC clear this low hurdle because (i) they intend "to engage in a course of conduct arguably affected with a constitutional interest"; (ii) their activities are "arguably proscribed by" Michigan's law; and (iii) they face a "credible threat of prosecution." *Id.* at 159, 162 (citation modified). Michigan does not dispute the first element. Nor could it: the Constitution protects Right to Life's and PRC's activities. ECF No. 8, PageID.334-357. That leaves the last two elements.

### 1.    ELCRA arguably proscribes their constitutionally protected activities, as Michigan largely admits.

The Employment, Notice, Benefits, Accommodation, and Accommodation Publication Clauses arguably prohibit Right to Life's and PRC's activities. These clauses are "liberally construed" to fulfill ELCRA's anti-discrimination purpose. *Eide v. Kelsey-Hayes Co.*, 427 N.W.2d 488, 491 (Mich. 1988). For this element, Right to Life and PRC must offer only a "*plausible* interpretation of the statute." *Kentucky v. Yellen*, 54 F.4th 325, 337 (6th 2022). They have. Indeed, Michigan's emphasis on the BFOQ process proves that Right to Life's and PRC's activities arguably violate the Employment, Notice, and Benefits Clauses. *See* ECF No. 26, PageID.481-486. If their activities *did not* violate those clauses, there would be no need to request a BFOQ—BFOQs only exempt otherwise illegal actions. MCL 37.2208. Taking the Employment, Notice, Benefits, Accommodation, and Accommodation Publication Clauses in turn lead to the same conclusion.

### a.    Employment Clause.

Right to Life and PRC at least arguably violate the Employment Clause because (i) Michigan admits one way Right to Life and PRC violate the law; (ii) the text supports other ways they arguably violate the law; and (iii) Michigan's non-binding attempt to narrow the clause do not disprove that they arguably violate it.

4

**(i).** Start where the parties agree: Michigan admits that Right to Life's and PRC's "intent to terminate someone if they obtain an abortion while employed" violates the Employment Clause. ECF No. 26, PageID.492. That admission alone shows that Right to Life's and PRC's desired activities arguably violate the Employment Clause. *See, e.g.*, ECF No. 1, PageID.8-9, 15-17, 24 (describing organizations' policies). Put differently, Michigan's concession—by itself and without more—proves Right to Life and PRC have standing to challenge the Employment Clause.

**(ii).** Michigan's concession aligns with ELCRA's text, and that text highlights other ways Right to Life and PRC arguably violate the Employment Clause. ELCRA defines "sex" in employment as "includ[ing]," but "not limited to, pregnancy, childbirth, the termination of a pregnancy, or related medical condition." MCL 37.2201(d). The Employment Clause then prohibits "sex" discrimination in MCL 37.2202(a), MCL 37.2202(b), and MCL 37.2202(d).

MCL 37.2202(a) prohibits employers from "[f]ail[ing] or refus[ing] to hire or recruit, discharg[ing], or otherwise discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … sex." Right to Life and PRC would not "hire or recruit" applicants who do not agree to refrain from abortion while employed. ECF No. 1, PageID.3, 15-16, 32-34; ECF No. 1-4, PageID.90; ECF No. 1-6, PageID.94; ECF No. 1-7, PageID.96; ECF No. 1-10, PageID.103; ECF No. 1-12, PageID.113; ECF No. 1-16, PageID.125. Right to Life and PRC would "discharge" an employee who has an abortion or engages in conduct antithetical to their pro-life mission while employed. And Right to Life's and PRC's policies on abortion are "term[s]" and "condition[s]" of employment. Those policies hinge on "the termination of a pregnancy"—i.e., sex. MCL 37.2201(d).

MCL 37.2202(b) prohibits employers from "limit[ing], segregat[ing], or classify[ing] an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity or otherwise adversely affects the status of the employee or applicant because of … sex." This language is even broader than MCL 37.2202(a)—especially the phrase "deprives or tends to deprive." Again, Right to Life's and PRC's policies prohibiting employee conduct inconsistent with their pro-life values, including elective abortions, "deprives or tends to deprive" employees and applicants of employment opportunities based on "the termination of a pregnancy."

MCL 37.2202(d) prohibits employers from "[t]reating an individual affected by … the termination of a pregnancy … differently for any employment-related purpose from another individual who is not so affected." Once more, Right to Life's and PRC's policies "[t]reat an individual affected by … termination of a pregnancy" "differently" than individuals "not so affected" by making "termination of a pregnancy" grounds for dismissal. MCL 37.2202(d). So Right to Life and PRC arguably violate the Employment Clause by adopting policies that single out the termination of a pregnancy. ECF No. 1, PageID.8-9, 15-17, 24; ECF No. 1-4, PageID.90; ECF No. 1-6, PageID.94; ECF No. 1-7, PageID.96; ECF No. 1-10, PageID.103; ECF No. 1-12, PageID.113; ECF No. 1-16, PageID.125. They have standing.

**(iii).** Michigan tries to narrow the Employment Clause by omitting two of the clause's key features. *First*, Michigan ignores that "sex" "is not limited to" "medical condition[s]." *Compare* MCL 37.2201(d) *with* ECF No. 26, PageID.493 (defining "sex" without the prefatory "is not limited to" language). *Second*, Michigan only interprets the text of MCL 37.2202(d)—not MCL 37.2202(a)-(b)—and focuses on that section's unique "affected by" phrase. ECF No. 26, PageID.494. Those two oversights lead Michigan to a faulty interpretative conclusion: "'termination of a

6

pregnancy' refers exclusively to the objective fact of whether one has obtained, or intends to obtain, an abortion." ECF No. 26, PageID.293. As explained in (i) and (ii), Right to Life and PRC have standing even under that reading.

But in the next breath, Michigan hedges. For example, Michigan says Right to Life's and PRC's "intended conduct *likely* does not violate ELCRA." ECF No. 26, PageID.486 (emphasis added). Michigan also claims that ELCRA does not prohibit Right to Life and PRC from taking adverse employment actions because of an employee's "opinions" or "beliefs about abortion." *Id.* at 493, 498, 500.

Those lukewarm statements do not undermine the arguable applicability of the Employment Clause. Those statements do not bind Michigan. As it concedes, there are only a few "exclusive processes" that the Department and Commission can follow to adopt binding interpretations of ELCRA. ECF No. 26, PageID.490. Statements in a litigation brief are not one of those exclusive processes for definitive, binding interpretations. Nothing prevents Michigan from "changing its mind" later or switching "the view of the law that it asserts in this litigation." *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000).

Courts also "do not defer to the" government's "interpretation" of the law "to determine if conduct is arguably proscribed." *Cerame v. Slack*, 123 F.4th 72, 83 (2d Cir. 2024). That is because the standard is "arguably proscribed." *SBA List*, 573 U.S. at 163. Under that standard, courts routinely reject enforcement officials' efforts to construe a law in a manner inconsistent with its text. *See, e.g., id.* at 163 (holding plaintiffs had standing despite officials' insistence that law only banned knowingly false statements, which plaintiffs disclaimed an intent to make); *Siders v. City of Brandon*, 123 F.4th 293, 300 (5th Cir. 2024) (standing where city's position appeal was "'surprising and apparently driven by appellate strategies'"); *Picard v. Magliano*, 42 F.4th 89, 99 (2d Cir. 2022) (standing when officials disclaimed plaintiff's statutory interpretation); *N. Carolina Right to Life, Inc. v.*

*Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999) (standing when government's "promise" of non-enforcement was "no guarantee that the Board might not tomorrow bring its interpretation more in line with the provision's plain language").

The Employment Clause's text, Michigan's concession as to at least some of Right to Life's and PRC's activities, and the non-binding nature of Michigan's interpretation are enough to show the clause arguably proscribes Right to Life's and PRC's activities. But the Employment Clause's history—and the absurd results that arise from Michigan's invented narrowing—further reveal that Michigan's narrowing interpretation is not plausible. The implausibility of Michigan's interpretation buttresses Right to Life's and PRC's "*plausible*" interpretation of the Employment Clause. *Yellen*, 54 F.4th at 337.

Consider the Employment Clause's history. Michigan recognizes that the Employment Clause "mirror[s] the protections" of its federal counterpart, Title VII. ECF No. 26, PageID.476. Title VII prohibits discrimination against those who allege discrimination "on the basis of his association with a member of a recognized protected class." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 574 (6th Cir. 2000) (confirming this standard "to state a cognizable claim under Title VII"). Michigan says the guilty-by-association logic applies only to claims under 42 U.S.C. § 1981. ECF No. 26, PageID.495. Sixth Circuit precedent holds otherwise. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009) ("[W]e review § 1981 claims under the same standard as Title VII claims"); *Johnson*, 215 F.3d at 574 (association); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999) (agreeing that discrimination "because of an interracial association violates Title VII" (citation modified)).

There's more. Title VII prohibits employers from discriminating against an employee "because of their advocacy on behalf of protected class members." *Barrett*, 556 F.3d at 513–14; *see also Johnson*, 215 F.3d at 577. And Title VII bans employers

8

from discharging an employee "because she contemplated having an abortion"—even if the employee "did not terminate her pregnancy." *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996); *see also* ECF No. 1, PageID.44 n.7 (collecting judicial and regulatory authority).

Michigan's amendment to the Employment Clause transplanted Title VII root and branch. *See* Senate Fiscal Agency, *S.B. 147: Analysis as Enacted* (Apr. 2, 2024), https://tinyurl.com/45cm33kp ("Michigan's civil rights laws needed amending to agree with Title VII"). So the Employment Clause incorporates Title VII caselaw. In that way, the Employment Clause arguably bans Right to Life and PRC from "terminat[ing] someone if they obtain an abortion while employed," as Michigan admits, ECF No. 26, PageID.492. It also bans Right to Life and PRC from making adverse employment decisions because an applicant or employee (i) associates with or assists someone procuring an abortion; (ii) advocates on behalf of the someone else's right to choose abortion; or (iii) contemplates an abortion.

To dodge the latter three outcomes, Michigan falls back on its "opinions" and "beliefs" exception to the Employment Clause. ECF No. 26, PageID.493, 500. In its view, "testing an employee's willingness" to refuse an abortion is not "'discrimination'" because the test "merely provides a direct inference about the employee's belief system." *Id.* And, the argument goes, employers may discharge employees based on "their beliefs." *Id.* at PageID.498. If Michigan really interprets the Employment Clause in that way, it could enter a consent decree with Right to Life and PRC, adopting that view and binding itself to it.

But that's unlikely Michigan's real position. To begin, a requirement that "favor[s]" applicants and employees "who can readily agree with statements connected to" abortion can "represent discrimination" based on sex. *CHC*, 117 F.4th at 844 (discussing "statements connected to the Christian faith" and religious discrimination). One reason is that such a requirement would impose a "term,

9

condition, or privilege of employment" based on sex as Michigan defines it. MCL 37.2202(a). Another reason is that such a requirement would "deprive[] or tend[] to deprive" employment because of sex as Michigan defines it. MCL 37.2202(b). Right to Life and PRC would deny employment to an applicant or prospective employee who could not agree to that condition. The Employment Clause says that this condition discriminates based on the "termination of a pregnancy." MCL 37.2201(d). And Right to Life and PRC seek to clarify this condition on the front end of employment. ECF No. 1, PageID.17, 19, 35-36. So Michigan is wrong to say that Right to Life and PRC will not "ask the question directly." ECF No. 26, PageID.498.

Next, Michigan's "belief" exception conflicts with *Turic*, which Michigan acknowledges as a foundational Title VII case. ECF No. 26, PageID.476. Under *Turic*, Title VII prohibits an employer from firing an employee "because she had exercised her right to have an abortion." 85 F.3d at 1214. It also prohibits adverse actions against an employee because she "perpended abortion," "contemplated having an abortion," or "pondered abortion." *Id.* at 1213–14. Title VII does not cover only the *act* of an abortion. *Id.* (holding plaintiff stated discrimination claim even though she "did not terminate her pregnancy, but carried it to term"). It sweeps in "thoughts" about abortion. *Id.* at 1216. (Batchelder, J., concurring).

To avoid this conclusion, Michigan misreads state law. Michigan says that no liability attaches if an employer "would have made the same decision" despite the "impermissible consideration." ECF No. 26, PageID.498 (citing *Sniecinski v. Blue Cross & Blue Shield of Michigan*, 666 N.W.2d 186 (Mich. 2003)). But *Sniecinski* held that an employer did not engage in sex discrimination because the "job offer" closed after the position "expired administratively" because of a "neutral," non-discriminatory "policy." 666 N.W.2d at 194. In other words, the job was "'not possible'" for a reason independent from the plaintiff's sex. *Id.* But Right to Life's

10

and PRC's policies depend on applicants' or employees' support for or decision to "terminat[e] … a pregnancy"—i.e., their sex. MCL 37.2201(d).

Those policies also demonstrate but-for causation. Michigan claims that Right to Life and PRC do not meet but-for causation because they would fire "a woman *or* a man" related to their support for abortion or decision to have an abortion. ECF No. 26, PageID.498, 500. But the relevant definition of sex is "the termination of a pregnancy," not biological sex. MCL 37.2201(d). Right to Life and PRC arguably engage in "sex" discrimination by following their policies related to abortion. To paraphrase Michigan, Right to Life and PRC prohibit employees from "(1) receiv[ing] an 'elective abortion'" *or* being (2) "morally pro-choice." ECF No. 26, PageID.500. Either option turns on the employee's relationship with the "termination of a pregnancy," which Michigan defines as a protected category. ECF No. 1, PageID.15-16, 32-34.

Michigan shifts to claim that Right to Life and PRC still might not meet the but-for causation standard because their policy of prohibiting employees from engaging in any conduct that would undermine their mission, including elective abortions, is "perfectly legal" to "ensure all employees and volunteers *believe* abortion is wrong." ECF No. 26, PageID.498. That contradicts basic but-for principles. "If the employer intentionally relies *in part* on an individual employee's sex when deciding to discharge the employee … a statutory violation has occurred." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 659–60 (2020) (emphasis added); *accord Rouch World, LLC v. Dep't of C.R.*, 987 N.W.2d 501, 515 (Mich. 2022) (same). Right to Life's and PRC's policies rely on sex—applicants' and employees' "termination of a pregnancy." MCL 37.2201(d).

Crediting Michigan's "belief" exception would lead to absurd results. An employer could "test[] an employee's willingness to agree not to" enter a same-sex or biracial union without committing sexual orientation or race discrimination. ECF

11

No. 26, PageID.500. It could even fire an employee who entered into a same-sex marriage by focusing on the employee's "belief" concerning sexual orientation, which the marriage itself confirmed. An employer could likewise "test[] an employee's willingness to" decline a gender transition without engaging in gender identity discrimination. *Id.* Or it could fire an employee who transitioned because the transition revealed the employee's "belief" that sex is mutable. In those cases, under Michigan's faulty "belief" exception, testing the employee would be legal to provide "a direct inference about the employee's belief system." *Id.*

The Department's own Enforcement Director disagrees with this Michigan's newly minted "belief" approach. She testified that a Christian organization must consider hiring an employee even if the employee had no desire to apply the organization's religious beliefs. ECF No. 1-19, PageID.157. Michigan distances itself from this testimony. *See* ECF No. 26, PageID.495-496. But the Enforcement Director has "been involved in and supervised thousands of proceedings on complaints." ECF No. 26-2, PageID.517. She knows how to enforce the Employment Clause.

In the end, the Employment Clause's application here does not turn on "nuances of whether 'sex' protects moral belief on abortion." ECF No. 26, PageID.496. The application instead depends on Michigan's concessions, the clause's text, and its legal pedigree. Based on concessions, text, and history, the clause arguably prohibits Right to Life's and PRC's desired activities. It bans them from "terminat[ing] someone if they obtain an abortion while employed," ECF No. 26, PageID.492, associating with or assisting someone to obtain an abortion, advocating on behalf of the right to choose abortion, or contemplating an abortion. Right to Life and PRC have standing to challenge the Employment Clause.

12

### b.    Notice Clause.

Michigan admits that Right to Life's and PRC's desired "communication of their policy regarding obtaining abortion[s] is prima facie discriminatory under these laws." ECF No. 26, PageID.501. Right to Life hopes to include its opposition to hiring employees who engage in "any conduct that would undermine RLM's pro-life mission" or "advocat[e] for or support[] elective abortion." ECF No. 1-10, PageID.-103; ECF No. 1-4, PageID.90; ECF No. 1-6, PageID.94; ECF No. 1-7, PageID.96. Right to Life also seeks to explain that its "benefits do not include coverage for elective abortions." ECF No. 1-10, PageID.103. PRC, meanwhile, desires to update its employment materials to explain that prospective and current employees may not undergo, promote, or facilitate "elective abortions." ECF No. 1-12, PageID.113; ECF No. 1-16, PageID.125. Right to Life and PRC want to ask questions along these same lines. ECF No. 1, PageID.15-16, 32-33, 50-51. If they post these documents or ask these questions, Right to Life and PRC arguably violate the Notice Clause.

By agreeing that the Notice Clause bars Right to Life's and PRC's policy statements as "discriminatory," Michigan also confirms that they violate the Employment Clause by applying these policies to prospective and current employees. That is because the Notice Clause prohibits communication about activities that are illegal under the Employment Clause. *Cf. Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 389 (1973) (explaining how job descriptions "indicat[ing] illegal sex preferences" likely revealed "an illegal sex preference in" hiring decisions). For example, the Notice prohibits communications "indicat[ing] a preference, limitation, specification, or discrimination, based on" sex," MCL 37.2206(1), while the Employment Clause prohibits actually refusing to hire, "otherwise discriminat[ing]," "[l]imit[ing], segregate[ing], or classify[ing] an employee or applicant" based on sex, MCL 37.2202(1)(a)-(b). That intertwined logic

13

further explains why Right to Life's and PRC's policies arguably violate the Employment Clause.

Even so, Michigan alleges that Right to Life and PRC can "ask a prospective employee to confirm that her religious or moral beliefs are aligned with Plaintiffs' regarding the issue of abortion." ECF No. 26, PageID.501. That is hard to square with the Notice's Clause text. That clause prohibits "written or oral" "attempts to elicit information" about sex. MCL 37.2206(2)(a). Questions about one's views on abortion could "elicit"—or be considered an "attempt[] to elicit"—information about conduct related to abortion. *Id.* The Department's own guidance buttresses this conclusion. Its guidance prohibits employers from asking about "religious holidays observed," "desire to have children," and "marital status." Mich. Dep't of C.R., *Pre-employment inquiry guide*, https://tinyurl.com/f2ysm9c3. Michigan cannot truly think employers could ask applicants if they celebrate Hanukkah to "confirm" whether their "religious" beliefs align with the employers' or ask them if they are married with children to evaluate whether their "moral beliefs are aligned." *Contra* ECF No. 26, PageID.501.

The Notice Clause's "express statutory language"—especially combined with the Department's guidance—"clearly renders" the clause "applicable" to Right to Life's and PRC's questions to prospective employees that might elicit information about abortions. *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987) (rejecting argument that Planned Parenthood lacked "a threat of potential prosecution" when proposed exclusion differed from "statutory language"). At a minimum, the Notice Clause's language makes it "reasonable enough" for Right to Life and PRC to "legitimately fear" prosecution for posting its policies and asking its desired questions. *Vermont Right to Life Comm., Inc.*, 221 F.3d at 383. That is all that standing requires.

14

### c.     Benefits Clause.

Michigan confirms that the Benefits Clause prohibits employers "who offer[] comprehensive health benefits" from "excluding coverage for termination of a pregnancy." ECF No. 26, PageID.502. So Right to Life is violating the Benefits Clause by refusing to offer this coverage. ECF No. 1, PageID.20. And PRC is violating its beliefs by complying with the Benefits Clause, while also trying to remove inadvertent abortion coverage from its policy. ECF No. 1, PageID.37.

### d.     Accommodation Clause.

Michigan suggests that the Accommodation Clause does not apply to PRC's volunteers. ECF No. 26, PageID.504. Its suggestion runs counter to the Department's recent discrimination charge against McLaren Regional Medical Center Auxiliary. *See* ECF No. 1-23, PageID.205-211. In that charge, the Department concluded that "a volunteer services provider" is a public accommodation. *Id.* at PageID.208. It also concluded that the provider denied the applicant "full and equal enjoyment of its services" by refusing her "volunteer opportunities." *Id.*

For those conclusions, the Department apparently relied on MCL 37.1302(a), which is nearly identical to the Accommodation Clause. *Id.*; ECF No. 1, PageID.48. The Department also relied on MCL 37.1102(2), as Michigan acknowledges, ECF No. 26, PageID.504, but that resulted in a separate count, ECF No. 1-23, PageID.-209-210. The fact that the Department issued the charge after a "circuit court" remand emphasizes that the Accommodation Clause applies to volunteer positions as interpreted by state courts. *Contra* ECF No. 26, PageID.504. So any issue with "limiting principle[s]" stems from Michigan's own interpretation of the clause. *Id.*

Michigan also claims that this clause only covers "'services'" a public accommodation "offers to the public." *Id.* at PageID.503. That's wrong. Michigan's Supreme Court interprets this clause to "prohibit[] unlawful discrimination against any individual, not just members of the public." *Haynes v. Neshewat*, 729 N.W.2d

15

488, 490 (Mich. 2007). For that reason, a physician who was denied staffing privileges stated a race discrimination claim against the hospital under this clause. *Id.* at 35–38. He was denied "a 'right' or 'benefit'" even though the privilege was "enjoyed only by a restricted group of people." *Id.* at 36. The key was that the hospital generally operated as a public accommodation, *id.* at 38, like PRC arguably does here, ECF No. 1 PageID.48.

Michigan's cramped reading of the Accommodation Clause would lead to results it surely doesn't intend. It would mean that hospitals—as in *McLaren* and *Haynes*—could limit their volunteer programs to white people, married couples, women, or any other protected characteristic without violating ELCRA.

The upshot is that the Accommodation Clause arguably applies to PRC's volunteer decisions. And the PRC limits volunteers to those who agree with its religious convictions, including its views on marriage. ECF No. 1, PageID.38-39; ECF No. 1-17, PageID.127-132. So PRC arguably denies persons "full and equal enjoyment" of its volunteer "privileges" based on "religion" and "sexual orientation." MCL 37.2302(a).

### e.    Accommodation Publication Clause.

Michigan does not contest that the Accommodation Publication Clause covers PRC's volunteer application if the Accommodation Clause covers PRC's volunteers. The Accommodation Clause arguably applies to PRC's volunteer decisions, so the Accommodation Publication Clause arguably applies to PRC's volunteer application. ECF No. 1-17, PageID.127-132. PRC's volunteer application arguably violates the Accommodation Publication Clause. It requires assent to PRC's religious beliefs. *Id.* So it could be interpreted as "indicat[ing]" a denial of "full and equal enjoyment" of its volunteer "privileges" based on "religion" or "sexual orientation." MCL 37.2302(b). Or it could be viewed as "indicat[ing]" a person's "presence" is

16

"objectionable, unwelcome, unacceptable, or undesirable because of" "religion" or "sexual orientation." *Id.*

### 2. They face a credible threat of enforcement under *Christian Healthcare Centers* and other precedent.

Right to Life and PRC deserve a presumption that they face a "credible threat of prosecution." *SBA List*, 573 U.S. at 159. First off, they are "object[s] of the challenged" law—Right to Life and PRC as employers and PRC as a public accommodation. *Mirabelli v. Bonta*, 146 S. Ct. 797, 803 (2026) (per curiam). That strongly suggests they have standing. *Id.* Michigan thus faces an uphill climb to show otherwise.

Even beyond that, Michigan's law arguably proscribes their activities. Michigan has "expressly declined to disavow enforcement." *Chiles v. Salazar*, 146 S. Ct. 1010, 1019 n.* (2026). And the law "'chills'" Right to Life's and PRC's speech by causing them to refrain from including language in job descriptions and other materials. *Cath. Charities of Jackson, Lenawee, & Hillsdale Cntys. v. Whitmer*, 162 F.4th 686, 691 (6th Cir. 2025); ECF No. 1, PageID.54-56. "[N]o more is required under" the Supreme Court's "precedents." *Chiles*, 146 S. Ct. at 1019 n.*. The presumption applies here.

To be sure, rather than adopting this presumption, the Sixth Circuit applies the so-called *McKay* factors. *See McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016). At least sometimes; other times it ignores *McKay* altogether. *See Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732, 741–42 (6th Cir. 2025) (en banc) (holding parents and their association had standing without mentioning *McKay*). But *McKay* preceded *Mirabelli* and *Chiles*, where the Supreme Court re-emphasized the object-of-the-action test. No matter, Right to Life and PRC also meet the *McKay* factors—especially after *Christian Healthcare Centers* held

that religious ministries had standing to challenge *the same* law against *the same* Defendants. 117 F.4th at 848–55.

The *McKay* factors include (1) a history of enforcing the challenged law; (2) a statutory attribute that "makes enforcement easier or more likely"; and (3) a failure to disavow. 823 F.3d at 869. Those factors are "not exhaustive, nor must each be established." *CHC*, 117 F.4th at 848 (citation modified). The touchstone is whether "'surrounding factual circumstances' plausibly suggest a credible fear of enforcement." *Id.* (citation modified). In that analysis, courts look at other aspects of a law that could reasonably chill speech, such as the severity of a law's penalties. *See Cath. Charities*, 162 F. 4th at 691 (evaluating financial and professional penalties).

The standing analysis flows from four straightforward facts:

1. Michigan admits that it actively enforces ELCRA by processing thousands of discrimination complaints. ECF No. 1, PageID.60; ECF No. 26, PageID.488; ECF No. 26-2, PageID.518; *CHC*, 117 F.4th at 849 (thousands of complaints).

2. Michigan "cannot" disavow enforcing ELCRA against Right to Life or PRC. ECF No. 26, PageID.490-491; *CHC*, 117 F.4th at 850 (no disavowal).

3. ELCRA's statutory attributes make enforcement easy. *See* ECF No. 1, PageID.59; ECF No. 26, PageID.490; *CHC*, 117 F.4th at 850.

4. The penalties for violating ELCRA are severe—they include five-figure fines, license revocation, and more. ECF No. 1, PageID.60; *Cath. Charities*, 162 F.4th at 691 (six-figure fines and "loss of their licenses" supported standing). Those four facts show that Right to Life and PRC have standing. Case closed.

But Michigan resists this conclusion. It does so by misreading *Christian Healthcare Centers*, rehashing arguments rebuffed by that decision, and attempting to retrofit the *McKay* factors with clunky new hardware. The Supreme Court and the Sixth Circuit have rejected similar efforts. This Court should too.

18

Right to Life and PRC have standing under the relevant *McKay* factors and other "surrounding factual circumstances." *CHC*, 117 F.4th at 848 (citation modified).

**History of enforcement.** Michigan says that Right to Life and PRC must show a "history of past enforcement" with enforcement actions against the "same conduct." ECF No. 26, PageID.487-488. The Sixth Circuit rejects this argument: "a plaintiff need not always show that the statute has been enforced previously against the precise conduct it wishes to undertake." 117 F.4th at 849. It has rejected this argument several times. *See also Block v. Canepa*, 74 F.4th 400, 410 (6th Cir. 2023) (calling exact comparator argument "flawed" and holding wine merchant had standing to challenge law because of "evidence that Ohio prosecutes violations of the" law generally); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019) (holding students who wished to engage in "protected speech" had standing to challenge policy because of past disciplinary actions "involving 'bullying' or 'harassing' misconduct").

There is no same-conduct requirement. If there were, at least *someone* (the first hapless violator) would be deprived of pre-enforcement standing. That result would be at odds with decisions that allowed pre-enforcement suits against laws with no enforcement history. *E.g.*, *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (standing even though law "has not yet been applied").

This *McKay* factor does not require plaintiffs to chase their shadow. Instead, its purpose is to ferret out claims against laws that have fallen into disuse. *Cf. Poe v. Ullman*, 367 U.S. 497, 508 (1961) (no standing to challenge law left unenforced for "[e]ighty years"). That doesn't describe Michigan's law—it's in active use.

Michigan only recently amended "sex" in the Employment, Publication, and Benefits Clauses. ECF No. 1, PageID.39-42. That amendment repealed an exemption for "nontherapeutic abortion[s]." *Id.* at PageID.40. And, around that

19

same time, Michigan repealed a separate law that protected employers from covering abortion in their insurance plans. *Id.* at PageID.41-42; ECF No. 28, PageID.559. With this active legislative landscape, there is no reason to think the "newly enacted law will not be enforced." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). Enforcement follows common sense: it is "inconceivable that the government would enact a widely publicized law … and then sit idly by" when it is violated. *NRA v. Magaw*, 132 F.3d 272, 289 (6th Cir. 1997). The same is true of the Accommodation and Accommodation Publication Clauses, which the Department recently signaled apply to volunteers. ECF No. 1-23, PageID.205-211.

Adding to that enforcement context, Michigan has a robust history of enforcing ELCRA. *See CHC*, 117 F.4th at 848 (collecting data). Consider some statistics. In 2025, Michigan certified about 2,800 total complaints and processed 946 sex discrimination complaints. Mich. Dep't of C.R., *Michigan Civil Rights Commission 2025 Annual Report* 31–32 (2025), https://tinyurl.com/ynas2k6m. In 2024, it investigated 1,400 employment discrimination complaints and certified 370 sex-discrimination complaints. ECF No. 1, PageID.60. And, in 2022, it investigated almost 2,000 complaints. ECF No. 26-2, PageID.518.

Michigan disowns this history by distinguishing between "enforcement[s]" and "complaint[s]," and then suggests that this *McKay* factor considers only "formal charges." ECF No. 26, PageID.488. That distinction finds no footing. Courts often cite complaints, not charges. *See SBA List*, 573 U.S. at 164 (citing "20 to 80 false statement complaints per year"); *CHC*, 117 F.4th at 849 (citing "complaints"); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015) (noting agency "receives complaints on a relatively frequent basis"). After all, complaints "start the enforcement process." *CHC*, 117 F.4th at 849.

What's more, the complaint process itself is burdensome. *SBA List*, 573 U.S. at 165 (suggesting an "administrative action … may give rise to harm"). It often

20

takes "at least 12 months" from complaint to charge, ECF No. 26-2, PageID.520, but it can take up to "thirty-six months," ECF No. 1, PageID.60. During that time, Michigan can force respondents to respond to the complaint, answer interrogatories, produce documents, and testify. MDCR Rule 37.11(1); MCL 37.2602(d). All the while, the threat of crippling punishments hangs overhead. MCL 37.2605(1)-(3). The process becomes the punishment. *See* Franz Kafka, *The Trial* 232 (Willa Muir & Edwin Muir trans., Penguin Books 1980) (1925) ("'The verdict is not so suddenly arrived at, the proceedings only gradually merge into the verdict.").

**Disavowal.** Next, Michigan overburdens the word "*refusal.*" ECF No. 26, PageID.490. It says it is "not 'refusing to disavow enforcement'"; it just "cannot" disavow enforcement. *Id.* That gives the game away. This factor favors standing when governments "contend[] that disavowal is impossible." *CHC*, 117 F.4th at 850. Nor is there any talismanic significance to the phrase "refusal to disavow." *McKay*, 823 F.3d at 869. Courts variously describe failures to disavow. *See Chiles*, 146 S. Ct. at 1019 n.* ("declined to disavow"); *SBA List*, 573 U.S. at 165 ("have not disavowed") *CHC*, 117 F.4th at 850 (same). The takeaway is simple: Right to Life and PRC meet this *McKay* factor because Michigan does not disavow.

The lack of a disavowal here "is less understandable—and enforcement more credible—where there is not a 'single additional fact that would be required to adjudicate the present action.'" *CHC*, 117 F.4th at 851. Right to Life and PRC have "amply described" their employment, volunteer, and benefits "policies," the "requirements" for posted positions, and "the proposed communications about each item." *Id.* at 854. They have included details about their hiring process, submitted multiple declarations, described their employment policies, and explained their insurance coverage. ECF No. 1, PageID.6-37; ECF No. 7-2, PageID.275-286; ECF No. 7-4, PageID.293-307. In fact, the Department's Enforcement Director says that "BFOQs apply to the position description." ECF No. 26-2, PageID.520. And Right to

21

Life and PRC attached multiple job descriptions. ECF No. 1-8, PageID.98; ECF No. 1-9, PageID.100; ECF No. 1-13, PageID.115; ECF No. 1-14, PageID.119 ECF No. 1-15, PageID.122; ECF No. 13-2, PageID.410; ECF No. 17-2, PageID.431; ECF No. 32-2, PageID.649. So Michigan has the information it needs to disavow—it just hasn't.

Instead, Michigan blames ELCRA for procedurally barring it from disavowing. *See* ECF No. 26, PageID.490. Not so. The Commission can adopt "[n]ew rules," MDCR Rule 37.21, or issue "interpretative or procedural guidelines," MDCR Rule 37.23, at its discretion. It could do so here—if only it were willing. The "Open Meetings Act" is no barrier either. *Contra* PageID.26, PageID.490. The Commission "may adopt interpretative or procedural guidelines" at a public "regular or special meeting." MCR Rule 37.23. And, in discovery, Michigan must disclose its positions. *See, e.g.*, Fed. R. Civ. P. 36.

Michigan also relies on *Moms for Liberty-Wilson Cnty., Tennessee v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499 (6th Cir. 2025). There, parents alleged that three rules violated their First Amendment rights. *Id.* at 506. They established standing to challenge two rules. *Id.* at 512. But the complaint had only "a single explicit reference" to the third rule, and there was no evidence that any parent "altered" their speech because of that rule. *Id.* at 510. With that "dearth of relevant evidence," there was nothing for the defendants to "disavow." *Id.* at 511. By contrast, Right to Life and PRC saturated this record with evidence of their chilled speech and desired activities. Based on that evidence, Michigan has not only failed to disavow—it has conceded Right to Life's and PRC's employment policies, desired posts, and benefits packages violate ELCRA. *See* ECF No. 26, PageID.492, 500-502.

**Statutory attributes.** Michigan does not dispute that any member of the public may file a complaint alleging an ELCRA violation. ECF No. 26, PageID.489. But it says that "aggrieved" persons are a "small subset" of the public and that complaints do not initiate enforcement actions. *Id.* Michigan is wrong twice over.

22

Start with public complaints. The Sixth Circuit already held that ELCRA's complaint submission process makes "enforcement more likely." *CHC*, 117 F.4th at 850. ELCRA defines "person[s]" broadly to include individuals, organizations, and others. MDCR Rule 37.2(p). Michigan can use "testers" to elicit complaints. ECF No. 1, PageID.59. And anyone can be "aggrieved" so long as they see a post they deem discriminatory. *See* ECF No. 1, PageID.59; ECF No. 1-19, PageID.149; ECF No. 1-21, PageID.187.

What's more, Michigan believes that Right to Life's and PRC's desired "communication of their policy regarding obtaining abortions is prima facie discriminatory." ECF No. 26, PageID.501. With that admission, Michigan effectively concedes that "it is plausible that a complaint will be filed regarding the publicized speech or conduct." *CHC*, 117 F.4th at 852. That is because Right to Life and PRC will "broadcast[] to the public speech or conduct that is arguably proscribed by" ELCRA; "any member of the public can file a complaint"; and there are no "factual circumstances" indicating "that a complaint" against Right to Life and PRC "is unlikely." *Id.*

Move to whether complaints initiate enforcement actions. They do. Without a complaint, there can be no charge, no prosecution. *See* ECF No. 26-2, PageID.518 (noting the complaint is the first step in "filing a charge of discrimination"). Michigan simply misplaces resistance to this fact. *See CHC*, 117 F.4th at 849 (ELCRA "complaints" "start the enforcement process"); *id.* at 852 (noting "a citizen filing a complaint … initiat[e]s the ELCRA investigatory process").

**Penalties.** Michigan does not dispute the severity of ELCRA's penalties. But penalties for violating ELCRA are harsh. Right to Life or PRC could be ordered to "hir[e]" or "reinstat[e]" an employee who undermines their pro-life message. MCL 37.2605(2)(a). They could be forced to pay five-figure fines plus "damages" and "a reasonable attorney's fee." MCL 37.2605(i)–(k). And they could lose any "license

issued by the state." MCL 37.2605(l)(3); ECF No. 1, PageID.7, 23 (noting state-issued licenses). These risks show that Right to Life and PRC decision to "chill" their speech is objectively reasonable and "that they face a credible threat of enforcement." *Cath. Charities*, 162 F.4th at 691.

***

Right to Life and PRC have shown an injury-in-fact. Right to Life and PRC meet at least three *McKay* factors, and ELCRA's penalties are severe. So they have shown injury-in-fact. Courts have found standing on much less enforcement indicia. *See Yellen*, 54 F. 4th at 337 (standing to challenge offset provision when federal government "intended to enforce" it); *Green Party of Tennessee v. Hargett*, 791 F.3d 684, 696 (6th Cir. 2015) (standing where the state never "explicitly disavowed enforcing" the law); *Platt*, 769 F.3d at 452 (standing based on public complaint process and refusal to disavow "at oral argument"); *Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998) (standing where city's answer stated its "inten[t] to prosecute" the "ordinance"). The logic of these decisions bolsters Right to Life's and PRC's credible threat of enforcement.

## B.    ELCRA causes their injury, and their claims are redressable.

ELCRA causes Right to Life's and PRC's injury, and their requested relief redresses that injury. Causation and redressability "are often flip sides of the same coin." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citation modified). "If a defendant's action causes an injury, enjoining the action" will "typically redress that injury." *Id.* at 381. Michigan never denies these principles as to Right to Life's and PRC's challenges to the Notice, Public Accommodation, or Accommodation Publication Clauses. But those clauses injure Right to Life and PRC, and they ask for relief from those injuries. ECF No. 1, PageID.49, 51, 53-57. Michigan instead

24

takes aim at the Employment and Benefit Clauses. But a judgment in favor of Right to Life and PRC would redress the injuries caused by those clauses.

**Employment Clause.** Michigan's opposition to redressability against the Employment Clause depends on its view that Title VII independently prohibits Right to Life's and PRC's activities. ECF No. 26, PageID.497. But Title VII doesn't apply to PRC as a "religious" organization with an exemption "with respect to the employment of individuals of a particular religion." 42 U.S.C.A. § 2000e-1(a). ELCRA has no similar religious exemption. In any event, accepting Michigan's view that Title VII prohibits Right to Life's and PRC's employment decisions confirms those activities arguably violate the Employment Clause because that clause "mirror[s] the protections [of] Title VII." ECF No. 26, PageID.476. If, as Michigan says, Right to Life's and PRC's employment policies violate Title VII, they (at least) arguably violate the Employment Clause.

Setting that confirmation aside, Michigan's view does not negate redressability. The Employment Clause causes Right to Life and PRC to face unique threats and burdens. ECF No. 1, PageID.50, 59-61. A judgment preventing Michigan from enforcing that clause against them "will relieve a discrete injury"— i.e., an enforcement action under the Employment Clause. *Larsen v. Valente*, 456 U.S. 228, 243 n.15 (1982). Right to Life and PRC are not required to *also* challenge Title VII because they "need not show that a favorable decision will relieve [their] *every* injury." *Id.*; *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 716 (6th Cir. 2015) (holding "partial redress" satisfied "the standing requirement" despite availability of harmful information from "other sources"); *Knight v. City of New York*, 164 F.4th 173, 178–80 (2d Cir. 2026) (holding plaintiff's challenge to "place-of-business" requirement was redressable despite separate "zoning provisions" that might still bar his business). For that reason, "a plaintiff need not sue every defendant that may cause her harm." *Matsumoto v. Labrador*, 122 F.4th 787, 802 (9th Cir. 2024).

**Benefits Clause.** Michigan also contests Right to Life's and PRC's ability to obtain relief against the Benefits Clause, but it starts with different arguments for each Plaintiff. ECF No. 26, PageID.502.

For Right to Life, Michigan says it "already ha[s] the relief [it] desire[s]" because its plan does not cover abortion. *Id.* But Right to Life's current plan violates the Benefits Clause, which exposes it to a credible threat of enforcement. *Id.* Right to Life seeks to keep its current plan *without* violating the law and *without* risking an enforcement action by Michigan. ECF No. 1, PageID.78. This Court can provide that remedy.

For PRC, Michigan says PRC's "carrier" caused its injury. ECF No. 26, PageID.502. That fails for three reasons. *First*, PRC is trying to correct its carrier's mistake. ECF No. 1, PageID.37. Once it does, PRC's plan will violate the Benefits Clause. PRC needs relief now so that it can change its plan without violating the law. *Second*, as Michigan acknowledges, alternative, abortion-excluding plans are available. ECF No. 26, PageID.502. So even if PRC cannot fix the error during this coverage period, it will likely be able to remove that coverage upon renewal. At that point, it will violate the Benefits Clause. *Third*, evidence indicates that the Benefits Clause "had a determinative or coercive effect" on PRC's insurer. *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 750 (9th Cir. 2020) (citation modified). Before Michigan amended the Benefits Clause, PRC had a plan that aligned with its religious beliefs. ECF No. 1, PageID.37. After the amendment, it didn't. That sequence offers "strong evidence that" an order from this Court declaring the Benefits Clause unconstitutional as applied to PRC would encourage "at least one of the many insurers who do business in [Michigan]" to "agree to offer the type of plan [PRC] seeks." *Skyline Wesleyan Church*, 968 F.3d at 750. Following any one of these three paths leads to the same destination: redressability against the Benefit Clause.

26

Michigan then moves to a global argument. It says, "all health insurance plans" must be approved "by the Department of Insurance and Financial Services," which has approved "plans that do not cover abortions." ECF No. 26, PageID.502. But the insurance department cannot approve plans that are "inconsistent with the law." MCL § 500.2236(1). And the Benefits Clause prohibits employers from limiting employment benefits "on the basis of sex," which Michigan defines to include the termination of a pregnancy. MCL 37.2202(1)(c). Related to the insurance department's constraints on approving plans that are inconsistent with ELCRA, the "commissioner of insurance" cannot change ELCRA's "statutory definition[s]." *Woods v. Progressive Mut. Ins. Co.*, 166 N.W.2d 613, 616 (Mich. App. 1968). Taking these together, regardless of any inconsistent prior practice, the insurance department's approvals cannot statutorily override ELCRA, and, at any time, the insurance department can begin to reject plans that do not comply with ELCRA. For example, the insurance department issued a bulletin proclaiming that "entities regulated by the Department cannot deny access" or "limit benefits … based on an individual's sex" under ELCRA. Dep't of Ins. and Fin. Servs., *Bulletin 2023-07-BT/CF/CU/INS* (March 16, 2023), https://tinyurl.com/wfmpazku. Relief here would ensure that the insurance department must approve exemptions for plans like Right to Life's and PRC's going forward—not based on an administrative whim contrary to state law but based on constitutional command. *See United States v. Stevens*, 559 U.S. 460, 480 (2010) (courts do "not uphold an unconstitutional statute merely because the Government promised to use it responsibly").

27

## II.    Michigan's contrary jurisdictional arguments conflict with binding precedent.

To sidestep the merits, Michigan also argues that the BFOQ process defeats standing, that it is immune from suit, and that this Court should abstain. Each argument falls flat.

### A.    Michigan's BFOQ process does not defeat Right to Life's and PRC's standing.

Michigan claims that Right to Life and PRC must first submit, and be denied, a BFOQ request before filing suit. ECF No. 26, PageID.481-486. Not so. For starters, BFOQs are "relevant only to the claims challenging ELCRA's employment provisions." *CHC*, 117 F.4th at 847. BFOQs have no bearing on PRC's challenges to the Accommodation and Accommodation Publication Clauses. Nor is it obvious that the Benefits Clause is eligible for a BFOQ as BFOQs apply to employment positions, not benefits. ECF No. 1-24, PageID.214 (asking for "[t]itle and description of position(s)"). More important, the Sixth Circuit already rejected Michigan's exact argument as applied to ELCRA—including the Employment Clause.

In *Christian Healthcare Centers*, Michigan leaned on "the BFOQ exemption" to defeat the plaintiffs' standing. *CHC*, 117 F.4th at 847. The court refused that effort and concluded that two plaintiffs had standing because "ELCRA's BFOQ exemption" did not "categorically remove[] Plaintiffs from the scope of its employment regulations." *Id.* at 848. So too here. Michigan consistently hedges about granting BFOQs for Right to Life's and PRC's positions. *E.g.*, ECF No. 26, PageID.479 ("The conduct that ELCRA *might* proscribe could be permitted  . . . ."); *id.* at PageID.481 ("very well could"). Then Michigan pivots. It says that *Christian Healthcare Centers* is distinguishable because it addressed BFOQs under arguable-prosecution standards, not credible-threat standards. ECF No. 26, PageID.485. That's incorrect. As the court said, none of ELCRA's "statutory process" for

28

"defenses—including constitutional defenses" alleviated the "risk of injury." *CHC*, 117 F.4th at 854. Plus, standing is jurisdictional. *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) (noting courts must "sua sponte" ensure "Article III" jurisdiction "to adjudicate the dispute"). If the Sixth Circuit believed that the BFOQ process eliminated a credible threat, it would have said so.

In any event, it would be futile for Right to Life and PRC to request a BFOQ. Michigan admits that Right to Life's and PRC's (i) "intent to terminate someone if they have an abortion while employed" violates the Employment Clause; (ii) employment posts violate the Notice Clause; and (iii) healthcare coverage does or would violate the Benefits Clause. ECF No. 26, PageID.492, 500-502. Those are Right to Life's and PRC's desired activities—there's no reason to think Michigan would exempt them.

Evidence confirms that intuition. In other litigation, Michigan has said there are no "expressive association defenses in the employment context." Neihart Decl., Ex. A at 9. That's game, set, and match for Right to Life's BFOQ exemption prospects because it's not a religious organization. Michigan also claimed that the First Amendment does not protect religious employers' decisions over non-ministerial employees and rejected the "co-religionist" exception. *Id.* at 4–8. A prior stipulation buttresses their view of the latter point. ECF No. 1-21, PageID.191-192 (stipulating that the Employment Clause applies to "any open non-ministerial position" of a ministry). And the Department routinely rejects BFOQs for non-ministerial roles, such as "support staff," "office personnel," and "janitorial staff." ECF No. 1-25, PageID.223-224, 227. Michigan protests this characterization by claiming the "*applicant*" limited those "BFOQ requests." ECF No. 26, PageID.484. But Spring Arbor University asked the Commission to "grant it a Bona Fide Occupational Qualification Exemption on the basis of religion with respect to all of its employees." Neihart Decl., Ex. B at 9. The Commission narrowed that request to

"teachers and administrators." ECF No. 1-25, PageID.219. And the Commission made sure to exclude Huda School and Montessori's "janitorial staff," "physical education teacher[s]," and "office personnel," even though the school never asked the Commission to opine on those positions. ECF No. 1-25, PageID.225-226.

Right to Life and PRC seek exemptions under the First Amendment's freedom of expressive association and co-religionist exception. ECF No. 8, PageID.334-338, 341-343. Michigan refuses to recognize those exemptions. A BFOQ request would be futile based on Michigan's positions here and historical practice.

The BFOQ process's burdens compound that futility. Michigan says the burden is "subjective, conclusory, and legally irrelevant." ECF No. 26, PageID.484. But Right to Life and PRC detailed those burdens in concrete terms. ECF No. 1, PageID.61-62. The BFOQ process demands time from executive leadership and legal fees. ECF No. 7-2, PageID.284-286; ECF No. 7-4, PageID.304-307. Michigan implies that applicants need not consult "an attorney." ECF No. 26-2, PageID.520. But it would be foolish not to—BFOQs require a "legal brief in support." ECF No. 1-24, PageID.213. BFOQ hearings are also adversarial and inquisitorial. Neihart Decl., Ex. C at 14–22. The applicant appears before the Commission to justify the request. *Id.* The Commissioners ask wide-ranging questions. *Id.* at 16 (self-described "controversial question" about a "dating platform"); *Id.* at 21 (asking about "race" and "ethnicity"). All this must be repeated every five years, and the Commission can always change its mind. MDCR Rule 37.25(4)–(5).

What's more, Right to Life and PRC would be forced to delay hiring for open positions as they await a decision. Michigan minimizes that delay by alleging it takes "three to six months" to resolve BFOQs based on the Enforcement Director's "experience." ECF No. 26-2, PageID.520. But her experience includes one BFOQ request. *Compare id.* (noting she began with the Department in 2011) *with* Neihart Decl., Ex. C at 3 (noting Commission's first BFOQ since 2003). Many BFOQs take

30

years. *See* ECF No. 1-25, PageID.216-219 (December 2002 request; April 2004 resolution); ECF No. 1-26, PageID.237 (apologizing because "[t]his department was unable to process requests for BFOQ exemptions" from 1992 through 1995).

Meanwhile, any indeterminate delay—months or years—risks ruining Right to Life and PRC. It leaves them understaffed. ECF No. 7-2, PageID.283-286; ECF No. 7-4, PageID.304-307. It affects their mission. *Id.* It chills their speech. ECF No. 7-2, PageID.283-286; ECF No. 7-4, PageID.303-307. And it disadvantages them compared to competing ideological organizations. *See* ECF No. 1, PageID.63-64 (discussing Planned Parenthood).

Those First Amendment infringements distinguish this case from *Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017). That case involved a land-use permit. *Id.* at 500–01. The "land-use context" retains a unique "finality requirement." *Grand v. City of Univ. Heights*, 159 F.4th 507, 511 (6th Cir. 2025) (citation modified) (emphasizing "land-use challenges"). Non-land-use, First Amendment pre-enforcement actions have no such requirement, as *Miller* recognizes. It acknow-ledged that "the chilling effect" a law has on speech is "a distinct and palpable injury." *Miller*, 852 F.3d at 505 (citing *G & V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994)). It reiterated that a "threat is credible … if a person must censor herself to avoid violating the law." *Id.* at 506. But, in *Miller*, the plaintiffs' claims "did not implicate the First Amendment." *Id.* at 501. Nor were the plaintiffs "required to censor themselves." *Id.* at 506. So they did not face "a threat sufficiently credible." *Id.* at 507.

This distinction harmonizes *Miller* with *Christian Healthcare Centers* by limiting *Miller* to the land-use context where no First Amendment rights were at stake. Michigan's approach creates an irreconcilable conflict between those decisions—an unfathomable result given that *Christian Healthcare Centers* cites *Miller* to support its ripeness analysis. *CHC*, 117 F.4th at 841 n.2.

31

And *Miller* is different for other reasons. The *Miller* plaintiffs never claimed that the permitting process itself was burdensome or violated a constitutional right. *See id.* at 500-502. But forcing Right to Life and PRC to chill their speech and go through the BFOQ process are distinct burdens and harms. *See* ECF No. 1, PageID.62; ECF No. 7-2, PageID.284-286; ECF No. 7-4, PageID.304-307. Next, the Commission can initiate enforcement investigations upon receipt of a BFOQ request. MDCR Rule 37.25(2). Not true of the city in *Miller*. Finally, in *Miller*, it was "far from clear that the nightclub ordinance would have necessarily prohibited plaintiffs from opening a nightclub" and the city "never indicated that it would not permit plaintiffs to open their nightclub." *Id.* at 505. Here, Michigan has "made clear" that Right to Life's and PRC's activities violate the Employment, Notice, and Benefits Clauses. *Id.* at 505; ECF No. 26, PageID.492, 500-502. So Right to Life and PRC face a "Hobson's choice": exercise their constitutional rights and "risk prosecution" or forgo those rights to avoid prosecution. *Peoples Rights Org., Inc.*, 152 F.3d at 529. First Amendment pre-enforcement suits exist to avoid that dilemma. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.")

Following their *Miller* line, Michigan turns to *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986). ECF No. 26, PageID.482. That case is a dead end. It concerns "*Younger* abstention"; a religious school tried to stop an ongoing state investigation by filing a federal lawsuit attacking the investigation itself. *Id.* at 625–29. But there are no abstention issues here. Right to Life and PRC filed this pre-enforcement suit to *avoid Younger* abstention. And Right to Life and PRC challenge the Employment, Notice, and Benefits Clauses, not Michigan's general investigative authority.

32

Shifting gears, Michigan says that PRC's free-exercise claim under *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021) fails because it comes "in a pre-enforcement posture." ECF No. 26, PageID.485. That's wrong. Courts routinely address the merits of pre-enforcement, *Fulton*-styled free-exercise claims. *See Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99, 109–10 (2d Cir. 2024) (evaluating *Fulton* free-exercise claim in pre-enforcement context); *Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1202–10, 1214–15 (D. Colo. 2023) (similar). Michigan also suggests that a free-exercise claim depends on the "concrete exercise of the discretion that renders a law not generally applicable" rather than "abstract" discretion. ECF No. 26, PageID.486. Wrong again. "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, *regardless of whether any exceptions have been given*." *Fulton*, 593 U.S. at 537 (emphasis added). The Commission's discretionary administration of BFOQs creates the "formal mechanism" for exemptions. *Id.* So does its declaratory judgment process. ECF No. 1-20, PageID.168-175 (discussing contraceptive equity ruling); ECF No. 1-22, PageID.196-203 (contraceptive equity ruling). All in all, the Employment, Notice, and Benefits Clauses lack general applicability.

What's more, Michigan never disputes that PRC's other free-exercise claims—treating religious exercise worse than comparable secular conduct and violating the co-religionist doctrine—are appropriate pre-enforcement claims. For good reason. PRC may pursue those free-exercise claims on a pre-enforcement record. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 723 F. Supp. 1467, 1479 (S.D. Fla. 1989) ("Plaintiffs have not attempted to show repeated prosecutions, or pointed to any enforcement under the ordinances."), *rev'd on the merits*, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 542–546 (1993) (holding ordinance failed comparability analysis); *Union Gospel Mission*

*of Yakima Washington v. Brown*, 162 F.4th 1190, 1199–1200, 1208–09 (9th Cir. 2026) (applying co-religionist doctrine in "pre-enforcement action").

As a last resort, Michigan floats "a declaratory ruling." ECF No. 26, PageID.482, 491, 512. But those rulings are discretionary—the Commission can decline to decide them. MDCR Rule 37.20. And they're cold comfort—the Commission can change its mind "prospectively." *Id.*

### B. Michigan is not immune from this *Ex Parte Young* action.

Next, Michigan invokes immunity. But it enjoys no immunity from this suit. As Michigan recognizes, *Ex Parte Young* withholds immunity from state officials with "some connection" to enforcing a law in cases alleging prospective relief from ongoing constitutional violations. 209 U.S. 123, 157 (1908). No one disputes that the Department and Commission enforce ELCRA. The Attorney General hammers that point. ECF No. 30, PageID.607. True, Right to Life and PRC cannot seek "*retroactive* declaratory relief." ECF No. 26, PageID.506. But they can—and do—seek prospective declaratory relief. *See* ECF No. 1, PageID.78-79 ("continue to violate" and "violates"); *Steffel*, 415 U.S. at 463, 475 (awarding only prospective "declaratory relief" after plaintiff "abandoned" request for "injunctive relief" in pre-enforcement First Amendment challenge).

Even so, the Commission says it possesses "quasi-judicial immunity." ECF No. 26, PageID.506. But the Commission cites cases seeking retrospective remedies from officials in their personal capacities.[1] *See* ECF No. 26, PageID.507-508. Those

---

[1] *See Buckley v. Fitzsimmons*, 509 U.S. 259, 261 (1993) ("petitioner seeks damages"); *Cleavinger v. Saxner*, 474 U.S. 193, 194 (1985) ("personal damages"); *Butz v. Economou*, 438 U.S. 478, 480 (1978) ("damages" and  "personal immunity"); *Crenshaw v. Baynerd*, 180 F.3d 866, 867 (7th Cir. 1999) ("Commissioners" in "their personal capacities"). *Cf. Cooperrider v. Woods*, 127 F.4th 1019, 1027–44 (6th Cir. 2025) (immunizing individual-capacity claims but holding "sovereign immunity" did not bar official-capacity claims for "injunctive relief against Defendants").

cases don't apply here. This suit seeks prospective relief against officials in their official capacities. So it is a classic *Ex Parte Young* application.

The Commission moves to *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021). It doesn't help. There, "state-court judges or clerks" did not fall under *Ex Parte Young* because they "did not enforce state laws." *Id.* at 39. But the Commission enforces ELCRA. It can file complaints, amend charges, amend pleadings, and ask the Attorney General to seek "enforcement" with the "circuit court." MCL 37.2605(1); MCL 37.2606(1); MDCR Rule 37.4(2); MDCR Rule 37.9. As Michigan's Attorney General insists, ELCRA's "enforcement functions belong" to the "Department" and the "Commission." ECF No. 30, PageID.607; *id.* at PageID.613, 615, 619, 622-624, 628-630, 633, 635, 637-640. In that way, the Department and Commission are more like the "licensing official[s] who may or must take enforcement actions" in *Whole Woman's Health.* 595 U.S. at 45. Sovereign immunity did "not bar" claims against those officials. *Id.* at 46. Nor does it bar Right to Life's and PRC's claims against the Department and Commission.

The Commission finally invokes a case about "who" could "sit" as a state-court "judge[]." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). To describe the case is to distinguish it. But even *Gregory* acknowledged that state laws are subject to the Supremacy Clause. *Id.* at 457, 460. And "prospective relief" against enforcement officials for ongoing constitutional violations under "*Ex Parte Young* gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68 (1985). So there is no conflict between this suit and any "sovereign structural choice." ECF No. 26, PageID.509. To the contrary, it is part of the "constitutional scheme of dual sovereigns." *Gregory*, 501 U.S. at 457.

### C.    Michigan's appeal to rare abstention doctrines fails.

At last, Michigan proposes three reasons for abstention. Abstention is an "extraordinary and narrow" exception to the normal rule of mandatory jurisdiction. *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). No proposal meets that threshold.

*First*, Michigan raises "*Pullman* abstention." ECF No. 26, PageID.509-510. That abstention "is appropriate only where state law is unclear *and* a clarification of that law would preclude the need to adjudicate the federal question." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). Neither factor is met here. ELCRA's "language is plain and its meaning unambiguous." *City of Houston v. Hill*, 482 U.S. 451, 468 (1987). And it is not "fairly subject to an interpretation which will" avoid the constitutional collision. *Jones v. Coleman*, 848 F.3d 744, 752 (6th Cir. 2017). Michigan's own admissions show that Right to Life's and PRC's activities, posts, and insurance benefits violate the Employment, Notice, and Benefits Clauses. ECF No. 26, PageID.492, 501-502. Those admissions flow from the clauses' plain text and caselaw. *Supra* § I.A.1. The Department has also interpreted an analogous law to apply to volunteers, and Michigan doesn't disclaim that interpretation here as to PRC. ECF No. 1-23, PageID.205-210. For those reasons, there is no way to interpret ELCRA to avoid the constitutional collision.

*Second*, Michigan raises "*Burford* abstention." ECF No. 26, PageID.510-512. But "appellate courts have generally rejected this type of abstention" because *Burford* "is immediately distinguishable" from "§ 1983 cases." Ivan E. Bodensteiner & Rosalie Berger Levinson, *State & Local Government Civil Rights Liability* § 1:30 n.7 (May 2024) (collecting cases from nine circuit courts). This case is no different. There are no difficult questions of state law. There is no complex state regulatory scheme like the Texas oil-and-gas regime at issue in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). And Michigan lacks unique expertise in preserving constitutional

36

rights–especially as compared to federal courts. Right to Life and PRC "therefore only ask[]" this Court "to act within its area of expertise, rather than to invade the province of the State." *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1112 (10th Cir. 2000) (plaintiff seeking declaratory relief).

*Third*, Michigan suggests "certification" to Michigan's Supreme Court. ECF No. 26, PageID.512. That is disfavored and unnecessary. It is disfavored because there is an "ongoing violation of Plaintiffs' rights" and "additional delay inevitably brought on by the certification process is unwarranted and inappropriate." *Doe v. Snyder*, 449 F. Supp. 3d 719, 730 (E.D. Mich. 2020). It is unnecessary because Michigan admits that Right to Life's and PRC's activities violate ELCRA. ECF No. 26, PageID.492, 501-502. Certification would not "obviate the need to address the constitutional question[s]" presented here. *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 22 n.7 (2018). Plus, ELCRA's text and history show that it applies to Right to Life's and PRC's employment decisions, posts, and benefits and to PRC's volunteer decisions and posts.

Michigan's certification suggestion is also self-defeating. Michigan constantly directs Right to Life and PRC to its BFOQ process and cites its authority to issue "crystal clear" ELCRA interpretations. ECF No. 26, PageID.492. No one disputes that Michigan possesses that interpretative authority. MDCR Rule 37.23 (Commission can "adopt interpretive … guidelines"). And it can exercise that authority at any point during this litigation to clarify any statutory misunderstandings.

The bottom line is that abstention is unwarranted here. Even if it were, this Court should grant Right to Life's and PRC's request for injunctive relief. *See Jones*, 848 F.3d at 754 ("[W]hen the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains."). Otherwise, abstention would "shut the federal courthouse door upon plaintiffs in their search for timely vindication of their federal constitutional claims." *Id.* (citation modified).

III.    **Right to Life and PRC meet the preliminary-injunction factors.**

Right to Life and PRC are also entitled to their requested injunction. They (1) are likely to succeed on the merits; (2) suffer irreparable harm absent an injunction; (3) show the equities favor them; and (4) advance the public's interest with an injunction. *See Defending Educ.*, 158 F.4th at 740–41 (listing factors). In cases like this one, where a plaintiff raises constitutional rights, the third and fourth factors typically merge. *Id.* at 761 (addressing those factors together).

A.    **Right to Life and PRC are likely to succeed on the merits, and Michigan never contests the merits.**

Right to Life and PRC are likely to win on the merits. *See* ECF No. 8, PageID.334-358. The First Amendment protects Right to Life's and PRC's freedoms of expressive association, assembly, and speech. That amendment also covers PRC's religious autonomy and religious exercise. The Fourteenth Amendment ensures that Right to Life and PRC cannot be forced to take human life against their will. Taken together, Michigan cannot compel Right to Life and PRC to join with employees or volunteers who disagree with their views or who engage in conduct that contradicts their mission. Michigan cannot restrict Right to Life's and PRC's speech about their constitutionally protected employment policies. And Michigan cannot require Right to Life and PRC to cover procedures in their insurance plans that contribute to the taking of human life.

Michigan makes "*no* argument on the substance of *any* of" Right to Life's and PRC's constitutional claims. *Darren Patterson Christian Acad. v. Roy*, 699 F. Supp. 3d 1163, 1183 (D. Colo. 2023). Without a response, Michigan has "effectively stipulated to" Right to Life's and PRC's "characterization of the law for purposes of the preliminary injunction motion." *Id.* So Right to Life and PRC have shown a likelihood of success based on their affirmative case *and* Michigan's non-response. Right to Life and PRC also meet the remaining factors.

38

### B.    A preliminary injunction stops Right to Life's and PRC's ongoing, irreparable harm.

Right to Life's and PRC's requested injunction prevents their ongoing "loss of First Amendment freedoms." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025). This loss "unquestionably constitutes irreparable injury." *Id.* Michigan never disputes these principles; it only contests their application.

Michigan starts by retreading old ground, saying that Right to Life's and PRC's injuries are not sufficiently imminent to justify an injunction. ECF No. 27, PageID.538-539. But, as explained above, Right to Life and PRC risk a credible threat of enforcement. Because of that threat, Right to Life and PRC have refrained from certain speech. ECF No. 1, PageID.54-56; ECF No. 7-2, PageID.283; ECF No. 7-3, PageID.303-304. Michigan then suggests their chill is subjective. ECF No. 26, PageID.539. It's not. Their chill is an ongoing "injury in fact" caused by a reasonable choice to refrain from speaking in the face of a "credible fear of enforcement." *Platt*, 769 F.3d 447, 452 (6th Cir. 2014) (cleaned up); *accord Am. Booksellers Ass'n, Inc.*, 484 U.S. at 393 (noting "self-censorship" "can be realized even without an actual prosecution"). As the Sixth Circuit held in a similar context, if Right to Life and PRC were to post those statements, "it is plausible that a complaint will be filed regarding the publicized speech or conduct." *CHC*, 117 F.4th at 852.

That feature distinguishes this case from *D.T. v. Sumner County Schools*, 942 F.3d 324 (6th Cir. 2019), which Michigan cites. There, many "ifs" needed to happen before the harm came to pass. *D.T.*, 942 F.3d at 327. Here, Right to Life and PRC would post their statements but for Michigan's laws. *See* ECF No. 1, PageID.56. That restraint is a current, ongoing harm. And once they publish the statements, complaints against them are "plausible." *CHC*, 117 F.4th at 852. So, unlike *D.T.*, there isn't a chain of "ifs" here. 942 F.3d at 327.

Michigan also relies on *Moms for Liberty-Wilson Cnty., Tennessee v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499 (6th Cir. 2025). The plaintiffs there faced no threat of harm because the school board "rescinded" the problematic "rules over two years ago" and committed to "not reinstitute the challenged rules during … the litigation." *Id.* at 514. Michigan, however, makes no similar commitments and actively enforces ELCRA. The difference between the board in *Moms for Liberty* and Michigan here reinforces Right to Life's and PRC's need for an injunction.

Moving on, Michigan claims that Right to Life's and PRC's suppressed intent to post statements explaining their mission and values more explicitly does not amount to "self-censoring" because their other ongoing activities violate the law. ECF No. 27, PageID.541-542. But Right to Life's and PRC's ongoing violations cut *in favor* of an injunction. Being stuck between "the Scylla of intentionally flouting state law and the Charybdis of forgoing" constitutionally protected activities is a current injury, worthy of an injunction. *Steffel*, 415 U.S. at 462.

Michigan also says there is "no case law giving any legal significance to such hair-splitting" of Right to Life and PRC making their "'mission and values *even more explicit.*'" ECF NO. 542, PageID.542. But Right to Life and PRC need not refrain from exercising all their constitutional rights to show that Michigan's law irreparably harms some of them. A limit on church attendance irreparably harms a member even if she "may in some instances be able to watch services on television." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020). Same with a limit on speech, even if a speaker "can still speak by changing what they say to avoid" liability. *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 477 n.9 (2007). In short, Right to Life's and PRC's harm from ELCRA's chilling effect is real, even if they have "alternative means of expression." *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 541 n.10 (1980).

For those reasons, Michigan is wrong to suggest that "there are no constitutional violations from which to presume irreparable harm." ECF No. 27, PageID.543.

Next, Michigan says that irreparable harm could only occur after it files discrimination "charges." ECF No. 27, PageID.540-541. Not so. ELCRA complaints "start the enforcement process." *CHC*, 117 F.4th at 849. Informal investigations would force Right to Life and PRC "to divert significant time and resources to hire legal counsel and respond to discovery requests." *SBA List*, 573 U.S. at 165. Nor is the outcome of the investigation "speculative." *Contra* ECF No. 27, PageID.540. Michigan agrees that Right to Life's and PRC's policies violate the Employment, Notice, and Benefits Clauses. *See* ECF No. 26, PageID.492, 501-502. The Department is investigating an employer for its volunteer practices under a statute analogous to the Accommodation and Accommodation Publication Clauses. ECF No. 1-23, PageID.205-210. Michigan disputes Right to Life's and PRC's proposed defenses to ELCRA—the First Amendment's expressive association and co-religionist doctrines. Neihart Decl., Ex. A. And Michigan does not disavow enforcement here despite having all the relevant information.

Nor is it plausible to ask Right to Life and PRC to "*seek a preliminary injunction*" after they receive a discrimination charge. ECF No. 27, PageID.541. Michigan raises grounds for abstention now, *before* an investigation. ECF No. 26, PageID.509-512. It's not credible to think Michigan would decline to invoke abstention *after* an investigation if faced with a federal suit. At that point, its abstention argument might have some force. *Cf. O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (abstaining from granting relief after the mere "filing of a grievance" because that filing "is the beginning of the judicial process").

Michigan finally says Right to Life and PRC filed this suit too late for injunctive relief. ECF No. 27, PageID.543. That claim conflicts with its standing argument, which says Right to Life and PRC filed this suit too early. Besides its

41

irony, the claim is incorrect. Right to Life and PRC hope to post their statements for employment positions that have only recently become open. ECF No. 7, PageID.265 (seeking relief for open "positions and any other position that becomes open in the future"). They have been seeking that relief in real time. ECF No. 13-2, PageID.410; ECF No. 17-2, PageID.431; ECF No. 32-2, PageID.649. They could not have sought that relief earlier—those positions weren't open. PRC's insurance carrier changed PRC's coverage in December. ECF No. 1, PageID.37. And it wasn't obvious that the Accommodation and Accommodation Publication Clauses applied to volunteers—no matter their religion or sexual orientation—until November 2025. ECF No. 1-23, PageID.210 (dated November 21, 2025). So Right to Life and PRC took timely legal action and suffer ongoing irreparable harm.

## C.    A preliminary injunction balances the equities and serves the public interest here.

Right to Life's and PRC's requested injunction "is both equitable and in the public interest." *Mahmoud*, 606 U.S. at 569. The Sixth Circuit's "cases make clear that protecting constitutional rights serves the public interest." *Defending Educ.*, 158 F.4th at 761 (collecting cases). Michigan never contests the merits of Right to Life's and PRC's constitutional claims, so an injunction preserves their rights. That conclusion favors an injunction because "[p]reventing constitutional violations is always in the public interest." *Buck v. Gordon*, 429 F. Supp. 3d 447, 466 (W.D. Mich. 2019). And because Michigan has no legitimate interest in enforcing its laws in unconstitutional ways, the balance of the equities favors Right to Life and PRC. Underscoring that balance, this Court can tailor the injunction to cover Right to Life's and PRC's constitutionally protected activities while still permitting Michigan to enforce the challenge clauses against unprotected conduct by others. *Defending Educ.*, 158 F.4th at 761 (noting this approach seeks the "best balance").

42

## Conclusion

Right to Life and PRC have standing because they face a credible threat that Michigan's law will be enforced against them if they continue to speak, act, and operate consistent with their pro-life beliefs. Their injury is caused by ELCRA and is redressable against Michigan. None of Michigan's contrary arguments defeat standing or give this Court a reason to abstain from protecting Right to Life's and PRC's constitutional rights. Beyond that, Michigan never disputes the merits of Right to Life's and PRC's preliminary-injunction motion. And Right to Life and PRC meet the remaining factors. This Court should deny Michigan's motion to dismiss and grant Right to Life's and PRC's preliminary-injunction motion.

Respectfully submitted this 24th day of April 2026.


Arie M. Jones
Virginia Bar No. 98248
**Alliance Defending Freedom**
44180 Riverside Pkwy.
Lansdowne, Virginia 20176
(571) 707-4655
(571) 707-4790 Fax
arjones@ADFlegal.org


Suzanne E. Beecher
California Bar No. 329586
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, D.C. 20001
(202) 393–8690
sbeecher@adflegal.org

By: s/ Bryan D. Neihart
John J. Bursch
Michigan Bar No. P57679
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
jbursch@ADFlegal.org


Henry W. Frampton, IV
South Carolina Bar No. 75314
Bryan D. Neihart
Arizona Bar No. 035937
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
hframpton@ADFlegal.org
bneihart@ADFlegal.org


*Attorneys for Plaintiffs*

44

**Certificate of Service**

I hereby certify that on the 24th day of April, 2026, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record who are registered users of the ECF system.

s/ Bryan D. Neihart
Bryan D. Neihart
Arizona Bar No. 035937
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
bneihart@ADFlegal.org

*Attorney for Plaintiffs*

45

**Certificate of Compliance with Local Civil Rule 7.2(b)(i)**

This brief was produced on Microsoft® Word for Microsoft 365 MSO (Version 2603 Build 16.0.19822.20086) 64-bit. According to the word count generator within that program, the word count for this brief including headings, footnotes, citations and quotations, but not including the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, is 13,043, which complies with this Court's March 26, 2026 order allowing 15,100 words for this combined response and reply.

s/ Bryan D. Neihart
Bryan D. Neihart
Arizona Bar No. 035937
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
bneihart@ADFlegal.org

*Attorney for Plaintiffs*

46