# EXHIBIT B



# MEMORANDUM

**DATE:**       March 22, 2004

**TO:**         Michigan Civil Rights Commission

**FROM:**       George Wirth, Director of Hearings and Mediation
                Michigan Department of Civil Rights

**SUBJECT:**    BFOQ Application for Spring Arbor University

Enclosed please find a copy of Spring Arbor University's application for a bona fide occupational qualification exemption based upon religion.

The lead commissioner assigned to this matter is Valerie Simmons. Spring Arbor will be represented at the March 29, 2004 commission meeting by their attorney William Nichols and Dr. Gayle D. Beebe, University President. I am sending a copy of the proposed opinion of Commissioner Simmons to you by separate e-mail as we are still in the final draft stage at the time of this mailing.

Please feel free to contact me at (313) 256-3792 if you have any questions or need any additional information prior to the commission meeting.

# SPRING ARBOR UNIVERSITY

## INDEX TO BFOQ APPLICATION

| | INDEX | EXHIBIT |
|---|---|---|
| | Spring Arbor University's Brief in Support of BFOQ Exemption | A |
| | Law in Support of Application | B |
| | Spring Arbor University Bylaws as Revised October 19, 2001 | C |
| | Spring Arbor University Accountants' Report and Financial Statements | D |
| | Updated Articles of Incorporation | E |
| | | |
| | Separately bound documents: | |
| | Spring Arbor University Graduate Studies Catalog 2002-2003 | |
| | Spring Arbor College Policies Handbook for Staff and Administrative Personnel 2000 Edition | |
| | School of Adult Studies Faculty Handbook Spring Arbor University_ | |
| | Draft Copy Faculty Handbook Spring Arbor University Fall 2002 Revision | |
| | | |
| | | |
| | | |
| | | |

SPRING ARBOR UNIVERSITY'S
BRIEF IN SUPPORT OF BFOQ EXEMPTION

STATEMENT OF FACTS

Spring Arbor Seminary, later to become Spring Arbor College, was opened by Free Methodist Pioneers in 1873 as an academy with elementary and secondary grades. Following several stages of development, Spring Arbor College became a fully accredited four-year liberal arts college in 1967. Spring Arbor College is a private co-educational, Christian liberal arts college affiliated with the Free Methodist Church. The purpose of the College is to educate the whole person by integrating faith in Jesus Christ, learning, and living in a college atmosphere.

Spring Arbor College is committed to Christian evangelical doctrine and standards of conduct, and to educating the whole person. Employees of the College serve as role models for students in exemplifying the life of Jesus Christ and help educate students in Christian ideals. Since many students live on campus and/or participate in extracurricular campus activities, they are exposed to these ideals both in and out of the classroom. Through the leadership of faculty and staff within the classroom and without, students are directed towards, and prepared for living, a Christian lifestyle, both in the workplace and in the community. In order for the College to succeed in its religious mission of developing its students' Christian ideals and lifestyle, the College's faculty, staff, and employees must hold, cherish and promulgate Christian beliefs.

Spring Arbor College has now become Spring Arbor University. Although the University has gone through many stages of development the goals and visions of its founders remain the same.

## ARGUMENT

I.   UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, RELIGIOUS ORGANIZATIONS ARE EXEMPTED FROM PROHOBITION AGAINST DISCRIMINATION.

Title VII of the Civil Rights Act of 1964 specifically provides "that it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university or other educational institution or institution of learning is directed toward the propagation of a particular religion." 42 USCS §2000e-2(e)(2). Title VII exempts religious institutions from non-discriminatory acts based on religion.

The cases that have interpreted this provision of Title VII have consistently held that if an institution qualifies as a religious educational institution, that institution may hire or fire employees based on religion. This concept was exemplified in a United States Court of Appeals case for the Sixth Circuit in which the court upheld the firing of a religious educational institution employee because she belonged to a church that did not represent the same values as the religious institution. Hall v Baptist Memorial Health Care Corporation, 215 F. 3d 618 (2000). In that case, the employee was in constant contact with the student body and was required to interact with the students on a daily basis. The College was an outgrowth of a Baptist Memorial Hospital and the motto of the College was "higher education with a higher purpose." The Court recognized "the constitutionally-protected interest of religious organizations in making religiously-motivated employment decisions, however, Title VII has expressly exempted religious

2

organizations from prohibition against discrimination on the basis of religion." Id. at 623 citing 42 USC §200-e-1(a).  The Court held "the decision to employ individuals "of a particular religion" under §2000e-1(a) and §2000 e-2(e)(2) has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer." Id. at 624.

Additionally, the employee of the college challenged its status as a religious educational institution.  The Court further held "in determining whether the College qualifies for the statutory exemption, the court must look at all the facts to decide whether the College is a religious corporation or educational institution.  It is important to consider and weigh the religious and secular characteristics of the institution." Id.  The court recognized that the College's atmosphere was permeated with religious overtones. The students are informed of the religious mission of the College at open houses and orientation.  All students are required to take three hours of religious studies and comply with the dress code that reflects "Christian principles of appropriateness." The court also recognized the important role faculty members play in this type of environment.

The same analysis can be applied to Spring Arbor University.  The University promotes and requires that all employees and students develop Christian ideals and lifestyles.  The University should be allowed to have employees that represent those ideals and lifestyles.  Spring Arbor University's faculty members are of fundamental importance to its mission and function.  The faculty works closely with students and are expected to pass along the same values and ideals exemplified in the University's goals and mission.  The students are expected to adhere to certain Christian principles in their studies and life.  In addition, the college campus offers opportunities for spreading Christian ideals outside the classroom.  Many students live on campus, or are involved in extracurricular activities outside the classroom and, thus, have opportunities to speak with and be positively influenced by all of the University's employees.  Therefore, all of Spring Arbor University's employees are essential participants in the College's religious

3

mission, and the College should be permitted to make employment decisions based on religion.  Spring Arbor University qualifies as a religious educational institution under Title VII of the Civil Rights Act of 1964 because of the values, ideals and goals being taught at the Unviersity.

Further, Spring Arbor University, while affiliated with the Free Methodist Church, does not require its employees to belong to a particular denomination, so long as they are Christians.  This nondenominational policy should not adversely effect the University's position, because the Michigan Civil Rights Commission has granted an exemption on the basis of religion to another nondenominational Christian organization, the Kalamazoo Youth Ministry.  See Exhibit A.  Just as the avowed purpose of the youth ministry was not only to provide shelter, but also to proselytize the Christian faith, the avowed purpose of Spring Arbor University is not only to promote academic and intellectual pursuits, but to promote the Christian faith.  The faculty and staff of Spring Arbor University serve as Christian role models and advisors for students both inside and outside of the classroom.  Only an active Christian may effectively perform these important roles.

## CONCLUSION

In sum, all the employees of Spring Arbor College are of fundamental importance to Spring Arbor University's religious mission.   In order to effectively propagate Christianity, such employees must be Christians.   Title VII of the Civil Rights Act specifically provides an exemption for institutions such as Spring Arbor University. Therefore, the University requests that the Commission grant it a Bona Fide Occupational Qualification Exemption on the basis of religion with respect to all of its employees.

Respectfully Submitted,
MARCOUX, ALLEN, ABBOTT,
SCHOMER & BOWER, P.C.

By: _____
William B. Nichols (P18285)
Attorney for Spring Arbor College
145 South Jackson Street
Jackson, Michigan  49201-2293
(517) 787-4100

Dated: March 17, 2003

5