UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIGHT TO LIFE OF MICHIGAN and
PREGNANCY RESOURCE CENTER,

       Plaintiffs,

v.

DANA NESSEL, in her official capacity
as Attorney General of Michigan; JOHN
E. JOHNSON, JR., in his official
capacity as Executive Director of the
Michigan Department of Civil Rights;
LUKE R. LONDO, GLORIA E. LARA,
RICHARD R. WHITE III, PORTIA L.
ROBERSON, ZENNA FARAJ
ELHASON, REGINA MARIE GASCO,
ROSANN L. BARKER, and SKOT
WELCH, in their official capacities as
members of the Michigan Civil Rights
Commission,

       Defendants.

NO. 1:26-cv-390

HON. ROBERT J. JONKER

MAGISTRATE SALLY J. BERENS

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANT ATTORNEY GENERAL DANA NESSEL'S REPLY IN
SUPPORT OF MOTION TO DISMISS**

Joshua S. Smith (P63349)
Assistant Attorney General
Michigan Dept. of Attorney General
Attorney for Def. AG Dana Nessel
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
smithj191@michigan.gov

Dated:  May 8, 2026

i

**TABLE OF CONTENTS**

<u>Page</u>

Table of Contents ...................................................................................................ii

Index of Authorities .............................................................................................iii

Introduction ......................................................................................................... 1

Argument ............................................................................................................. 2

I.    Plaintiffs lack Article III standing to sue the Attorney General. ..................... 2

    A.    *CHC* does not establish that the Attorney General poses a
        credible threat of ELCRA enforcement. ................................................. 2

    B.    Plaintiffs' six methods of enforcement collapse into a single
        representational role. ............................................................................ 7

        1.    Plaintiff's misread the ELCRA's complaint-filing
            provision. ................................................................................... 7

        2.    Court appearances to enforce or defend orders are
            representational. ........................................................................ 9

        3.    Rule 12 hearing representation is also representational. ........... 11

II.   *Ex parte Young* requires more than representation. ...................................... 11

Conclusion and Relief Requested ........................................................................ 15

Certificate of Service…………………………………………………………………15

# INDEX OF AUTHORITIES

Page

**Cases**

*281 Care Committee v. Arneson,*
  638 F.3d 621 (8th Cir. 2011) ................................................................. 10, 11, 17

*Catholic Charities of Jackson, Lenawee, & Hillsdale Counties v. Whitmer,*
  162 F.4th 686 (6th Cir. 2025) ...................................................................... 6, 7

*Chiles v. Salazar,*
  146 S. Ct. 1010 (2026) ...................................................................................... 6

*City of South Miami v. Governor,*
  65 F.4th 631 (11th Cir. 2023) ........................................................................ 17

*Cooper Indus., Inc. v. Aviall Servs., Inc.,*
  543 U.S. 157 (2004) .......................................................................................... 4

*Davis v. Colerain Twp.,*
  51 F.4th 164 (6th Cir. 2022) ............................................................................ 7

*Doe v. DeWine,*
  910 F.3d 842 (6th Cir. 2018) ................................................................... 15, 16

*Doyle v. Hogan,*
  1 F.4th 249 (4th Cir. 2021) ............................................................................ 12

*Ex parte Young*
  209 U.S. 123 (1908) ........................................................... 2, 14, 15, 18

*Frank v. Lee,*
  84 F.4th 1119 (10th Cir. 2023) ...................................................................... 17

*Health Centers, Inc. v. Nessel,*
  117 F.4th 826 (6th Cir. 2024) ................................................................. passim

*Masterpiece Cakeshop Inc. v. Elenis,*
  445 F. Supp. 3d 1226 (D. Colo. 2019) ............................................................ 13

*Matsumoto v. Labrador,*
  122 F.4th 787 (9th Cir. 2024) ........................................................................ 17

*Russell v. Lundergan-Grimes,*
  784 F.3d 1037 (6th Cir. 2015) .............................................................. 16, 17, 18

**Statutes**

MCL 37.2602(b) ............................................................................................... 10

Mich. Comp. Laws § 14.101.............................................................................. 9

Mich. Comp. Laws § 27.2602(b) ....................................................................... 3

Mich. Comp. Laws § 37.2602(b) ................................................................. passim

Mich. Const. 1963, art. V, §§ 21, 29 ............................................................... 8

Minn. Stat. § 211B.06....................................................................................... 9

Minn. Stat. § 8.01............................................................................................. 9

**Other Authorities**

Mich. Admin. Code R. 37.12(6)....................................................................... 11

Mich. Admin. Code R. 37.1–37.32 .................................................................. 8

Mich. Admin. Code R. 37.4 .............................................................................. 5

Mich. Admin. Code R. 37.4(1)....................................................................... 3, 7

Mich. Admin. Code R. 37.4(2)......................................................................... 8

**Rules**

Fed. R. Civ. P. 30(b)(6)................................................................................... 8

Mich. Admin. R. 37.2(n).................................................................................. 8

Rule 12 ........................................................................................................... 11

Rule 30(b)(6)........................................................................................... 7, 8, 11

## INTRODUCTION

Plaintiffs concede the controlling structure of the Elliott-Larsen Civil Rights Act (ELCRA): the Department of Civil Rights receives complaints, the Department investigates, and the Civil Rights Commission adjudicates and orders remedies. The Attorney General does none of those things. She is the Department's and Commission's lawyer—appearing in court when those constitutional bodies invoke her representation. That is all that the ELCRA authorizes. Mich. Comp. Laws § 37.2602(b).

To overcome that reality, Plaintiffs make two arguments—neither of which is persuasive. First, they reframe the Sixth Circuit's standing analysis in *Christian Health Centers, Inc. v. Nessel*, 117 F.4th 826 (6th Cir. 2024) (*CHC*), as a sub silencio holding on the Attorney General's enforcement authority. But *CHC*'s standing analysis focused on the Department, not the Attorney General, and grouped references to "Defendants" cannot supply a defendant-specific holding the Sixth Circuit never made. Second, Plaintiffs assert six purported enforcement powers from a Rule 30(b)(6) deposition in another case and the Department's internal manual. Examined closely, however, these power all describe the Attorney General's performance of representation work that the ELCRA authorizes.

The result is the same under both Article III and *Ex parte Young*. Plaintiffs have not alleged any enforcement conduct attributable to the Attorney General, and binding Sixth Circuit precedent requires more than mere representation to subject a state official to suit. For these reasons and those stated in her principal brief, this Court should grant the Attorney General's motion to dismiss.

1

## ARGUMENT

### I.    Plaintiffs lack Article III standing to sue the Attorney General.

Plaintiffs' standing arguments rest on two primary arguments:  (1) that *CHC* already decided that the Attorney General poses a credible threat of enforcement under the ELCRA, and (2) that her purported six methods of enforcement establish the causation and redressability needed to sue her.  Neither argument has merit. *CHC* never analyzed the Attorney General's specific role under the ELCRA, and the six methods of enforcement collapse into the single *representational* role that Mich. Comp. Laws § 37.2602(b) describes.

### A.    *CHC* does not establish that the Attorney General poses a credible threat of ELCRA enforcement.

Plaintiffs' lead argument is that *CHC* "necessarily" decided that the Attorney General poses an enforcement threat under the ELCRA because the Sixth Circuit referred collectively to "Defendants" in its standing analysis.  (ECF No. 41, PageID.802–806.)  That reading misconstrues *CHC* as a defendant-specific holding that the Sixth Circuit never made.  A close look at the panel's actual standing analysis reveals that its focus was the *Department's* enforcement role, not the Attorney General's.

Take, for example, the structure of the opinion.  The Sixth Circuit's standing analysis assessed the *McKay* factors: history of past enforcement, the attributes of the statute, and refusal to disavow.  *CHC*, 117 F.4th 848–51.  Each factor turned on what *the Department* does.  On past enforcement, the court noted the number of

ELCRA complaints submitted and processed, explaining "that the *Department* handled more than 12,000 ELCRA complaints . . . between 2011 and 2022, . . . and that it processed 73 complaints[.]" *Id.* at 849.  The court also explained that "citizen-initiated complaints are the method by which the *Department's* ELCRA investigations and enforcement proceedings are initiated in practice." *Id.* (emphasis added).  And although the court noted—when discussing statutory attributes—that "the ELCRA permits any 'person' who is 'aggrieved by unlawful discrimination' to file a complaint," *id.* at 850 (quoting Mich. Admin. Code R. 37.4(1)), it explained that it is "the *Department* [who] . . . responds to citizen complaints[,]" *id.* at 851.  On disavowal, the court noted the absence of any disavowal of ELCRA enforcement, but, again, did so in the context of agency conduct.  *See id.* at 854 ("The Department's position that it lacks sufficient facts to disavow enforcement as to Christian Healthcare's proposal to solicit application for 'unposted' positions is appropriate."); *id.* ("The Department has not clarified where or how it considers defenses . . . in its investigative and adjudicatory process . . . .") (citation omitted). In other words, the Sixth Circuit did not rely on Mich. Comp. Laws § 37.2602(b), did not describe the Attorney General's role under the ELCRA, and did not compare her role to the Department's or Commission's.

That focus is unsurprising.  The plaintiffs in *CHC* alleged a credible threat of enforcement based on the Department's complaint processing, and the threshold question on appeal was whether the statute—as administered—posed a credible threat of harm to the plaintiffs.  *Id.* at 843.  On review of a motion to dismiss, the

3

court answered yes and used "Defendants" collectively.  But grouped references used on a statute-level analysis are not a defendant-specific holding.  *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (cleaned up).

The Sixth Circuit's treatment of the Equal Accommodations Act (EAA) confirms this reading.  (*Cf.* ECF No. 41, PageID.805–806.)  When the court addressed the EAA, it focused specifically on the Attorney General:

> Neither Plaintiff has alleged a single fact about the Attorney General's enforcement of the EAA, let alone her enforcement as applied to discrimination based on sexual orientation or gender identity.  No warning letter has been issued to either Plaintiff regarding the law.  The Attorney General also has disavowed ever threatening anyone with a criminal action under the EAA, and she could find no caselaw showing that any of her predecessors has ever brought a criminal prosecution under this law.

117 F.4th at 851.  The court further reasoned that "[u]nlike the ELCRA, the EAA also contains no citizen-complaint provision raising the likelihood of enforcement." *Id.*

Two features of the analysis matter here.  First, the court evaluated the Attorney General's enforcement conduct directly because the EAA contains no other enforcement actor to evaluate.  The EAA is enforced through criminal prosecution, and the Attorney General is the State's chief law enforcement officer.  The court was thus forced to assess her conduct, and it found Plaintiffs' allegations insufficient.  *Id.*  Second, the court's reference to the EAA's lack of a citizen-

4

complaint provision contrasted with the ELCRA, and this contrast points the other way for Plaintiffs here.  The citizen-complaint mechanism that the court identified as raising enforcement likelihood under the ELCRA is administered by *the Department*, not the Attorney General—a point perhaps not raised in *CHC*.  *See* Mich. Admin. Code R. 37.4.  Put another way, the very feature that distinguishes ELCRA from the EAA in the standing analysis is one located in the Department, not in the Attorney General's office.

Read together, the EAA passage shows the Sixth Circuit doing exactly what Plaintiffs say it did not—distinguishing between defendants based on what each one does.  Where the Attorney General was the only conceivable enforcement actor, the court demanded defendant-specific allegations and found them lacking.  Where there was a Department-administered complaint scheme, the court asked Department-level questions and found the threat sufficient.  The same logic ends the analysis here.  Plaintiffs have alleged no credible enforcement conduct attributable to the Attorney General—no warning letter, no prosecutorial history, no agency function she controls—because she has none.

Plaintiffs' reliance on *Chiles v. Salazar*, 146 S. Ct. 1010, 1019 n.\* (2026), and *Catholic Charities of Jackson, Lenawee, & Hillsdale Counties v. Whitmer*, 162 F.4th 686 (6th Cir. 2025), (ECF No. 41, PageID.804–805), does not save their claims.  *Chiles'* holding that an official's failure to disavow can support standing rested on the premise that the official has enforcement authority in the first place; it did not hold that non-disavowal substitutes for statutory enforcement authority.  146 S. Ct.

5

at 1019 n* ("Colorado has fought this suit through three courts over three years and, at argument here, expressly declined to disavow enforcement against Ms. Chiles."). And *Catholic Charities* addressed penalty severity in evaluating a threat from officials *with* enforcement power. *See Catholic Charities of Jackson v. Whitmer*, 764 F. Supp. 3d 623, 632 (W.D. Mich. 2025) (explaining the specific enforcement powers of the various defendants). Neither case displaces the necessary question: what does the particular defendant do under the statute?

On that question, Plaintiffs' reliance on the Attorney General's amicus brief in *Billard* and her summary judgment briefing in *CHC* (ECF No. 41, PageID.803) confuses litigation positions with enforcement threats. A state attorney general's views in other cases do not amend the ELCRA's enforcement scheme or vest her with authority the Legislature did not grant. And abstract statements about how a law might apply in some hypothetical future case do not establish a credible threat that the official will enforce the law against the specific plaintiff's specific conduct. *See, e.g., Davis v. Colerain Twp.*, 51 F.4th 164, 174 (6th Cir. 2022) (police chief's statements that he "might consult" legal counsel about enforcing rule against racial slurs did not establish credible threat where chief "did not suggest that he would enforce the rule against anything like [plaintiff's] specific speech"). Plaintiffs' citations to the Attorney General's positions on the ministerial exception and expressive association in other litigation are exactly that kind of generalized, abstract evidence—untethered from any threat directed at Plaintiffs or their specific employment practices.

6

### B.      Plaintiffs' six methods of enforcement collapse into a single representational role.

Plaintiffs identify six purported enforcement powers, drawn primarily from a Rule 30(b)(6) deposition and the Department's internal Policy and Procedures Manual.  (ECF No. 41, PageID.806–807.)  The six powers fall into three categories: (1) filing complaints under Mich. Admin. R. 37.2(p); (2) appearing in court to enforce discovery orders, settlement agreements, and final orders, and to defend Commission orders on appeal; and (3) representing the Department at Rule 12 hearings.  Each category either describes the Attorney General appearing as counsel for the Department or Commission—precisely the representational role Mich. Comp. Laws § 37.2602(b) authorizes—or rests on a misreading of the relevant rule.

### 1.      Plaintiff's misread the ELCRA's complaint-filing provision.

Plaintiffs assert that the Attorney General can file an ELCRA complaint as an "aggrieved person" because MDCR Rule 37.2(p) defines "person" to include "this state, or a political subdivision or agency of this state."  (ECF No. 41, PageID.806.)  The argument misreads the regulatory scheme.  Two textual features of the rules foreclose Plaintiffs' theory.

First, Rule 37.4(1) does not allow any "person" to file a complaint—it allows "[a] person *claiming to be aggrieved* by unlawful discrimination" to file a complaint. Mich. Admin. Code R. 37.4(1) (emphasis added).  Plaintiffs have not alleged that the Attorney General has been aggrieved by their unlawful discrimination against her.

7

Without an actual grievance, the Attorney General has no more authority to file an

ELCRA complaint against Plaintiffs than any other unaggrieved "person" within

Rule 37.2(p).  The Rule 30(b)(6) deposition testimony[1] Plaintiffs cite does not

address this point: testimony that "public officials" fall within the definition of

"person" does not establish that the Attorney General is aggrieved by Plaintiffs'

employment practices, and, again, Plaintiffs do not allege that she is.  *See* Mich.

Admin. R. 37.2(n) (defining "person").

Second, the Department's rules contain a separate provision for non-

aggrieved complaints, and it does not include the Attorney General.  Rule 37.4(2)

allows "[a] commissioner, director, or agent authorized by the commission or

director" to "initiate, make, sign, and file a complaint in the public's interest."  Mich.

Admin. Code R. 37.4(2).  The Rules also contain numerous provisions confirming the

Department's and Commission's exclusive responsibilities.  *See* Mich. Admin. Code

R. 37.1–37.32.  The drafters knew how to designate enforcement actors when they

wanted to; they did not designate the Attorney General.

---

[1] Plaintiffs' reliance on the Department's and Commission's Rule 30(b)(6)
depositions is misplaced for two additional reasons.  First, the Attorney General is a
separate constitutional officer, not the Department or Commission.  *See* Mich.
Const. 1963, art. V, §§ 21, 29.  Rule 30(b)(6) testimony binds only the designating
organization—not third parties or co-defendants.  Fed. R. Civ. P. 30(b)(6) ("The
named organization must designate one or more officers . . . who consent to testify
on its behalf.").  Second, deposition testimony cannot expand statutory authority
that the text does not confer. The Attorney General's authority under the ELCRA is
defined by Mich. Comp. Laws § 37.2602(b) and the MDCR rules, and a witness's
characterization of her role cannot enlarge what those texts provide.

*281 Care Committee v. Arneson*, 638 F.3d 621 (8th Cir. 2011), is the closest case Plaintiffs cite, but it does not control.  (ECF No. 41, PageID.812, 816–817.) The Eighth Circuit identified a "three-fold connection" between the Minnesota Attorney General and the challenged *criminal* statute, Minn. Stat. § 211B.06: (1) authority to participate in criminal prosecution upon county-attorney request; (2) responsibility for defending administrative decisions challenged in court; and (3) authority to file a civil complaint, supported by Minn. Stat. § 8.01's grant of "broad discretion to commence civil actions."  638 F.3d at 632.  Two distinctions matter. Factor one is absent: the ELCRA is not a criminal statute, and the Attorney General plays no role in any criminal proceeding under it.  Factor three is materially weaker: Minn. Stat. § 8.01 conferred *broad discretion to commence* civil actions, while Mich. Comp. Laws § 14.101 authorizes only intervention in pending actions—not initiation of them.  *281 Care Committee* is not applicable here.

### 2.    Court appearances to enforce or defend orders are representational.

Plaintiffs next argue that the Attorney General has the authority to "enforce discovery orders," "enforce[ ] the Commission's final orders in court," "enforce[ ] settlement agreements," and "defend[ ] the Commission's final orders on appeal." (ECF No. 41, PageID.806–807.)  In each instance, the Attorney General appears in court to compel compliance with or defend orders or settlements *the Department or Commission has already entered.*  Acting as the Department's legal representative does not transform representational authority into enforcement authority.  The

Fourth Circuit's reasoning in *Doyle v. Hogan*, 1 F.4th 249, 256 (4th Cir. 2021), is on point: "The Attorney General's limited authority to represent and do legal work for the Board, with no power to make the decision about whether to bring the action in the first place, does not create the requisite connection . . . to overcome sovereign immunity."  The Department decides whether to seek compliance enforcement, the Commission decides what order to enter, and the Attorney General appears when summoned to litigate the resulting orders.  That is litigation work, not enforcement.

Plaintiffs press the point that MCL 37.2602(b) uses "shall" while the Maryland statute in *Doyle* used "may."  (ECF No. 41, PageID.819–820.)  The distinction is immaterial.  "Shall" makes the Attorney General's representation mandatory *once the Department or Commission decides to invoke it*.  It does not authorize her to initiate proceedings or to act independently of the agency she represents.  The *Doyle* court would have reached the same result had its statute used "shall."  Indeed, the dispositive feature was that the Attorney General lacked "power to make the decision about whether to bring the action in the first place"—a feature that is shared by the Michigan Attorney General.  *Doyle*, 1 F.4th at 256.

Plaintiffs' reliance on the Department's internal Manual does not change the analysis.  The Manual describes how the Department refers files to the Attorney General when the Department requests court enforcement.  That an internal procedure designates the Attorney General as the Department's lawyer confirms, rather than rebuts, the representation character of her involvement.

10

### 3.    Rule 12 hearing representation is also representational.

Plaintiffs' final method of enforcement—Rule 12 hearing representation—is no different.  They cite a Rule 30(b)(6) deposition and the Manual to claim the Attorney General "actively participates" in "preparation and litigation" of the case. (ECF No. 41, PageID.814.)  But Rule 12(6) does not require Attorney General involvement: "The case in support of the charge *must* be presented at the hearing by *the department's counsel* or by a member of the department's staff."  Mich. Admin. Code R. 37.12(6) (emphasis added).  The Department's counsel may be the Attorney General; it may also be Department staff.  When the Attorney General serves as the Department's counsel at a Rule 12 hearing, she is *the Department's lawyer*, presenting *the Department's case*, under Mich. Comp. Laws § 37.2602(b).

Plaintiffs' analogy to *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226 (D. Colo. 2019), illustrates the problem rather than solving it.  (ECF No. 41, PageID.815)  The Colorado statute there imposed a substantive "duty to enforce" on the attorney general's office, and the district court grounded its analysis in that statutory duty.  Michigan has no comparable provision.  The ELCRA provides only that the Attorney General "shall appear for and represent" the Department or Commission—language describing representation, not a duty to enforce.

## II.    *Ex parte Young* requires more than representation.

Plaintiffs argue that *Ex parte Young*'s "some connection" requirement is a low bar cleared by any state actor with administrative involvement.  (ECF No. 41, PageID.810–811.)  But *Ex parte Young* itself rejected this conclusion.  It held that

the attorney general and governor in that case did not hold "any special relation to the particular statute alleged to be unconstitutional" because they were "not expressly directed to see to its enforcement." *Ex parte Young*, 209 U.S. 123, 157 (1908).  It then went on to reject the exact premise Plaintiffs assert here:

> If, because they were law officers of the state, a case could made for the purpose of testing the constitutionality of the statute . . . **then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and attorney general, based upon the theory that** the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, **and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes.**" *Id.* (emphasis added).

Although the Supreme Court recognized that "[t]hat would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law[,]" it concluded that "it is a mode which **cannot be applied to the states** of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons."[2]  *Id.* (emphasis added).

Even if *Ex parte Young* itself did not foreclose Plaintiffs claims, the Sixth Circuit's controlling cases require *active* administration of the challenged statute or direct prosecutorial authority—neither of which the Attorney General has under the ELCRA.

---

[2] Ultimately, the *Young* Court found that the plaintiffs had overcome Eleventh Amendment immunity.  But the Minnesota Attorney General there could institute both criminal and civil enforcement proceedings against the defendant railway company and had "threatened [to] . . take other proceedings against the company, its officers, etc. . . . ."  209 U.S. at 131.

In *Doe v. DeWine*, 910 F.3d 842, 849 (6th Cir. 2018), for example, the court held that the *Ex parte Young* exception applied because the Ohio Attorney General was "actively involved with administering" the sex-offender registry.  He "promulgate[d] regulation," "operate[d] the state-wide . . . database," and "sen[t] alert[s] to citizens."  *Id.*  Those are independent administrative functions distinct from legal representation of client agencies, and the Michigan Attorney General has no comparable role in administering the ELCRA.  She does not promulgate regulations, operate any database, investigate complaints, issue charges, or order remedies.

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015), is similarly distinguishable.  There, the Kentucky Attorney General had statutory authority to "investigate and prosecute" election violations directly.  *Id.* at 1047.  The Sixth Circuit relied on Kentucky law expressly providing that " 'the Attorney General . . . shall enforce all of the state's election laws by civil or criminal processes.' "  *Id.* (citation omitted).  Indeed, the court explicitly noted that the Kentucky Attorney General's "office repeatedly fielded and investigated complaints of impermissible electioneering, and promised the public that it would pursue possible criminal sanctions."  *Id.*  The ELCRA contains no similar grant of authority, and Plaintiffs allege no such conduct.

Plaintiffs rely on a string of out-of-circuit cases for the proposition that the "some connection" requirement is a "low bar."  (ECF No. 41, PageID.811.)  But Sixth Circuit precedent governs here, and *DeWine* and *Russell* supply the controlling

13

framework.  But even if this Court looks to Plaintiffs' out-of-circuit cases, none helps their case.  Each involved an official with an affirmative statutory enforcement function.  The Idaho Attorney General in *Matsumoto v. Labrador*, 122 F.4th 787, 802–03 (9th Cir. 2024), had express authority to investigate and prosecute violations of the statute at his "sole discretion."  *See also id.* at 802 (explaining that "the attorney general's authority derive[d] from a specific grant of authority").  In *Frank v. Lee*, 84 F.4th 1119, 1132–33 (10th Cir. 2023), Wyoming state officials were subject to suit because they had "a particular duty to enforce the statute."  In *City of South Miami v. Governor*, 65 F.4th 631, 644–45 (11th Cir. 2023), the Eleventh Circuit *rejected* suit against the Florida Attorney General for lack of enforcement evidence.  And *281 Care Committee*, 638 F.3d at 631–32, as discussed, rested on the Minnesota Attorney General's combined criminal-prosecution and civil-action authority.  The "low bar," however framed, still requires some affirmative statutory enforcement duty.  Pure representation of another agency does not satisfy any version of the test.

Finally, Plaintiffs' Article III/Eleventh Amendment merger argument, (ECF No. 41, PageID.810–11), also fails.  *Russell* observed that where the threatened enforcement establishes an Article III injury, that same threat satisfies *Ex parte Young*.  *Russell*, 784 F.3d at 1047.  That principle is unhelpful to Plaintiffs here because they have *not* established an Article III injury *traceable* to the Attorney General.  Indeed, in the very next paragraph of *Russell*, the Sixth Circuit opined that "*Young* does not reach state officials who lack a 'special relation to the

particular statute' and '[are] not expressly directed to see to its enforcement.' " *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).  The Department and Commission are the entities that investigate, charge, and order remedies.  Plaintiffs' fear of those agencies' actions does not become a fear of the Attorney General simply because she may later represent those agencies in court.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, and those stated in the Attorney General's opening brief, his Court should grant the Attorney General's motion to dismiss.

Respectfully submitted,

Joshua S. Smith (P63349)
Assistant Attorney General
Michigan Dept. of Attorney General
Attorney for Def. AG Dana Nessel
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
smithj191@michigan.gov

Dated: May 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2026, I electronically filed the above document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel.

*/s/ Joshua S. Smith*
Joshua S. Smith (P63349)
Assistant Attorney General
Attorney for Def. AG Dana Nessel

15