UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIGHT TO LIFE OF MICHIGAN and
PREGNANCY RESOURCE CENTER,

Plaintiffs,

v.

DANA NESSEL, in her official capacity as Attorney General of Michigan; JOHN E. JOHNSON, JR., in his official capacity as Executive Director of the Michigan Department of Civil Rights; LUKE R. LONDO, GLORIA E. LARA, RICHARD R. WHITE III, PORTIA L. ROBERSON, ZENNA FARAJ ELHASON, REGINA MARIE GASCO, ROSANN L. BARKER, and SKOT WELCH, in their official capacities as members of the Michigan Civil Rights Commission,

Defendants.

No. 1:26-cv-00390

HON. ROBERT J. JONKER

MAG. SALLY J. BERENS

---

**SUPPLEMENTAL BRIEF REGARDING QUESTIONS TO BE CERTIFIED TO THE MICHIGAN SUPREME COURT**

In its July 10, 2026, Opinion and Order denying the MDCR/MCRC Defendants' (hereinafter, "Defendants") motions to dismiss and granting Plaintiffs' motion for a preliminary injunction, this Court announced its intent to certify five questions to the Michigan Supreme Court. (PageID.1136.) This Court invited the parties to "address[] the nature, scope, and clarity" of these questions, with an eye

toward helping "craft clear questions that capture the essence of the statutory disputes in this case." (PageID.1137.)

Defendants' commentary below goes to the nature, scope, and clarity of the questions. In short, the questions are a little imprecise when it comes to classifying the groups of people affected by Plaintiffs' policies. Furthermore, the questions should include the concept of but-for causation—if not as a separate question, then at least built into the other questions. These and other analyses follow restatements of each of this Court's questions, and each section concludes with a proposed alternative.

**1. Do ELCRA's Employment Clauses (MCL 37.2202) prohibit employers, like Right to Life and PRC, from declining to recruit, hire, employ, or retain any of the following individuals: (a) those who have had an abortion; (b) those who advocate for abortion; (c) those who associate with people who have received an abortion; or (d) those who express pro-choice viewpoints?**

As written, the question seems to ask about any and all employers, with Plaintiffs set off by commas as illustrative examples. But this is an as-applied challenge. True, Defendants do argue that screening an employee for his or her opinion about abortion can never violate ELCRA. That much the Michigan Supreme Court can confirm.

But none of the four subgroups appears to refer to that group, *i.e.*, "those who do not believe abortion is morally bad."[1] Rather, these subgroups describe only

[1] This might have been the intended meaning of subgroup (d), which is discussed later.

ancillary conduct, downstream of the core opinion. The parties can disagree about whether conduct consistent with an opinion is "downstream" of having the opinion in the first place, but, at the very least, "opinion" is a core issue that deserves a more explicit treatment.

What's more, the four subgroups—those who (a) have had an abortion, (b) advocate for access to abortion, (c) associate with people who have received an abortion, and (d) express pro-choice viewpoints—don't track the Complaint's allegations.

Plaintiffs do not allege they would decline to hire those who "have had an abortion." They allege only that they would terminate a current employee who obtains an abortion. Subgroup (a) is not just overbroad; it risks obscuring the chronology of hiring and firing that was central to Defendants' causation argument.

Regarding subgroup (c), Plaintiffs never alleged any facts suggesting their employment decisions would hinge on whether a candidate "associate[s] with people who have received an abortion," full stop. Nothing in the Complaint, Plaintiffs' policies or postings, or any other exhibit shows that Plaintiffs would act on mere "association"—such as attending Thanksgiving dinner with a relative known to have had an abortion—without more. This subgroup adds no concepts not captured by the others and should be removed.

Finally, subgroup (d). Because it overlaps with subgroup (b) (advocates), this probably was intended to capture the opinion/belief issue discussed above. But "expressing pro-choice viewpoints" is a little off the mark. Plaintiffs have no

policies that explicitly prohibit "expressing" (as opposed to holding) pro-choice views. More important, Plaintiffs—rather than holding animus for those with pro-choice views—also "discriminate" against those who refuse to take *any* position on the subject. It makes no difference to Plaintiffs whether a candidate is vocally pro-choice or simply indifferent; neither will be deemed qualified. (*E.g.*, PageID.103 ("This individual must be committed to [RTL's] pro-life philosophy[.]"); PageID.134 ("I also affirm . . . the conviction that every child conceived is wholly human and possesses a sacred right to birth[.]").) Regardless, one can look at it this way: If the same question were about discrimination because of race, it would be strange to specify the individual's race as though it mattered. So too here; the question needs to reflect only the generic flavor of discrimination at issue.

Finally, the proposed question is silent on causation and its role here. But-for causation is a necessary element of employment discrimination under ELCRA. Without causation, it's perfectly legal to terminate someone who *happens* to fall into one of these groups. And because Plaintiffs have a low (but legal) threshold for taking adverse employment action (*i.e.*, anything short of affirmative support for pro-life advocacy), it is important to incorporate the issue for this Court's later analysis of adverse employment actions based on *additional*, overlapping conduct.

Accordingly, Defendants propose the following in lieu of Question #1:

> *(a) Does MCL 37.2202(1)(a)–(b) or (d) prohibit an employer from declining to recruit, hire, employ, or retain any individual because of the individual's opinions about abortion?*
>
> *(b) If "no," does the same employer nevertheless violate ELCRA if, alongside its requirements regarding employee opinions, it (1) declines to recruit, hire, employ, or retain an individual who advocates for*

*access to abortion while employed or (2) declines to retain an employee who obtains an abortion while employed?*

**2. Does ELCRA's Notice Clause (MCL 37.2206(1)) prohibit an employer from publishing statements that indicate a preference against candidates who fall into any of the categories specified in Question 1?**

Defendants respectfully object to this question to the extent it relies on the objectionable characteristics of Question #1. In particular, the question should permit that Plaintiffs do not necessarily have a "preference *against*" the groups listed in this Court's Question #1, but instead have a preference in favor of those with "conviction" in the pro-life movement.

Defendants propose the following, consistent with their commentary on Question #1:

*Does MCL 37.2206(1)–(2) and/or MCL 37.2207 prohibit an employer from publishing statements that indicate a preference for candidates that involves the candidate's opinions about abortion, advocacy for abortion-related causes, or intent or willingness to obtain an abortion while employed?*

**3. Does ELCRA's Benefits Clause (MCL 37.2202(1)(c)) prohibit employers, like Right to Life and PRC, from refusing to cover abortion-related services and drugs in their health care packages, even if the employer offers the same health care packages to all employees?**

Defendants propose only to remove the reference to Plaintiffs, which is not strictly relevant to the Michigan Supreme Court's statutory interpretation:

*Does MCL 37.2202(1)(c) prohibit employers from declining to cover abortion-related services and drugs in their health care packages, even if the employer offers the same health care packages to all employees?*

**4. Does ELCRA's Accommodations Clause (MCL 37.2301) prohibit an employer that offers volunteer opportunities, like PRC, from discriminating against individuals that want to volunteer for the employer?**

This question, too, references PRC when nothing about PRC—such as its religious status—is relevant to this question of law. Accordingly, Defendants propose the following:

> *Does MCL 37.2302(a) prohibit an employer that offers volunteer opportunities from discriminating against individuals that want to volunteer for the employer?*

**5. If the answer to Question 4 is "yes," does ELCRA's Accommodations Clause (MCL 37.2301) prohibit a public accommodator from declining its accommodations to any of the following individuals: (a) those who have had an abortion; (b) those who advocate for abortion; (c) those who associate with people who have received an abortion; or (d) those who express pro-choice viewpoints? (PageID.1136.)**

Defendants are mindful of this Court's instruction not to attempt "to relitigate the propriety of certification." (PageID.1137.) Respectfully, however, no version of this question should be submitted to the Michigan Supreme Court. The Michigan Legislature amended ELCRA's definition of "sex" only "[a]s used in this article," *i.e.*, Article 2 (employment). Mich. Comp. Laws § 37.2201. The Accommodations Clause appears in Article 3. If there is doubt about that, it should be put to the Michigan Supreme Court.

But taking that step is unnecessary. Plaintiffs don't claim to commit sex-based discrimination under the Accommodations Clause—they claim to commit only religious- and sexual orientation-based discrimination, which are well understood. They alleged that Article 2 meant they couldn't effectuate their preferences

regarding *employees'* abortion-related conduct, while Article 3 "has these same effects on PRC's volunteer program with respect to religion and sexual orientation." (*See* Compl. ¶¶ 358–61, PageID.50-52.) After Defendants pointed this out, (PageID.503), Plaintiffs explicitly confirmed this understanding of PRC's allegations, stating, "PRC arguably denies persons 'full and equal enjoyment' of its volunteer 'privileges' based on 'religion' and 'sexual orientation,'" (PageID.711). (*See also* 7/10/26 Op. & Order, PageID.1145 ("PRC has shown that accepting volunteers who do not accept its religious and moral positions—including non-Christians and non-straight individuals—likely imposes a 'substantial burden' on its speech.").)

Accordingly, Defendants propose that this Court withdraw this question, which will permit the Michigan Supreme Court to give more consideration to the issues actually pleaded. If this Court disagrees, Defendants propose a two-part question:

> *Does the amended definition of "sex" at MCL 37.2201(d) apply to Article 3 of ELCRA, i.e., MCL 37.2302(a)? If so,*
>
> > *(a) Does MCL 37.2302(1)(a) prohibit a place of public accommodation from declining to retain a volunteer because of the individual's opinions about abortion?*
> >
> > *(b) If "no," does the same place of public accommodation nevertheless violate ELCRA if, alongside its requirements regarding volunteer opinions, it (1) declines to retain a volunteer who advocates for access to abortion while employed or (2) declines to retain a volunteer who obtains an abortion while employed?*

## CONCLUSION

For these reasons, Defendants respectfully ask this Court to consider and implement their suggested changes to its preliminary questions to be certified to the Michigan Supreme Court.

Respectfully submitted,

/s/ Daniel J. Ping
Daniel Ping (P81482)
Neil Giovanatti (P82305)
Assistant Attorneys General
Attorneys for MDCR/MCRC Defendants
Civil Rights & Special Initiatives Division
P.O. Box 30212
Lansing, MI 48909
(517) 241-1050
PingD@michigan.gov
GiovanattiN@michigan.gov

Dated: July 24, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2026, I electronically filed the above document using the ECF System which will send notification of such to all represented parties.

/s/ Daniel J. Ping
Daniel Ping (P81482)
Assistant Attorney General